## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.

JOSHUA WASSER, ILA GOLD,
and ALYSSA RECHTMAN,
on behalf of themselves and all others
similarly situated,

        Plaintiffs,

v.

ALL MARKET, INC.,

        Defendant.

**CLASS ACTION
JURY DEMAND**

### CLASS ACTION COMPLAINT

Plaintiffs, JOSHUA WASSER ("**Wasser**"), ILA GOLD ("**Gold**") and ALYSSA RECHTMAN ("**Rechtman**") (collectively, "**Plaintiffs**"), through undersigned counsel, file this class action complaint on behalf of themselves and all others similarly situated against Defendant, ALL MARKET, INC.("**AMI**" or "**Defendant**"), and allege:

### INTRODUCTION[1]

1.    This is a class action on behalf of consumers of AMI's coconut water, Vita Coco ("Vita Coco"), who have been deceived by AMI to believe that the Vita Coco that they buy and consume is manufactured in Brazil, and made from Brazilian coconuts, when it is not. Initially all Vita Coco coconut water was manufactured in Brazil with Brazilian coconuts to mimic the well-known Brazilian drink "agua de coco" and to take advantage of its broad appeal. At the

---

[1] As used in this Complaint, the term "Vita Coco" refers to the non-flavored coconut water sold in one-liter size ("Large"), 16.9 fluid ounces ("Medium"), and 11.1 fluid ounces ("Small"), sold individually and in packages.

1

time Vita Coco was manufactured solely in Brazil, AMI positioned its Vita Coco brand to be affiliated with everything Brazil. After encountering a shortage in Brazilian coconuts, however, AMI deceptively moved most of its sourcing of coconuts and manufacturing of Vita Coco to the Philippines, Malaysia, Indonesia, Thailand, and Sri Lanka – no longer using Brazilian coconuts in its product manufactured outside of Brazil. AMI committed unfair and deceptive practices and is unjustly enriched by continuing to market and sell its product - coconut water - in a way that misleads consumers into believing that all Vita Coco is Brazilian, manufactured in Brazil and made from Brazilian coconuts, when in reality a large portion (if not a majority) of Vita Coco is made outside Brazil from coconuts sourced outside of Brazil.

2. Furthering its deceptive and misleading conduct, Vita Coco's current container (the "Container")[2] prominently states that Vita Coco is "born in brazil" and mimics the colors of the Brazilian flag and spirit. The Containers are designed to instill the belief in its consumers that Vita Coco remains affiliated with everything Brazilian, and deceiving consumers into believing that all Vita Coco is still manufactured with Brazilian coconuts. While other parts of the Vita Coco Containers may reflect it is made outside of Brazil, the font indicating that Vita Coco is not made in Brazil is small, hidden on the side of the Container, blends into the background color and, at times, is not even visible to the consumer until after the Vita Coco is purchased and taken out of its exterior packaging ("Packaging").[3] In direct contrast, Vita Coco's "born in brazil" slogan is in larger dark font, bold, and prominently displayed on the face of the Container. Because of this deception, AMI is able to sell Vita Coco at prices substantially higher than those of other coconut water brands that are manufactured in other parts of the world. Plaintiffs paid a

---

[2] "Container" refers to the individual containers in which the coconut water is contained.
[3] "Packaging" refers to the outer cardboard material holding Small Vita Coco that are sold together in a four pack.

2

premium price for a coconut water "born in brazil" and made with Brazilian coconuts that they did not receive.   AMI mislabeled the Vita Coco Containers rendering the coconut water worthless entitling Plaintiffs to a full refund of the purchase price.

## PARTIES, JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and there is complete diversity of citizenship.

4.      Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391(b)(2) because the Plaintiff resides within this district, a substantial part of the events or omissions giving rise to the claim occurred within this district, and Defendant caused harm to class members residing in this district.

5.      Defendant, AMI, is a Delaware corporation which maintains its principal place of business in New York, New York, conducting substantial business throughout the United States, including in the Southern District of Florida. AMI is a citizen of New York and Delaware.

6.      All conditions precedent to the filing of this action have occurred, been met or have been waived.

## GENERAL ALLEGATIONS

### Coconut Water

7.      Coconut water is a clear liquid inside young coconuts that has long been a popular drink in tropical countries, often drank straight from the coconut.

8.      Coconut water is known for its nutritional benefits, as a hydrating drink high in electrolytes and low in fat content.

3

9.     Coconut water is mildly sweet, but its taste, sugar level, and sweetness varies based on the specific coconuts indigenous to each tropical island used to make the drink.

**The History of Vita Coco**

10.     In or about 2004, Mike Kirban and Ira Liran formed AMI with headquarters in New York.

11.     Today, AMI is the United States' largest seller of coconut water with growing sales. According to industry reports, AMI's sales of Vita Coco have grown from $100 million in 2011 to $421.1 million in 2015.

12.     According to published articles, AMI controls 40-60% of the one billion dollar coconut water industry.

13.     While coconuts are grown throughout the world, there consistency and taste differ based on origin.

14.     Initially, all Vita Coco coconut water was manufactured from Brazilian coconuts and imported from Brazil to mimic the well-known Brazilian drink "agua de coco."

15.     From inception in or about 2004 to date, AMI markets Vita Coco through "brand identity" as a Brazilian product made with Brazilian coconuts that embodies the Brazilian spirit and mimics "agua de coco."

16.     Indeed, early on, AMI differentiated its coconut water and prominently labeled the Vita Coco Container with the slogans "Made in Brazil" and "Imported from Brazil." Attached as **Composite Exhibit "A"** are true and correct copies of the original Vita Coco Containers.

4

17.     AMI positioned its Vita Coco as unique, embodying everything Brazilian, mixing the elements of Brazil in its marketing to build affinity and preference for Vita Coco with a strategy to position Vita Coco as the Brazilian way of hydration.

18.     Finding success, AMI continues to market Vita Coco as "the" Brazilian coconut water.  It is the alleged source and origin of the coconuts from Brazil that make Vita Coco special to its consumers.

19.     At all material times, AMI knew that consumers were willing to pay a premium for Brazilian coconut water because the quality of Brazilian coconuts is perceived to be higher than in other geographical areas.

20.     Relying on AMI's representations that Vita Coco was made in Brazil from Brazilian coconuts, Plaintiffs paid a premium for the Vita Coco coconut water.

21.     Shortly after Vita Coco came to market and coconut water became popular in the United States, demand for coconuts exceeded Brazil's supply capacity.

22.     Accordingly, starting in or about 2011 or 2012, AMI formulated a deceptive plan to move production and manufacturing of Vita Coco from Brazil to other parts of the world, sourcing local coconuts from the Philippines, Malaysia, Indonesia, Thailand and Sri Lanka to make Vita Coco.  Today, Vita Coco is made in no less than six countries around the world.

23.     Vita Coco is sold in three sizes: one liter ("Large"), 16.9 fluid ounces ("Medium"), and 11.1 fluid ounces ("Small").  All Large and Small size Vita Coco are manufactured and sourced outside of Brazil (except that some Small size Vita Coco sold in "four-packs" are manufactured and sourced from Brazil).  Medium size Vita Coco is manufactured in and sourced from both Brazil and outside of Brazil.

24.    The source and type of coconuts used for Vita Coco, the drink's key ingredient, varies substantially.

25.    AMI attempts to mask this change by adding less than 1% of natural fruit sugar to the Vita Coco coconut water to attempt to placate the variation in tastes from production of the coconut water with coconuts that are now sourced from all over the world.

**The Vita Coco Container Misleads the Consumer**

26.    The fact that Vita Coco was originally manufactured and sourced in Brazil, and now is manufactured and sourced both in and outside of Brazil, furthers the consumer's deception.  Indeed, once seeing a Vita Coco product made in Brazil, and based on the marketing campaign for Vita Coco, it is unlikely that a consumer would check the particular source of each subsequent Container of Vita Coco purchased.

27.    While AMI moved a large portion, if not most, of its sourcing, production and manufacturing to the Philippines, Malaysia, Indonesia, Thailand and Sri Lanka, Vita Coco maintained its brand identity as an alleged Brazilian product.  The marketing and advertising themes for Vita Coco have remained mostly unchanged, and Vita Coco is still being positioned as "everything Brazilian." In other words, AMI continues to maintain Vita Coco's brand identity as Brazilian – a fact important to its consumers - despite its product being manufactured and sourced in other countries.

28.    For example, AMI's current Vita Coco Container is virtually identical to its prior Container when Vita Coco was solely sourced and manufactured in Brazil.

29.    In the years that AMI has been in business, the Vita Coco Container has only slightly been modified.  AMI covertly altered its slogan prominently found on the Vita Coco

Container from "Made in Brazil" to "Imported from Brazil," and now, to "born in brazil," deceiving the customer into believing the coconut water in Vita Coco is still only from Brazil.

30.     The only reference on the new Container that Vita Coco may not be manufactured in Brazil is that it now states in obscure small font on the side of the Container below the nutritional label that is produced in a country other than Brazil (e.g. "Produced in the Philippines" or "Produced in Malaysia"), with no reference that the coconuts that are used to make it are not "born in brazil." Often times this obscure reference is not discernable, as it blends in with the background colors on the Container.  Other times, the consumer is unable to read it before purchasing the product because the writing is blocked by the outer Packaging.  Copies of the new and current Vita Coco Containers and current outer Packaging is attached as **Composite Exhibit "B."**

31.     The Container and Packaging are insufficient for a reasonable consumer to become aware that not all Vita Coco is "born in brazil" – i.e., that not all Vita Coco is manufactured in Brazil, or that the Vita Coco being purchased is neither manufactured nor sourced in Brazil, nor made with Brazilian coconuts.   Reasonable consumers, including Plaintiffs, cannot or do not read the fine print on the Container each time they buy the drink to discern where the product is made.

### AMI's Marketing Campaign of Vita Coco Misleads the Consumer

32.     The misleading Container and Packaging is buttressed by an overall marketing campaign which misleads the consuming public that Vita Coco is solely manufactured in Brazil, with Brazilian coconuts, and imported from Brazil.

33.     The   Vita   Coco   website,   www.vitacoco.com   (**"Vita   Coco's   Website"**), prominently states as "Our Story":

> From New York to Brazil:  Ten years ago, during a casual outing to a New York City bar, childhood friends Mike Kirban and Ira Liran met two young women from Brazil.  Shortly after that night, Ira hopped on a plane to Brazil to see one of the girls and learned that the coconut water hype was real.  When Mike came to visit a few months later, they got down to business with a plan to bring coconut water to the US.  Vita Coco was born.

> The Start of Something Fresh:  Before long, the two friends produced the first Vita Coco in Brazil.  They soon released the first line of natural coconut water in the US, and officially got the refreshing craze rolling.

34.     Vita Coco's Website also prominently depicts under "Vita Coco was Born" the Brazilian flag, a manufacturing plant under the Brazil flag, a plane traveling from Brazil to the United States, and Vita Coco bottles under the American flag, shown below (and animated on the website):



The message is simple: Vita Coco coconut water is manufactured in and imported from Brazil using Brazilian coconuts.

35.     AMI currently states on social media the following about Vita Coco coconut water in order to induce the consumer to purchase Vita Coco:

- We're born out of Brazil's sand, sun, and fun;
- Brazil sand, surf, and sun beams is the Vita Coco dream;
- It's the Brazilian way;
- Want to look like a Brazilian;

8

- Feel the beauty of Brazil; and
- Greetings from Brazil.

36.     AMI currently advertises Vita Coco using social media hashtags of #BornInBrazil, #brazilconnection, #brazil, in an effort to associate Vita Coco with Brazil, Brazilian coconuts, and as "born in brazil" – everything Brazilian.

37.     While promoting the product, the sales representatives wear Vita Coco uniforms made of Brazil's colors, and that contain the Brazilian flag.  The uniforms are also made to mimic Brazil's soccer jerseys.

38.     AMI offers contests in which it provides vacation prizes to travel to Brazil for consumers drinking Vita Coco.  AMI has an entire marketing campaign "Escape with Vita Coco" and a website, www.escapewithvitacoco.com, dedicated to a yoga retreat coordinated by Vita Coco for its consumers in Praia da Pipa, Brazil from February 27 through March 4, 2016.

39.     AMI cross markets Vita Coco with Brazilian brands, and even teamed up to create a Vita Coco bikini "inspired by Vita Coco's Brazilian roots."

40.     Vita Coco's Website and LinkedIn account describe one of the hiring criteria to work as an employee of Vita Coco as "Do you know where Brazil is in on a Map?"

41.     AMI's misrepresentations cause confusion among consumers.  Consumers believe they are purchasing a Brazilian-based coconut water, sourced, manufactured, and imported from Brazil, using Brazilian coconuts, when in fact consumers are purchasing coconut water made with coconuts from all over the world – which is no different now than many of Vita Coco's competitors.

42.     As a result of AMI's false, deceptive, and misleading Vita Coco Container, Packaging and omissions, consumers like Plaintiffs were and continue to be deceived when they purchase Vita Coco in violation of state laws governing unfair and deceptive trade practices.

9

AMI has also been unjustly enriched as a result of its conduct that enables it to charge a premium for its coconut water.

43.     As a result of these unfair and deceptive practices, AMI collected millions of dollars from the sale of Vita Coco that it would not have otherwise earned.  Plaintiffs and the class members they represent paid money for a product that is not what it claims to be, or what they bargained for.  AMI deceptively labeled the Vita Coco Containers rendering the coconut water worthless, entitling Plaintiffs to a full refund of the purchase price.  Plaintiffs paid a premium for Vita Coco when they could have instead bought other, less expensive coconut water, or coconut water that is actually produced in Brazil with Brazilian coconuts, as Vita Coco tries to portray.  The improper price premium for Vita Coco could not have been charged without the misrepresentations and deception.

**Plaintiffs**

44.     At all relevant times, Plaintiff, Wasser, resided in, and continues to reside in, Miami-Dade County, Florida. During the relevant time period, Wasser purchased Vita Coco in reliance on the representations contained on its Container and the marketing of Vita Coco as being sourced and manufactured with Brazilian coconuts and imported from Brazil. Wasser consistently purchased Vita Coco during the relevant time period at retailers in the State of Florida. Wasser has since learned that not all Vita Coco is sourced and manufactured with Brazilian coconuts.

45.     Plaintiff, Wasser, purchased Vita Coco in reliance on AMI's representations and omissions that all Vita Coco was sourced and manufactured with Brazilian coconuts.  Wasser accepted AMI's misrepresentations that Vita Coco was "born in brazil" in making his purchases, and would not have purchased Vita Coco that was not made with Brazilian coconuts had he known that the representations were false.  Based on AMI's misrepresentations and

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., 27th Floor, Miami, FL 33131  305.379.9000

deceptive conduct, Wasser purchased Vita Coco that had less value than what he paid, and he has accordingly suffered legally cognizable damages proximately caused by AMI's misconduct. Wasser was willing to pay a premium for Vita Coco because of these representations and omissions, and would not have purchased, would not have paid as much for the product, or would have purchased alternative products in absence of these misrepresentations and omissions.

46. Plaintiff, Wasser, faces a real and immediate threat of future harm because of the deceptive Container, Packaging, labeling and marketing of Vita Coco which is sold at inflated prices based upon the deception. The Court's injunction would prevent and end this practice. Wasser would purchase Vita Coco again if and when it is properly labeled and marketed.

47. At all relevant times, Plaintiff, Gold, resided in, and continues to reside in, New York, New York. During the relevant time period, Gold purchased Vita Coco in reliance on the representations contained on its Container and the marketing of Vita Coco as being sourced and manufactured with Brazilian coconuts and imported from Brazil. Gold consistently purchased Vita Coco during the relevant time period at retailers in the State of New York. Gold has since learned that not all Vita Coco is sourced and manufactured with Brazilian coconuts.

48. Plaintiff, Gold, purchased Vita Coco in reliance on AMI's representations and omissions that all Vita Coco was sourced and manufactured with Brazilian coconuts. Gold accepted AMI's misrepresentations that Vita Coco was "born in brazil" in making her purchases, and would not have purchased Vita Coco that was not made with Brazilian coconuts had she known that the representations were false. Based on AMI's misrepresentations and deceptive conduct, Gold purchased Vita Coco that had less value than what she paid, and she

has accordingly suffered legally cognizable damages proximately caused by AMI's misconduct. Gold was willing to pay a premium for Vita Coco because of these representations and omissions, and would not have purchased, would not have paid as much for the product, or would have purchased alternative products in absence of these misrepresentations and omissions.

49.　　Plaintiff, Gold, faces a real and immediate threat of future harm because of the deceptive Container, Packaging, labeling and marketing of Vita Coco which is sold at inflated prices based upon the deception. The Court's injunction would prevent and end this practice. Gold would purchase Vita Coco again if and when it is properly labeled and marketed.

50.　　At all relevant times, Plaintiff, Rechtman, resided in, and continues to reside in, San Diego County, California. During the relevant time period, Rechtman purchased Vita Coco in reliance on the representations contained on its Container and the marketing of Vita Coco as being sourced and manufactured with Brazilian coconuts and imported from Brazil. Rechtman consistency purchased Vita Coco during the relevant time period at retailers in the State of California. Rechtman has since learned that not all Vita Coco is sourced and manufactured with Brazilian coconuts.

51.　　Plaintiff, Rechtman, purchased Vita Coco in reliance on AMI's representations and omissions that all Vita Coco was sourced and manufactured with Brazilian coconuts. Rechtman accepted AMI's misrepresentations that Vita Coco was "born in brazil" in making her purchases, and would not have purchased Vita Coco that was not made with Brazilian coconuts had she known that the representations were false.　　Based on AMI's misrepresentations and deceptive conduct, Rechtman purchased Vita Coco that had less value than what she paid, and she has accordingly suffered legally cognizable damages proximately

12

caused by AMI's misconduct. Rechtman was willing to pay a premium for Vita Coco because of these representations and omissions, and would not have purchased, would not have paid as much for the product, or would have purchased alternative products in absence of these misrepresentations and omissions.

52.     Plaintiff, Rechtman, faces a real and immediate threat of future harm because of the deceptive Container, Packaging, labeling and marketing of Vita Coco which is sold at inflated prices based upon the deception. The Court's injunction would prevent and end this practice. Rechtman would purchase Vita Coco again if and when it is properly labeled and marketed.

### A. Class Definitions

53.     Plaintiffs bring this action against AMI pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other persons similarly situated. Plaintiffs seek certification of the Nationwide Class and State subclasses, defined as follows:

### Nationwide Class

**All consumers who purchased Vita Coco, at retail in the 48 contiguous States for offsite, personal, family, or household consumption and not for re-sale, that was not sourced, manufactured, and imported from Brazil.**

### Florida Subclass

**All consumers who purchased Vita Coco at retail in the State of Florida for offsite, personal, family, or household consumption and not for re-sale, that was not sourced, manufactured, and imported from Brazil.**

### New York Subclass

**All consumers who purchased Vita Coco at retail in the State of New York for offsite, personal, family, or household consumption and not for re-sale, that was not sourced, manufactured, and imported from Brazil.**

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., 27th Floor, Miami, FL 33131  305.379.9000

<u>California Subclass</u>

All consumers who purchased Vita Coco at retail in the State of California for offsite, personal, family, or household and not for re-sale, that was not sourced, manufactured, and imported from Brazil.

54. AMI subjected Plaintiffs and the class members they represent to the same unfair, unlawful, and deceptive practices and harmed them in the same manner, and was unjustly enriched in the same manner.

## B.     Numerosity

55. The proposed class and subclasses are so numerous that joinder of all members would be impracticable. According to published articles, AMI controls 40-60% of the one billion dollar coconut water industry. AMI sells and distributes Vita Coco nationally, including throughout the States of Florida, New York and California. Although the number of class members is not presently known, all classes are likely to be comprised of many thousands of consumers. The classes are all certainly so numerous that joinder of all members of the classes is impracticable.

## C.     Commonality

56. There are questions of law and fact that are common to all Plaintiffs' and class members' claims. These common questions predominate over any questions that go particularly to any individual member of any class. Common questions of fact and law exist because, *inter alia,* Plaintiffs and all class members purchased Vita Coco believing it to be a Brazilian coconut water, made with Brazilian coconuts, consistent with its brand identity. Indeed, all the Vita Coco Containers and Packaging is uniform throughout the contiguous United States in deceiving the consumers to believe that all Vita Coco coconut water is made with Brazilian coconuts.

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., 27th Floor, Miami, FL 33131  305.379.9000

Consumers throughout the contiguous United States all received the same deceptive Vita Coco Container.

57.     The common questions include, but are not limited to:

    a.   Whether AMI falsely, deceptively and/or misleadingly misrepresented Vita Coco as sourced with Brazilian coconuts;

    b.   Whether AMI falsely, deceptively and/or misleadingly misrepresented Vita Coco as manufactured in Brazil;

    c.   Whether AMI falsely, deceptively and/or misleadingly misrepresented Vita Coco as imported from Brazil;

    d.   Whether AMI falsely, deceptively and/or misleadingly misrepresented Vita Coco as "born" in Brazil;

    e.   Whether AMI falsely, deceptively and/or misleadingly misrepresented Vita Coco as Brazilian coconut water;

    f.   Whether AMI falsely, deceptively and/or misleadingly omitted to appropriately display that Vita Coco sources, manufactures, and imports Vita Coco from outside Brazil, including the Philippines, Malaysia, Indonesia, Thailand and Sri Lanka;

    g.   Whether AMI's misrepresentations and omissions are likely to deceive a reasonable consumer;

    h.   Whether, as a result of the manufacturing of Vita Coco from several countries, the Container and Packaging falsely, deceptively and/or misleads consumers;

    i.   Whether Plaintiffs and members of the Nationwide Class and the State subclasses were damaged by AMI's conduct;

    j.   Whether Plaintiffs and members of the Nationwide Class and State subclasses are entitled to damages;

    k.   Whether AMI violated Florida's Unfair and Deceptive Unfair Trade Practices Act;

    l.   Whether AMI violated New York General Business Law § 349;

    m.   Whether AMI violated California's Unfair Competition Law, Business and Professions Code § 17200;

15

n. Whether AMI violated California's Consumer Legal Remedies Act, Civil Code § 1750, *et seq.*;

o. Whether and to what extent AMI has been unjustly enriched by its conduct;

p. Whether Plaintiffs and class members are entitled to compensatory damages, including actual and statutory damages plus interest thereon and/or monetary restitution;

q. Whether AMI must disgorge any sums it has made as a result of its misconduct;

r. Whether AMI's conduct rises to the level of willfulness so as to justify punitive damages; and

s. Whether an injunction is appropriate in order to prevent AMI from continuing to engage in unfair, deceptive and unlawful activity.

### D.     Typicality

58.     Plaintiffs' claims are typical of the claims of the members of the classes and subclasses because they purchased and consumed Vita Coco, which was deliberately misrepresented as being "born in brazil," sourced with Brazilian coconuts, and manufactured and imported from Brazil. Thus, Plaintiffs and all class and subclass members sustained the same injury arising out of AMI's common course of conduct in violation of law as alleged herein. The injury of each class member was caused directly by AMI's uniform wrongful conduct in violation of law as alleged herein. Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiffs as a result of AMI's wrongful conduct.

### E.     Adequacy of Representation

59.     Plaintiffs will fairly and adequately protect the interest of the members of the classes. Plaintiffs have retained highly competent and experienced class action attorneys to

16

represent their interests and those of the classes. Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action. Plaintiffs have no adverse or antagonistic interests to those of the classes. Plaintiffs are willing and prepared to serve the Court and the class members in a representative capacity, with all of the obligations and duties material thereto, and they are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for the class members.

60. To prosecute this case, Plaintiffs have chosen the undersigned law firm, which is experienced with class action litigation and has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

### F. Requirements of Fed. R. Civ. P. 23(b)(3)

61. This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

### G. Common Questions of Law and Fact Predominate:

62. The questions of law or fact common to Plaintiffs' and each class member's claims predominate over any questions of law or fact affecting only individual members of the class.

### H. Superiority

63. A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

> (a) Joinder of all class members would create extreme hardship and inconvenience for the affected customers as they reside all across the states;
>
> (b) Individual claims by class members are impractical because the costs to pursue individual claims exceed the value of what any one class member may recover. As a result, individual class members have no interest in prosecuting and controlling separate actions;

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., 27th Floor, Miami, FL 33131  305.379.9000

(c) There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

(d) The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

(e) Individual suits would not be cost effective or economically maintainable as individual actions; and

(f) The action is manageable as a class action.

64.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of these class actions that would preclude their maintenance as class actions.

### H. Requirements of Fed. R. Civ. P. 23(b)(1) & (2)

65.     Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

66.     AMI has acted or failed to act in a manner generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

67.     AMI's wrongful conduct and practices, if not enjoined, will subject class members and other members of the public to substantial continuing harm and will cause irreparable injuries to class members and members of the public who are damaged by AMI's conduct.

### COUNT I
### UNJUST ENRICHMENT
### (Nationwide Class)

68.     Plaintiffs re-allege the allegations of paragraphs 1 through 67 as if fully set forth herein.

69.     AMI received from Plaintiffs and class members benefits in the form of inflated revenues related to AMI's misrepresentations that Vita Coco coconut water is made from Brazilian coconuts, "born in brazil," manufactured, and imported from Brazil, when it is in fact made from coconuts from outside Brazil, including, the Philippines, Malaysia, Indonesia, Thailand and Sri Lanka.

70.     AMI acted to mislead consumers into believing that Vita Coco was "born in brazil" and that it was manufactured with Brazilian coconuts to mimic the historic "agua de coco," despite the fact that AMI changed the main ingredient in its product, i.e., the Brazilian coconuts.

71.     AMI received financial benefits in the form of increased revenues and profits from its conduct. The source of these financial benefits is the purchase of Vita Coco by Plaintiffs and the class while being deceived that Vita Coco is Brazilian. As a result, Plaintiffs and the class have conferred a benefit on AMI.

72.     AMI had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on them.

73.     AMI will be unjustly enriched if allowed to retain the aforementioned benefits, and each class member is entitled to recover the amount by which AMI was unjustly enriched at their expense.

**WHEREFORE,** Plaintiffs, on behalf of themselves and all similarly situated class members, demand an award against the Defendant, AMI, in the amounts by which AMI has been unjustly enriched at Plaintiffs' and the class members' expense, prejudgment interest, attorneys' fees, costs and any other relief as this Court deems just and proper.

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., 27th Floor, Miami, FL 33131  305.379.9000

## COUNT II
## INJUNCTIVE RELIEF
### (Nationwide Class)

74.     Plaintiffs re-allege the allegations of paragraphs 1 through 67 as if fully set forth herein.

75.     This is an action for permanent injunctive relief.

76.     AMI deceptively states on Vita Coco Containers that the product is "born in brazil," utilizes deceptive Packaging, and buttresses the deception with a marketing campaign that Vita Coco is made in Brazil.

77.     AMI's actions are to the detriment of Plaintiffs and those similarly situated.

78.     If an injunction is not granted, AMI will continue its improper practice.

79.     Plaintiffs and those similarly situated will suffer irreparable harm if an injunction is not granted as monetary damages cannot force AMI to correct its improper conduct or enjoin AMI from continuing its improper practice.

80.     Plaintiffs have no adequate remedy at law to prevent AMI from continuing its improper practice.

81.     The requested injunction promotes the public interest by furthering the proper labeling and marketing of Vita Coco.

82.     Accordingly, on behalf of Plaintiffs and those similarly situated, Plaintiffs ask this Court to enjoin AMI from improperly labeling and marketing its product as "born in brazil," requiring AMI to remove and/or clarify the deceptive language and/or to include a prominent disclaimer on the Container, Packaging, and marketing material that informs consumers that Vita Coco is made with coconuts throughout the world, and manufactured and imported throughout the world, or alternatively, to resume production only in Brazil.

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., 27th Floor, Miami, FL 33131   305.379.9000

**WHEREFORE**, Plaintiffs, on behalf of themselves and all similarly situated class members, demand judgment against Defendant, AMI, for injunctive relief, attorneys' fees and costs, and any other relief as this Court deems just and proper.

**COUNT III**
**VIOLATION OF THE FLORIDA**
**DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(Florida Subclass)**

83.     Plaintiff, Wasser, re-alleges the allegations of paragraphs 1 through 67 as if fully set forth herein.

84.     FDUTPA, section 501.201, *et seq.,* Florida Statutes, prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204, Fla. Stat.

85.     Wasser, and the Florida Subclass are "consumers" as that term is defined in section 501.203(7), Florida Statutes.

86.     Wasser has standing to pursue this claim as he has suffered injury in fact and has lost money or property as a result of AMI's actions as set forth above.

87.     AMI has engaged in, and continues to engage in, unconscionable acts or practices and used unfair or deceptive acts in the conduct of its trade and/or commerce in the State of Florida.

88.     AMI's business practices, as alleged herein, are "unfair" because they offend established public policy and are immoral, unethical, unscrupulous, and substantially injurious to their customers. Additionally, AMI's conduct is unfair because AMI's conduct violated the legislatively declared policies in FDUTPA. AMI misled consumers into believing that Vita Coco was Brazilian, made from Brazilian coconuts, "born in brazil," manufactured and imported from

21

Brazil, when it is in fact born, manufactured, imported, and made from coconuts from outside Brazil, including the Philippines, Malaysia, Indonesia, Thailand and Sri Lanka.

89.     AMI concealed these facts from the consumers.

90.     Furthermore, AMI's business practices, as alleged herein, are "deceptive" because they are likely to deceive consumers, including Wasser, and members of the Florida Class.

91.     The policies, acts, and practices alleged herein were intended to result and did result in the payment of inflated prices for the purchase of Vita Coco by Wasser and the Florida Subclass, which in turn were intended to generate unlawful or unfair compensation for AMI.

92.     Specifically, AMI has misled consumers into believing Vita Coco was still "born in brazil," made from Brazilian coconuts, manufactured and imported from Brazil, when in fact it is in fact born, manufactured, imported, and made from coconuts from the Philippines, Malaysia, Indonesia, Thailand and Sri Lanka.

93.     AMI took advantage of Wasser's trust and confidence in the Vita Coco brand, and deceptively began manufacturing, importing, and making Vita Coco with coconuts "born" in the Philippines, Malaysia, Indonesia, Thailand and Sri Lanka, without informing Wasser that Vita Coco was no longer "born in brazil" or made with Brazilian coconuts.

94.     AMI's conduct of misrepresenting and mislabeling Vita Coco to Wasser and consumers mislead Wasser into believing that Vita Coco was "born in brazil," made from Brazilian coconuts, manufactured and imported from Brazil.

95.     Wasser relied on these misrepresentations.

22

96.    AMI's actions violate FDUTPA, and were conceived, devised, planned, implemented, approved, and executed within the State of Florida, which has an interest in prohibiting violations of FDUTPA.

97.    In addition, the practice employed by AMI, whereby AMI sold, promoted and marketed Vita Coco as a Brazilian product, "born in brazil," constitutes a *per se* violation of FDUTPA under Section 501.203(3)(c) because it is in violation of the Florida Food Safety Act, Fla. Stat. § 500.04 (1) and (2) in that said products are misbranded.

98.    AMI's false, unlawful, and misleading product descriptions render its products misbranded under Florida law. Specifically, Section 500.04 of the Florida Food Safety Act prohibits the manufacture, sale or delivery of "misbranded food." Food is "misbranded" when "its labeling is false or misleading in any particular." Fla. Stat. § 500.11(1)(a) & (b). A food is considered mislabeled unless the proper disclosures are made "on the outside container or wrapper" on the product. § 500.03(1)(t). Misbranded products cannot be legally sold and are legally worthless.

99.    Wasser, and the Florida Subclass sustained damages as a direct and proximate result of AMI's unfair and unconscionable practices. Section 501.211(2), Florida Statutes provides Wasser and the Florida Subclass a private right of action against AMI and entitles them to recover their actual damages, plus attorneys' fees and costs.

100.    As a result of AMI's unfair conduct and deception Wasser and members of the Florida Subclass have been damaged in that they spent money on premium-priced Vita Coco that they would not have otherwise have spent and did not receive the value for — a product that is indeed considered worthless due to Vita Coco's misbranding.

101.    AMI's wrongful business practices alleged herein constitute a continuing course of unfair competition because AMI marketed or sold Vita Coco in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers. Wasser and the Florida Subclass have been damaged by AMI's deceptive and unfair conduct in that they purchased a misbranded and worthless product or paid prices they otherwise would not have paid had AMI not misrepresented the product.

102.    Wasser and the Florida Subclass have suffered and will continue to suffer irreparable harm if AMI continues to engage in such deceptive, unfair, and unreasonable practices.

**WHEREFORE,** Plaintiff Wasser, on behalf of himself and the Florida Subclass, demand judgment against Defendant, AMI, for compensatory damages, pre- and post-judgment interest, attorneys' fees pursuant to FDUTPA, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

<u>**COUNT IV**</u>
<u>**VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW & 349**</u>
<u>**(New York Subclass)**</u>

103.    Plaintiff, Gold, re-alleges the allegations of paragraphs 1 through 67 as if fully set forth herein.

104.    Gold, a New York resident who purchased Vita Coco in New York, and who has been subjected to AMI's scheme to mislead and deceive consumers, asserts this claim on behalf of the New York Subclass. Gold and the New York Subclass purchased Vita Coco in New York and were deceived by AMI into believing that Vita Coco was Brazilian, made from Brazilian coconuts, "born in brazil," manufactured and imported from Brazil, when it is in fact born, manufactured, imported, and made from coconuts from the Philippines, Malaysia, Indonesia, Thailand and Sri Lanka.

24

105.     AMI concealed these facts from the consumers.

106.     AMI's acts and practices alleged herein constitute acts, uses, or employment by AMI and its agents of deception, fraud, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression, or omission, in violation of New York General Business Law § 349 ("NY GBL § 349"), making deceptive and unfair acts and practices illegal.

107.     AMI engaged in deceptive and unfair practices in violation of NY GBL § 349 by, among other things, misleading consumers into believing Vita Coco was still made with Brazilian coconuts, born, manufactured, and imported from Brazil, when it is in fact born, manufactured, imported, and made from coconuts from the Philippines, Malaysia, Indonesia, Thailand and Sri Lanka.

108.     AMI took advantage of Gold's trust and confidence in the Vita Coco brand, and deceptively began manufacturing, importing, and making Vita Coco from coconuts from the Philippines, Malaysia, Indonesia, Thailand and Sri Lanka, without informing Gold.

109.     AMI's false, unlawful, and misleading product descriptions render its products misbranded under New York law. Specifically, New York Agriculture & Markets Law provides that food shall be deemed misbranded "[i]f its labeling is false or misleading in any particular." N.Y. Agric. & Mkts. Law § 201 (McKinney). Misbranded products cannot be legally sold and are legally worthless.

110.     The unfair and deceptive trade acts and practices of AMI are consumer oriented, are materially misleading, and have directly, foreseeably, and proximately caused damages and injury to Gold and the other members of the New York Subclass.

111.    As a result of AMI's unfair conduct and deception, Gold and members of the New York Subclass have been damaged in that they spent money on premium-priced Vita Coco that they would not have otherwise have spent and did not receive the value for — a product that is indeed considered worthless due to Vita Coco's misbranding.

**WHEREFORE,** Plaintiff, Gold, on behalf of herself and the New York Subclass, demand judgment against Defendant, AMI, for compensatory damages, pre- and post-judgment interest, injunctive relief, declaratory relief, attorneys' fees, and costs as a result of AMI's, violations of NY GBL § 349, and any other relief as this Court deems just and proper.

**COUNT V**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**BUSINESS AND PROFESSIONS CODE § 17200, *ET SEQ.***
**(California Subclass)**

112.    Plaintiff, Rechtman, re-alleges the allegations of paragraphs 1 through 67 as if fully set forth herein.

113.    As alleged herein, AMI has marketed and sold coconut water in a way that misleads consumers into believing that Vita Coco is still made with Brazilian coconuts and manufactured and imported from Brazil, claiming that Vita Coco is "born in brazil."

114.    AMI sells coconut water at prices substantially higher than those of domestic coconut water and non-Brazilian coconut water, despite the fact that Vita Coco is born, manufactured, imported, and made from coconuts from the Philippines, Malaysia, Indonesia, Thailand and Sri Lanka.

115.    AMI took advantage of Rechtman's trust and confidence in the Vita Coco brand, and deceptively began manufacturing, importing, and making Vita Coco from coconuts from the Philippines, Malaysia, Indonesia, Thailand and Sri Lanka, without informing Rechtman.

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., 27th Floor, Miami, FL 33131  305.379.9000

116.    Rechtman has suffered injury in fact and lost money or property as a result of AMI's conduct because he purchased Vita Coco in reliance on AMI's representations and omissions that Vita Coco was "born in brazil." Rechtman was willing to pay a premium for Vita Coco because of these representations and omissions, and would not have purchased, would not have paid as much for the products, or would have purchased alternative products in absence of these representations and omissions.

117.    California's Unfair Competition Law, Business & Professions Code § 17200, *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising. In the course of conducting business, AMI committed unlawful business practices by, *inter cilia,* making the representations (which also constitute advertising within the meaning of section 17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code, §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200, *et seq.,* 17500, *et seq.,* and the common law.

118.    AMI's actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia,* AMI engaged in false advertising, misrepresented and omitted material facts regarding Vita Coco, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

119.    As stated herein, Rechtman and the California Subclass allege violations of consumer protection, unfair competition and truth in advertising laws in California and other states, resulting in harm to consumers. AMI's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. AMI's practices are additionally unfair because they

27

have caused Rechtman and other members of the class substantial injury, which is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could have reasonably avoided. This conduct constitutes violations of the unfair prong of Business & Professions Code § 17200, *et seq.*

120.    Further, California's Sherman Law, adopts, incorporates, and is, in all relevant aspects, identical to the federal Food Drug & Cosmetic Act, 21 U.S.C.§ 301, *et seq.* ("FDCA") and the regulations adopted pursuant to that act. These violations render Vita Coco "misbranded." Under FDCA section 403(a) (and the Sherman Law's counter-part), food is "misbranded" its "labeling is false or misleading in any particular." 21 U.S.C. § 343(a). Misbranded products cannot be legally sold and are legally worthless. This conduct constitutes violations of the unlawful prong of Business & Professions Code § 17200, *et seq.*

121.    There were reasonably available alternatives to further AMI's legitimate business interests, other than the conduct described herein.

122.    Business & Professions Code § 17200, *et seq.,* also prohibits any "fraudulent business act or practice."

123.    AMI's actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200, *et seq.*

124.    Rechtman and other members of the California Subclass have in fact been deceived as a result of their reliance on AMI's material representations and omissions, which are described above. This reliance has caused harm to Rechtman and other members of the California Subclass who each purchased Vita Coco. Rechtman and the other California Subclass members have suffered injury in fact and lost money as a result of these unlawful, unfair, and

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., 27th Floor, Miami, FL 33131  305.379.9000

fraudulent practices. As a result of AMI's unfair conduct and deception, Rechtman and members of the California Subclass have been damaged in that they spent money on premium-priced Vita Coco that they would not have otherwise have spent and did not receive the value for — a product that is indeed considered worthless due to Vita Coco's misbranding.

125.    As a result of its deception, AMI has been able to reap unjust revenue and profit.

126.    Unless restrained and enjoined, AMI will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

127.    Rechtman and the California Subclass seek restitution and an injunction prohibiting AMI from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

128.    Pursuant to California Code of Civil Procedure § 1021.5, Rechtman and the California Subclass make claims for attorneys' fees and costs.

**WHEREFORE**, Plaintiff, Rechtman, on behalf of himself and the California Subclass, demand judgment against Defendant, AMI, for compensatory damages, restitution, pre- and post-judgment interest, attorneys' fees, injunctive and declaratory relief, corrective advertising, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

**COUNT VI**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**CIVIL CODE § 1750, *ET SEQ.***
**(California Subclass)**

129.    Plaintiff, Rechtman, re-alleges the allegations of paragraphs 1 through 67 as if fully set forth herein.

130.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "Act" or "CLRA"). Rechtman is a consumer as defined

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., 27th Floor, Miami, FL 33131  305.379.9000

by California Civil Code § 1761(d). Vita Coco constitutes "goods" within the meaning of the Act.

131.    AMI violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Rechtman and the California Subclass which were intended to result in, and did result in, the sale of Vita Coco:

        a.    Misrepresenting the source, sponsorship, approval, or certification of Vita Coco in violation of Civil Code § 1770(a)(2);

        b.    Using deceptive representations or designations of geographic origin in connection with Vita Coco in violation of Civil Code § 1770(a)(4);

        c.    Representing that Vita Coco has characteristics, uses and benefits which it does not have in violation of Civil Code §1770(a)(5);

        d.    Representing that Vita Coco is of a particular standard, quality, or grade, when it is of another in violation of Civil Code §1770(a)(7);

        e.    Advertising Vita Coco with an intent not to sell it as advertised in violation of Civil Code § 1770(a)(9); and

        f.    Representing that Vita Coco has been supplied in accordance with a previous representation when it has not in violation of Civil Code §1170(a)(16).

132.    AMI violated the Act by representing and failing to disclose material facts on the Vita Coco Container and associated advertising, as described above, when it knew, or should have known, that the representations were unsubstantiated, false and misleading and that the omissions were of material facts they were obligated to disclose.

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., 27th Floor, Miami, FL 33131  305.379.9000

133.    Pursuant to California Civil Code § 1782(d), Rechtman and the California subclass seek a Court order enjoining the above-described wrongful acts and practices of AMI.[4]

134.    Pursuant to California Civil Code section 1780, Rechtman and the California Subclass make claims for attorneys' fees and costs.

**WHEREFORE**, Plaintiff, Rechtman, on behalf of himself and the California Subclass, demand judgment against Defendant, AMI, for injunctive relief, attorneys' fees, and costs incurred in bringing this action, and any other relief as this Court deems just and proper.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, on behalf of themselves and all similarly situated individuals, demand judgment against Defendant, AMI, as follows:

(1)    Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) and (2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiffs and their counsel to be representatives of the class;

(2)    Enjoining AMI from continuing the acts and practices described above. Specifically, requiring AMI to remove and/or clarify the deceptive language and/or to include a prominent disclaimer on the Vita Coco labeling, Container, Packaging and marketing material that informs consumers Vita Coco is not made with Brazilian coconuts, and not manufactured and imported from Brazil or, in the alternative, to resume production in Brazil;

(3)    Awarding damages sustained by Plaintiffs and the classes as a result of the AMI's conduct, together with pre judgment interest;

---

[4] Pursuant to Section 1782(a) of the Act Rechtman reserves the right to serve a notification and demand letter on AMI and if AMI fails to rectify the problems within thirty days, Rechtman reserves the right to amend the complaint to seek damages, restitution, punitive damages, statutory damages, pre-and post-judgment interest, attorneys' fees, and costs.

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., 27th Floor, Miami, FL 33131  305.379.9000

(4)    Finding that AMI has been unjustly enriched and requiring it to refund all unjust benefits to Plaintiffs and the Nationwide Class, together with pre-judgment interest;

(5)    Awarding Plaintiffs and the classes costs and disbursements and reasonable allowances for the fees of Plaintiffs' and the classes' counsel and experts and reimbursement of expenses;

(6)    Awarding Plaintiff, Wasser, and the Florida Subclass damages, injunctive relief, declaratory relief, attorneys' fees, and costs under FDUTPA;

(7)    Awarding Plaintiff, Gold, and the New York Subclass damages, injunctive relief, declaratory relief, attorney's fees, and costs under New York General Business Law § 349;

(8)    Awarding Plaintiff, Rechtman, and the California Subclass damages, restitution, punitive damages, statutory damages, injunctive relief, declaratory relief, attorney's fees, and costs under California Code of Civil Procedure § 1021.5 and California Civil Code section 1780(e);

(9)    Awarding the Nationwide Class damages, injunctive relief, declaratory relief, attorneys' fees, and costs; and

(10)   Awarding such other and further relief the Court deems just and equitable.

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., 27th Floor, Miami, FL 33131  305.379.9000

## DEMAND FOR TRIAL BY JURY

Plaintiffs and the Nationwide Class and State subclasses demand trial by jury of all issues triable by jury as by right.

**Dated: April 7, 2016**

Respectfully submitted,

**KLUGER, KAPLAN, SILVERMAN,
KATZEN & LEVINE, P.L.**
*Attorneys for Plaintiffs*
Miami Center, Twenty Seventh Floor
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 379-9000
Facsimile:  (305) 379-3428

By: */s/ Steve I. Silverman*

**STEVE I. SILVERMAN**
Fla. Bar No. 516831
ssilverman@klugerkaplan.com
**PHILIPPE LIEBERMAN**
Fla. Bar No. 27146
plieberman@klugerkaplan.com
**RICHARD I. SEGAL**
Florida Bar No. 57187
rsegal@klugerkaplan.com