**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO: 1:16-CV-21238-JLK**

JOSHUA WASSER, ILA GOLD, and
ALYSSA RECHTMAN, on behalf of
themselves and all others similarly situated,

      *Plaintiffs*,

v.

ALL MARKET INC.,

      *Defendant*.

_____

**DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendant All Market Inc., d/b/a Vita Coco, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Local Rule 7.1, moves to dismiss Joshua Wasser, Ila Gold, and Alyssa Rechtman's ("Plaintiffs") Amended Complaint with prejudice.

## INTRODUCTION

Plaintiffs have not solved their standing problem.  Instead, they ask the Court to ignore it. Plaintiffs allege that Vita Coco's labels deceived them into thinking they were enjoying coconut water sourced exclusively from Brazil, when in fact Vita Coco harvests coconuts from tropical countries in ***addition*** to Brazil.  Plaintiffs cannot dispute that Brazil remains a major source of that coconut water.  In their original Complaint, Plaintiffs failed to allege facts demonstrating that they had, in fact, purchased non-Brazilian versions of Vita Coco.  On August 31, 2016, the Court dismissed Plaintiffs' original Complaint for lack of standing ("Standing Order"), agreeing with Vita Coco that "[t]he knowledge that a product might have come from somewhere other than the source represented does not create a concrete injury."  D.E. 27 at 3.

In their Amended Complaint, Plaintiffs try to put a Band-Aid on their standing problem with a single—and entirely speculative—new allegation:  that "Plaintiffs purchased and drank Vita Coco that was not sourced or manufactured in Brazil, and that was made with non-Brazilian coconuts."  *See, e.g.*, Amended Complaint ¶ 2 (D.E. 34) ("Am. Compl.").  Again, without specifying which product they allegedly purchased, when, or where they did so, this new allegation defies credulity.  Not only was it conspicuously absent from Plaintiffs' original filing, but it entirely contradicts Plaintiffs' fundamental theory: that Plaintiffs ***did not know*** the origin of the product they purchased.  Indeed, Plaintiffs cannot possibly know whether they purchased non-Brazilian sourced coconut water unless they looked at the statement of origin on the containers they purchased.  But Plaintiffs admit—as they must, to salvage a straight-faced argument for deception—that they did not do this prior to purchase.  *Id*. at ¶ 31 ("Reasonable consumers, including Plaintiffs, cannot or do not read the fine print on the Container each time they buy the drink to discern where the product is made.").  Nor have Plaintiffs alleged that they kept the products they purchased so their origins can be established.

Moreover, the other defects in Plaintiffs' original Complaint remain.  Because Plaintiffs now know the "truth" (that Vita Coco sources its coconut water from additional tropical countries)—and, indeed, acknowledge that they can determine whether any unit of Vita Coco was produced in Brazil simply by reading the existing label—they cannot demonstrate any

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL 33131-3456

potential future injury that would supply standing for injunctive relief.  Nor have they identified a single actionable misrepresentation, much less *which* statements caused them injury. Plaintiffs' allegations likewise foreclose any theory that Vita Coco is "worthless," and, as a result, the Court should dismiss their claim for a full refund.

## BACKGROUND

People in tropical countries around the world have long prized coconut water as a refreshing beverage, often drunk straight from the coconut.  *See* Am. Compl. ¶¶ 7-9.  But until Vita Coco's launch twelve years ago, coconut water was virtually unknown in the United States. *See id.* ¶¶ 10, 21.  Inspired by a visit to Brazil, Vita Coco's founders envisioned bringing this iconically tropical drink to the United States.  *See id.* ¶¶ 33-34.  And they succeeded.  Within a few years, Vita Coco pioneered a new, wildly popular beverage category.  *See id. ¶¶* 10-12, 21, 33.  As Plaintiffs themselves recognize, Brazil remains a vital part of Vita Coco's identity, history, and current business.  *See, e.g., id.* ¶¶ 23, 33-40.  To this day, Brazil produces a substantial volume of Vita Coco's production for U.S. distribution. *See id.* ¶¶ 11, 23.

Plaintiffs acknowledge that, as Vita Coco's production expanded beyond Brazil, its labels evolved to downplay Brazil.  Am. Compl. ¶¶ 16, 29; *compare id.* Ex. A *with id.* Ex. B.  In fact, Plaintiffs even admit that each unit sold specifically identifies its production location on the adjoining nutrition facts panel, a fact readily apparent from their own exhibits.  *Id.* ¶ 30; Ex. B at 2, 9.  Nevertheless, Plaintiffs claim that Vita Coco's labels and marketing duped them into believing that the coconut water is exclusively "sourced and manufactured with Brazilian coconuts and imported from Brazil." *Id.* ¶¶ 46, 49, 52.  Quite apart from the factual inaccuracies underlying these allegations (many of which are contradicted by the very documents and sources Plaintiffs cite in their Amended Complaint), a flawed legal premise animates these claims: that Vita Coco should have abandoned its Brazilian beginnings entirely when the Company expanded coconut water production into other countries, and that now, any time Vita Coco even *mentions* Brazil it has somehow committed an act of consumer fraud.  That is not the law.

## I.  Vita Coco's Birth in Brazil

Vita Coco is a true American success story.  Two childhood friends, New Yorkers Michael Kirban and Ira Liran, visited Brazil and witnessed first-hand the Brazilian enthusiasm for coconut water.  *See* Am. Compl. ¶ 33.  As described on Vita Coco's website, when Brazil inspired Kirban and Liran to bring coconut water to the U.S. market, "Vita Coco was born."  *Id.*

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

Barely twelve years later, the coconut water category has exploded in popularity in the U.S. and abroad—largely because of these two innovators.  *Id.* ¶¶ 11-12, 21.

Initially, Vita Coco sourced all of its coconut water from Brazil.  Am. Compl.  ¶ 14.  To this day, Vita Coco sources huge volumes of Brazilian coconut water for U.S. distribution.  *Cf. id.* at ¶¶ 11, 23.[1]  Eventually, sky-high demand outpaced supply, and the Company responded by expanding production to other countries, eventually partnering with farmers and factories in the Philippines, Malaysia, Thailand, Indonesia, and Sri Lanka.  *See id.* ¶ 22.  Vita Coco did not keep these developments quiet; on the contrary, the Company has always been transparent about (and even promoted) the sources of its coconut water.  In a 2012 interview with a widely distributed magazine, for example, Kirban explained at the outset how Vita Coco was "producing coconut water in a dozen facilities, in South America and Southeast Asia."[2]  *See also infra* pp. 14-15 (discussing Vita Coco website).

Vita Coco's product labels also changed over time.  On the early rectangular packages, the products read "Made in Brazil" on the front panel, and then read "Imported from Brazil" on the ***front*** side-angled display panel of the subsequent eight sided containers known as "Tetra Paks."  Am. Compl. ¶ 16, Ex. A.  Around the time that production expanded beyond Brazil, however, Vita Coco exchanged "Imported from Brazil" for "Born in Brazil," an homage to its roots, and—contrary to Plaintiffs' allegations—later moved the slogan to one of the Tetra Pak's

---

[1] The Amended Complaint incorrectly alleges that "[a]ll Large and Small size Vita Coco are manufactured and sourced outside Brazil" other than certain small size containers sold in 4-packs.  Am. Compl. ¶ 23.  *Compare* Declaration of Jonathan Burth in Support of Request For Judicial Notice (the "Burth Decl.") (filed concurrently)) Ex. 1-10 (demonstrating variety of sizes produced in Brazil).  As other courts in this District have recognized, a court ruling on a motion to dismiss may take judicial notice of allegedly deceptive or misleading product labels upon which a plaintiff's allegations are based.  *See* Def.'s Req. for Judicial Notice ("RJN") at 5-7.

[2] Reshma Yaqub, *Vita Coco's CEO Has Something to Prove*, Inc. Magazine (July/August 2012), *available at* http://www.inc.com/magazine/201207/reshma-yaqub/the-way-i-work-michael-kirban-vita-coco.html (first paragraph of article). *See* RJN at 8-9, Ex. C.  In ruling on a motion to dismiss, "courts may take judicial notice of documents such as   . . . newspaper articles . . . for the limited purpose of determining which statements the documents contain."  *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015).  Vita Coco requests that the Court take judicial notice only of the fact that this article and the statements therein was published, which can be readily verified by visiting the publication's webpage and thus cannot be reasonably disputed.  *See* Fed. R. Evid. 201(b)(2).

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

back side-angled panels.[3]  *See* Am. Compl. ¶ 29; Ex. B.  While the front and back panels are similar, the spout is positioned closest to the front panel of the product, where it is naturally positioned for a consumer to drink (a consumer reversing that position may be in for a spill).  Am. Compl. Ex. B at 7-8 (showing differing location of front and back panels based on spout location; "Born in Brazil" is on back side-angled panel to the left of the Nutrition Facts); *id.* at 1-5 (images of rear panel); *see* Am. Compl. ¶¶ 2, 29 (incorrectly alleging slogan is on the front).

On Vita Coco's current packaging, the phrase "Born in Brazil" appears barely more than an inch (and, on 330-milliliter units, even *less* than an inch) away from the statement identifying the country of production (e.g., "Produced in Brazil," "Produced in Sri Lanka") on the adjoining back panel.  *See, e.g.*, Am. Compl. ¶ 30, Ex. B at 9; Burth Decl. Ex. 1-11.  The font for the country of production, moreover, is in a bold typeface, and is nearly the same size as that used for the words "Born in Brazil"; it is set off from the other text by a dividing line (except when the unit is produced in Brazil).  *E.g.*, *compare id.* Ex. B at 2 (Produced in Thailand) *with* Ex. B at 9 (Produced in Brazil).  Set against a matte, contrasting background, the country of production is legible to a consumer looking at the "Born in Brazil" phrase on the back side-angled panel of the Vita Coco container from any reasonably direct angle.  *E.g.*, *id.* Ex. B at 2.

## II.     The Amended Complaint

Plaintiffs allege that they are consumers of Vita Coco from Florida (Wasser), New York (Gold), and California (Rechtman).  They allege that the statements on Vita Coco's container and Vita Coco's marketing misled them into believing that "all Vita Coco is sourced and manufactured with Brazilian coconuts."  Am. Compl.  ¶¶ 46, 50, 52.  In the one substantive deviation from their original Complaint, however, Plaintiffs now claim that, despite their alleged deception—and notwithstanding their admission that they "[did] not read the fine print on the Container each time they [bought] the drink to discern where the product is made"—they somehow now know that the particular containers of Vita Coco that *they* purchased (but do not allege they retained) were "not sourced or manufactured in Brazil" and were "made with non-

---

[3] Vita Coco is happy to supply demonstrative examples of the products for the Court's inspection in connection with this Motion.  *See, e.g.*, *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1340 (S.D. Fla. 2014) (O'Sullivan, M.J.) (inspecting demonstrative examples of beer alleged to be deceptively labeled as originating from Germany); *Dumas v. Diageo PLC*, No. 15cv1681, 2016 WL 1367511, at *3 (S.D. Cal. Apr. 6, 2016) (inspecting examples of beer alleged to be deceptively labeled as originating from Jamaica).

4

Brazilian coconuts."  Am. Compl. ¶¶ 2, 42.  Based on these allegations, Plaintiffs assert claims for violations of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), New York's General Business Law § 349, California's Unfair Competition Law § 17200 (UCL), California's Consumer Legal Remedies Act § 1750 (CLRA), and common law unjust enrichment and injunctive relief.  They seek four classes: one nationwide class and three state subclasses.

## ARGUMENT

### I.  Legal Standards

Defendants may challenge claims through a motion to dismiss when the Court lacks subject matter jurisdiction or when the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), 12(b)(6).  Dismissal under Rule 12(b)(1) is appropriate where a complaint does not establish jurisdictional standing under Article III of the U.S. Constitution. Article III confers federal jurisdiction only when there is an actual case or controversy, which requires that the plaintiff allege: (1) "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) injury that is fairly traceable to the challenged conduct of the defendant; and (3) injury that will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Where Plaintiffs cannot demonstrate injury in fact, the Court must dismiss their claims.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss" under Rule 12(b)(6).  *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1372 (S.D. Fla. 2015) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 678, 679 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive dismissal.  *Ashcroft*, 556 U.S. at 678; *see also Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  Unless Plaintiffs have pled specific and concrete facts that, if true, would "nudge[] the[] claims across the line from conceivable to plausible," the Court must grant this motion.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Moreover, Plaintiffs must meet Rule 9(b)'s stringent pleading standards for their California and Florida causes of action.  *See, e.g.*, *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1294 (S.D. Fla. 2007) (dismissing FDUTPA misrepresentation claim and four other claims for "fail[ure] to satisfy the mandates of Rule 9(b)"); *accord Librizzi v. Ocwen Loan Servicing, LLC*, 120 F. Supp. 3d 1368 (S.D. Fla 2015); *In re Horizon Organic Milk Plus DHA*

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

*Omega-3 Mktg. and Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1323 n.8 (S.D. Fla. 2013);[4] *see also Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 295 F.R.D. 540, 545 (S.D. Fla. 2013); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (UCL and CLRA). Accordingly, Plaintiffs must spell out the "who, what, when, where, and how" of Vita Coco's alleged deceptive conduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation omitted). They have not done so.

## II.      Plaintiffs Have Not Cured Their Lack of Article III Standing.

### A.      Plaintiffs Have Not Plausibly Alleged That They Purchased Non-Brazilian Coconut Water.

Plaintiffs' Amended Complaint attempts to pay lip-service to the standing defect that this Court determined was fatal to the original Complaint. The new allegation, however, changes nothing; it remains entirely speculative that Plaintiffs ever bought non-Brazilian coconut water. As the Court has already ruled, Florida, New York, and California law only confer standing to sue over allegedly mislabeled products on plaintiffs who actually purchased that product.[5] The original Complaint alleged that Plaintiffs purchased Vita Coco during the relevant time period, but then only learned *later* that Vita Coco sources its coconuts from various tropical countries in addition to Brazil. *See, e.g.,* Compl. ¶¶ 44 ("Wasser consistently purchased Vita Coco during the relevant time period at retailers in the State of Florida. **Wasser has since learned** that not all Vita Coco is sourced and manufactured with Brazilian coconuts." (emphasis added)). Agreeing that this allegation of injury was speculative, the Court dismissed the action in its Standing Order.

In the wake of the Court's Standing Order, Plaintiffs now allege that they ***actually*** "purchased and drank Vita Coco that was not sourced or manufactured in Brazil, and that was made with non-Brazilian coconuts." Am. Compl. ¶¶ 2, 42. Conspicuously absent from the Amended Complaint, however, are any new, particularized facts about any specific purchase(s) they made that would meet *Twombly's* plausibility requirement. "In the context of a claim of a

---

[4] Vita Coco recognizes that other courts in this District disagree that Rule 9(b) applies to FDUTPA claims. *See, e.g., Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355 n.5 (S.D. Fla. 2012) (acknowledging split); *Gastaldi v. Sunvest Communities*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009) (declining to apply Rule 9(b) to FDUTPA claim). Vita Coco submits that this Court correctly applied Rule 9(b) to dismiss a FDUTPA claim in *Garcia* and should do so here.

[5] *See Dapeer*, 95 F. Supp. 3d at 1373; *In re Takata Airbag Product Liability Lit.*, MDL No. 2599, 2016 WL 1266609, at *3 (S.D. Fla. Mar. 11, 2016); *Toback v. GNC Holdings, Inc.*, No. 13–80526–CIV, 2013 WL 5206103, at *5 (S.D. Fla. Sept. 13, 2013); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009); *Meyer v. Sprint Spectrum, L.P.*, 45 Cal. 4th 634, 638 (Cal. 2009).

6

defective product, the requirement that the plaintiffs' injury-in-fact be 'particularized' means that it is not enough for . . . plaintiffs to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, they must allege that *their* product *actually exhibited* the alleged defect." *In re Whole Foods Mkt. Grp., Inc. Overcharging Litig.*, 167 F. Supp. 3d 524, 536 (S.D.N.Y. 2016) (emphasis in original) (quoting *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014)).  "Without reference" to any "factual context" explaining how plaintiffs actually know they were injured, "the Federal Rules do not require courts to credit a complaint's conclusory statements." *Iqbal*, 556 U.S. at 686; *accord Howard v. Kerzner Int'l Ltd.*, No. 12-22184-CIV, 2014 WL 714787, at *5 (S.D. Fla. Feb. 24, 2014) (in ruling on a motion to dismiss, "courts need not accept internally inconsistent factual claims, conclusory allegations, unwarranted deductions, or mere legal conclusions made by a party" (quotation omitted)).

Courts have not hesitated to dismiss complaints when the allegation of injury is speculative. In *In re Whole Foods Market Group., Inc. Overcharging Litigation*, for example, the Southern District of New York dismissed a false advertising complaint on standing grounds for this very reason. 167 F. Supp. 3d at 532-35.  The plaintiffs alleged that Whole Foods engaged in a deceptive overpricing practice by frequently overweighing foods; the court dismissed the case because plaintiffs did not "allege that any particular purchase they made was affected by this practice" and that there was "no non-speculative basis on which to conclude that the *particular packages* of Whole Food products [plaintiffs] bought were overweighted." *Id.*  Similarly, in *Wallace v. ConAgra Foods*, the Eighth Circuit affirmed the dismissal of a false advertising case on standing grounds where the allegation was that some of Hebrew National kosher hot dogs did not accord with strict standards of kashrut.  747 F.3d at 1030-31.  The Court of Appeals agreed that the "consumers' allegations faile[ed] to show that any of the particular packages of Hebrew National beef they personally purchased contained non-kosher beef" and that it was "pure speculation to say that the particular packages sold to the consumers were tainted by non-kosher beef." *Id.*

So too here. The gravamen of both the original and Amended Complaints is the same: that Plaintiffs were "deceived by [Vita Coco] to believe that the Vita Coco that they buy and consume is manufactured in Brazil, and made from Brazilian coconuts, when it is not."  Am. Compl. ¶ 2.  Given the breadth of their allegations as to all Vita Coco products, and in light of the undisputed fact that Vita Coco still sources much of its coconut water from Brazil (*see id.* at

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

¶¶ 11, 23), Plaintiffs have not plausibly alleged, much less with the certainty necessary to establish standing, that they were deceived into purchasing non-Brazilian sourced Vita Coco. To the contrary, Plaintiffs allege—as they must as the purported basis for their deception—that they did not read the country of origin statement. *Id.* ¶ 31 ("Reasonable consumers, including Plaintiffs, cannot or do not read the fine print on the Container each time they buy the drink to discern where the product is made."). Because they have supplied zero details about the size, location, and timing of their purchase(s)—and do not allege they retained packaging to substantiate their claim[6]—this Court is left with only speculation that an injury occurred at all.

Plaintiffs' failure to allege any facts regarding their purchases is especially fatal in this case. Implicit in the allegation that Plaintiffs actually purchased and drank non-Brazilian coconut water is that Plaintiffs discovered this fact at some point before they each discarded their respective containers—presumably by looking at the label and reading the country of origin statement referencing a non-Brazilian country. Critical, however, to the Plaintiffs' individual standing is <u>when</u> Plaintiffs supposedly made this discovery.

There are two possibilities. The first possibility is that Plaintiffs discovered that they purchased and drank non-Brazilian coconut water sometime *before* they actually purchased or consumed the drink. In that scenario the Plaintiffs do not have standing. By definition they were not mislead, deceived or damaged by the "born in brazil" slogan (or Vita Coco's marketing) as the Complaint alleges because each Plaintiff would have knowingly decided to purchase or drink the product, notwithstanding the fact that it was not manufactured in Brazil.

The second possibility is that Plaintiffs discovered that their respective drinks were not sourced from Brazil sometime *after* they purchased and drank the product, but *before* they threw out their container. It is only under this circumstance that Plaintiffs even theoretically could have individual standing to pursue a case on behalf of similarly situated plaintiffs.

The Court should not be forced to guess; a mere probability of injury is not enough and dismissal of the Amended Complaint is appropriate. This is doubly true with respect to Plaintiffs' Florida and California claims, which must satisfy the stringent Rule 9(b) pleading

---

[6] All three Plaintiffs admitted that they do not have "[t]he Containers or Packaging for any" Vita Coco they purchased or any other "Documents relating to [their] purchase(s)" of Vita Coco. *See* Pls.' Resps. to Def.'s First Reqs. for Produc. (Composite Ex. A). *See Rojas Mamani v. Sanchez Berzain,* 636 F. Supp. 2d 1326, 1329 (S.D. Fla. 2009) (court is not limited to four corners of complaint on a motion to dismiss under Rule 12(b)(1)).

8

standard by setting forth the "who, what, when, where, and how" of their alleged deception. *See supra* at 7-8. Plaintiffs fail to make any allegation at all—much less an allegation of underlying facts satisfying Rule 9(b)—about where the Plaintiffs purchased, which size container(s) they purchased, when they discovered they purchased non-Brazilian coconut water, whether they ever purchased the four-packs that the Amended Complaint alleges obscure the country-of-origin statement (¶ 30), or how much they paid for the products—let alone how much they allegedly overpaid (Plaintiffs claim they were injured because they "paid a premium for Vita Coco" (Am. Compl. ¶ 45), yet there is not a *single* allegation in the Amended Complaint regarding pricing).

Because Plaintiffs' allegations of "injury" do not satisfy the plausibility standard applicable under Rule 8—much less the more stringent Rule 9(b) standard applicable to their Florida and California claims—the standing problem that prompted this Court to dismiss Plaintiffs' original Complaint remains, and the Court should rule likewise here.

### B. The Revised Standing Allegations Demonstrate that the Class is Not Ascertainable, and this Court Lacks Subject Matter Jurisdiction

#### 1. The Class is Not Ascertainable as a Matter of Law

As discussed above, the only conceivable way for Plaintiffs to adequately allege their standing is to state they each discovered that they drank non-Brazilian coconut water *after* they purchased or drank the product but *before* they discarded the container. This same requirement, however, applies not only to the named Plaintiffs, but to each member of the putative class. It is for this reason that on the face of the Amended Complaint, the class is not ascertainable as a matter of law, and therefore this Court lacks subject matter jurisdiction over this action pursuant to 18 U.S.C. 1332(d).

As the Eleventh Circuit explained in *Karhu v. Vital Pharms., Inc.,* 621 Fed. Appx. 945, 946 (11th Cir. 2015) "Rule 23 implicitly requires that the 'proposed class is adequately defined and clearly ascertainable.'" "This threshold issue of 'ascertainability,' relates to whether the putative class can be identified: '[a]n identifiable class exists if its members can be ascertained by reference to objective criteria.'" *Randolph v. J.M. Smucker Co.,* 303 F.R.D. 679, 684 (S.D. Fla. 2014) (citing *Bussey v. Macon Cty. Greyhound Park, Inc.,* 562 Fed. Appx. 782, 787 (11th Cir. 2004)). The "objective criteria" must be able to be applied in an "administratively feasible way." *Karhu,* 621 Fed. Appx. at 946 (internal quotations omitted); Administrative feasibility, in turn, means the existence of a "manageable process that does not require much, if any, individual inquiry." *Id*.

9

Based on this Court's Standing Order, the objective criteria to determine class membership in this case are that a consumer (1) purchased non-Brazilian coconut water; (2) believed that the coconut water was sourced from Brazil at the time the customer purchased and drank the product; and (3) subsequently discovered that the drink was not sourced from Brazil. By definition, these "objective criteria" require individual proof for each putative class member. And, the Eleventh Circuit has firmly rejected uncorroborated consumer affidavits where, as here, defendants' due process rights require "allowing them to challenge each claimant's class membership." *Karhu,* 621 Fed. Appx. at 948-49 (discussing multiple problems with self-identification ascertainment including the possibility of false consumer responses and danger of violating Defendants' due process).

In short, there is no way that the objective criteria in this case can be applied in a manageable and administratively feasible way to satisfy the law on ascertainably in this Circuit.

### 2. The Lack of an Ascertainable Class Deprives this Court of Subject Matter Jurisdiction Over this Case

The sole basis alleged in the Amended Complaint for this Court's subject matter jurisdiction is 28 U.S.C. § 1332(d) ("CAFA"). *See* Am. Compl. ¶ 3. CAFA provides federal courts with original jurisdiction over class actions where there is diversity between any member of a class and defendant, and where the amount in controversy exceeds $5 million. *See* 28 U.S.C. § 1332(d)(2). Here, the Court's subject matter jurisdiction is lacking because, as a matter of law, this case cannot qualify as a valid class action.

Admittedly, it is not often that Courts are called upon to evaluate their lack of jurisdiction over a class action at the motion to dismiss stage. Indeed, it is only in extraordinary circumstances (as here) that a complaint so clearly on its face forecloses the prospect of certification that a Court can be in a position to make that legal determination on the pleadings. However, as Judge Cohn recently held in his order dismissing the class case of *Karhu v. Vital Pharms., Inc.,* No. 13-60768-CIV-COHN, 2014 WL 1274119, at *2 (S.D. Fla. Mar. 27, 2014)*, "CAFA, once invoked, [does not] vest[] a court with subject-matter jurisdiction *ad infinitum.*" To the contrary, federal district courts are required to evaluate the basis for their jurisdiction "*sua sua sponte* whenever it may be lacking." *Id.* at *4 (citing *Gilmore v. Dir., U.S.D.O.L.*, 455 F. App'x 934, 935–36 (11th Cir. 2012) (per curiam) (internal quotation marks omitted)).

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL 33131-3456

Judge Cohn further observed that because the question of whether a class is certifiable is a legal conclusion, once the determination is made by the Court that certification is not possible, dismissal for lack of jurisdiction is appropriate:

> After a court has determined that there will be no class certification order . . . the action falls outside the scope of the circumstances enumerated under section 1332(d)(8) in which subject-matter jurisdiction exists. . . . Much as the Court should dismiss an action for lack of subject-matter jurisdiction upon a legal determination that the plaintiff has from the outset failed to satisfy section 1332(a)'s amount-in-controversy requirement, or its diversity requirement, ***so too should the Court dismiss a putative class action upon a legal determination that the plaintiff may not maintain his suit on a class basis***.

*Id. at* \*4 (emphasis added).

As discussed above, Plaintiffs' attempt to allege a class action fails as a matter of law because there is no administratively feasible way to ascertain an identifiable putative class. Thus, just as Judge Cohn determined in *Karhu,* there is no basis for this Court's subject matter jurisdiction, and the action, accordingly, should be dismissed.

### C.     Because They Know The "Truth," Prospective Injunctive Relief Would Not Redress Plaintiffs' Alleged Injury.

Plaintiffs lack Article III standing to seek ***prospective*** injunctive relief.  Even though Plaintiffs allege that they would purchase Vita Coco coconut water again if "properly labeled and marketed" (Am. Compl.  ¶¶ 48, 51, 54), they are not "realistically threatened by a repetition of the violation."  *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (citation omitted).  In *Strumlauf v. Starbucks Corp.*, the court denied injunctive relief on this very ground, holding that notwithstanding the defendant's alleged misrepresentations about the coffee chain's under-filled lattes, "[t]here is no danger that [plaintiffs] will be misled in the future" because "[n]ow they know."  --- F. Supp. 3d ---, 2016 WL 3361842, at \*3 (N.D. Cal. June 17, 2016); *see also Lusson v. Apple, Inc.*, No. 16-cv-00705-VC, 2016 WL 6091527, at \*4 (N.D. Cal. Oct. 19, 2016) (reasoning, in dismissing claims for injunctive relief, that defendant's "alleged deception can't give rise to future injury because it consists of a nondisclosure of which the plaintiffs are already aware"); *Garrison v. Whole Foods Mkt. Grp., Inc.*, 2014 WL 2451290, at \*5 (N.D. Cal. June 2, 2014) (claim for injunctive relief dismissed with prejudice because "plaintiffs have not alleged— and cannot plausibly allege" a "real and immediate threat of repeated injury" where they now know that products marked "All Natural" contain allegedly synthetic ingredients).

11

Like the plaintiffs in those cases, Plaintiffs here are now "fully aware" of the 'truth' about Vita Coco—namely, that its coconut water is produced from both Brazilian and non-Brazilian sources. And because they now know that they can determine whether any particular unit is produced in Brazil simply by looking at the label, there can be no misunderstanding about the origin of any coconut water Plaintiffs purchase in the future.

## III.   Plaintiffs Have Not Identified Any Actionable Misrepresentations.

Even without their standing problems, all of Plaintiffs' claims founder for other reasons: they have not identified a single actionable misrepresentation likely to deceive a reasonable consumer.[7] "Likely to deceive" demands "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie*, 105 Cal. App. 4th at 508. Instead, it means "that the ad is such that it is **probable** that a **significant** portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (emphasis added).

While the question of whether a statement is false or misleading is ordinarily a question of fact, courts have not hesitated to dismiss claims where they "can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging." *Dumas v. Diageo PLC*, No. 15cv1681, 2016 WL 1367511, at *3 (S.D. Cal. Apr. 6, 2016) (quotations omitted). Just recently in *Dumas*, for example, a California district court dismissed a similar lawsuit over the labels of Red Stripe beer, concluding that phrases like "Taste of Jamaica" and "Jamaican Style Lager" would not deceive reasonable consumers into believing the beer is actually brewed in Jamaica. *Id.*[8]

---

[7] *See PNR, Inc. v. Beacon Prop. Mgmt. Inc.*, 842 So. 2d 773 (Fla. 2003); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (1st Dist. 2003); *Stutman v. Chem. Bank*, 95 N.Y. 2d 24 (2000); *cf. Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090 (Fla. 3d DCA 2014).

[8] *See also Salters v. Beam Suntory*, No. 4:14cv659, 2015 WL 2124939, at *3 (N.D. Fla. May 1, 2015) (Hinkle, J.) (dismissing claims that "handmade" on labels of Maker's Mark bourbon because "no reasonable person would understand 'handmade' in this context to mean literally made by hand"); *Welk v. Beam Suntory Imp. Co.*, 124 F. Supp. 3d 1039, 1043-44 (S.D. Cal. 2015) (same for Jim Beam labels); *Keunzig v. Hormel Foods Corp.*, 505 F. App'x 937, 938 (11th Cir. 2013) (affirming dismissal of claims that certain fat-free and calorie claims on food labels were unfair or deceptive); *Lacoff v. Buena Vista Publ'g, Inc.*, 183 Misc. 2d 600, 610 (N.Y. Sup. 2000) (dismissing NY GBL § 349 claims of consumer fraud relating to investment book promising to "beat the stock market" and provide group's "secret recipe for investment success" because they were non-actionable).

Here, Plaintiffs bore the burden of alleging a "specific and measurable claim" capable of being proved false or being reasonably interpreted as a statement of objective fact. *Vitt v. Apple Comput., Inc.*, 469 F. Appx 605, 607 (9th Cir. 2012) (quotation omitted). Instead, they point only to a "generalized, vague" statement that, in context, could not deceive a reasonable consumer—especially in light of the statement's placement relative to nearby information supplying the particular unit's production location that is similarly sized and equally legible. *Welk*, 124 F. Supp. 3d at 1043 (quotation omitted).

### A.      Vita Coco's Tetra Paks Would Not Mislead Reasonable Consumers.

Without a doubt, the linchpin of the Amended Complaint is the phrase "Born in Brazil," (*e.g.*, ¶¶ 2, 29-31, 36, 50, 53, 60, 71, 72, 78, 84, 90, 94-96, 99, 106, 109, 115-16, 118) which, as noted, appears on the back side-angled panel of Vita Coco's Tetra Paks. Both standing alone, and in context, it is simply not probable that consumers would reasonably rely on "Born in Brazil" to identify the country of origin, or that it could mislead a significant number of consumers, acting reasonably in the circumstances. *Lavie*, 105 Cal. App. 4th at 508.

*First*, the notion that a product manufactured from a harvested crop like coconut water can be "born" is nonsensical. No consumer could reasonably interpret "Born in Brazil" as a statement of objective fact, much less connect it to Plaintiffs' extreme and idiosyncratic conclusion that every bottle of Vita Coco is exclusively "sourced and manufactured with Brazilian coconuts," any more than a consumer could discern from the label of beer marked "[t]he Taste of Jamaica" "what Jamaica 'tastes' like." *Dumas*, 2016 WL 1367511, at *4. Rather, the phrase "Born in Brazil" is a subjective reference to an abstract and romantic product attribute (namely, Vita Coco's Brazilian heritage) and is thus precisely the type of non-actionable statement that courts often refer to as "puffery" or "sales talk." *See, e.g.*, *Alvarez v. Royal Caribbean Cruises*, 905 F. Supp. 2d 1334, 1342 (S.D. Fla. 2012); *Silver v. Countrywide Home Loans*, *Inc*., 760 F. Supp. 2d 1330, 1342-43 (S.D. Fla. 2011). By contrast, in a case challenging the labeling of Beck's Beer, a court concluded that the combination of the phrase "Originated in Germany" with "Brewed under the German Purity Law of 1516" and "German Quality" created a specific, measurable affirmative representation designating German origins and making "it sound like the production of the beer was subject to German law" that could be proved demonstrably true or false. *Dumas,* 2016 WL 1367511, at *5 (discussing *Marty*, 43 F. Supp. 3d

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

at 1340-43).  Unlike the objective statements in *Marty*, at worst, the phrase "Born in Brazil" is non-actionable puffery and thus cannot entitle Plaintiffs to any legal relief.

*Second*, just because a reference to "Brazil" appears on the packaging, the statement "is not sufficient to support a conclusion that consumers would be confused regarding the origin and ingredients of the [coconut water]."  *Dumas*, 2016 WL 1367511, at *3.  To the contrary, "Brazil" always appears in close proximity—less than 1 inch away on 330-milliliter units, approximately 1 inch away on 500-milliliter units, and about 1¼ inches away on the 1-liter units—to a similarly-sized, clearly legible, and a bold printed statement of the country of origin on each container of Vita Coco.  Am. Compl. Ex. B at 2, 9; Burth Decl. Ex. 1-11.  Thus, the label is in full compliance with the requirements of 19 CFR § 134.46, the federal regulation governing product labels that reference a country other than the country of origin.  *See, e.g.,* CROSS, HQ 731035 (Feb. 29, 1988) ("To be considered 'in close proximity', the country of origin information must be visible simultaneously with the reference to the place other than the country of origin, without any manipulation of the article.").  Accordingly, any recovery for the alleged harm that Plaintiffs' complain of is expressly foreclosed by federal law.

As the *Dumas* court observed about Red Stripe (and disagreeing with the plaintiff's conclusory allegations that the disclaimer was difficult to read), "anyone examining the label carefully enough to read the language on the back of the label would see that the beer is brewed and bottled in Pennsylvania."  *Dumas*, 2016 WL 1367511, at *5.  The same is true here. *Compare id.* (finding significant that beer's actual brewing location was printed on "the edge of the label" and that "[a]lthough the words are small, the contrasting white print is legible") *with Marty*, 43 F. Supp. 3d at 1340 (concluding that "Product of USA" statement on beer can "is printed in white font against a shiny metallic silver background" and can be "obscured by overhead lighting.").  Other courts have reached similar conclusions about products labeled "Havana Club" and "Cajun Boy," determining that such statements cannot mislead reasonable consumers who are also told the product's country of origin.[9]  As in *Dumas*, the Vita Coco

---

[9] *Pernod Ricard USA LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 253 (3d Cir. 2011) (even if "Havana Club" on bottle of rum could be understood to signify the product's source as Havana Cuba, "those same words cannot mislead a reasonable consumer who is told in no uncertain terms that 'Havana Club' is a brand of rum made in Puerto Rico"); *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 753 (5th Cir. 2006) ("Cajun Boy" and "Cajun Delight" trade names on imported seafood were not misleading because products were labeled with country of origin).

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL 33131-3456

packaging uses bold, legible lettering set against a contrasting background to inform consumers where the coconut water in that unit was produced.

*Third*, Plaintiffs assert (as did the plaintiffs challenging Beck's Beer in *Marty*) that Vita Coco's outer cardboard packaging of its "4-packs" obscures the country of origin statement. *See* Am. Compl. ¶¶ 2, 30. However, Plaintiffs do not—because they cannot—plead that all (or even most) Vita Coco coconut water is sold in 4-packs (making the cardboard allegation irrelevant for all Tetra Paks sold as stand-alone units); they acknowledge that "some Small size Vita Coco sold in 'four packs' are manufactured and sourced from Brazil" (*id.* ¶ 23) (such that there could be no misrepresentation as to those products); and the images attached to their Amended Complaint show two separate styles of cardboard cartons for 4-packs, one of which leaves the country of origin statement in full view. *Id*. Ex. B at 8-9.

*Finally*, even assuming *arguendo* that the phrase "Born in Brazil" could be construed to signal that Brazilian coconuts are the exclusive source of Vita Coco's coconut water, there is nothing else on the Tetra Paks that does so. While Plaintiffs allege that the color schemes of the Tetra Paks "mimic[] the Brazilian flag" (Am. Compl. ¶ 2), the color schemes are palpably different. Vita Coco's dominant color is sky blue, while the Brazilian flag's colors are dark blue, Kelly green, and yellow. *Compare* Am. Compl. Ex. B at 1-9 (images of Vita Coco) *with* RJN Ex. D (Brazilian flag). The label simply presents a classic tropical beach scene, including palm trees, a peaceful ocean touching the sky, and a coconut with a straw sticking out of it. Am. Compl. Ex. B at 9; Burth Decl. Ex. 1-10. Indeed, as Plaintiffs themselves allege, coconut water "has long been a popular drink in tropical countries, often drank straight from the coconut." Am. Compl. ¶ 7. That is precisely what Vita Coco's labels convey.

### B.    Vita Coco Had No Heightened Duty to Inform Existing Customers of Its Expanded Production.

While it is not entirely clear from the Amended Complaint, another injury alleged is that Plaintiffs understood Vita Coco to be produced in Brazil exclusively in the early years of the Company, but the Company then expanded production "without informing" Plaintiffs. *See* Am. Compl. ¶¶ 95, 110, 117. In essence, this boils down to a claim that Vita Coco owed a heightened duty of disclosure to Plaintiffs who had purchased their products previously—one which was not met by printing the specific production location on each unit in boldfaced, visible type on the nutrition panel—and that Vita Coco is liable for consumer fraud if it did not proactively disavow its Brazilian beginnings and the whimsy of its Brazilian-inspired tropical brand. But as the court

15

in *Dumas* observed in dismissing similar allegations about Red Stripe Beer, although "[c]onsumers who used to buy Red Stripe when it was made in Jamaica might very well continue to buy the product without bothering to read the packaging or labeling under the assumption that it is still brewed in Jamaica," those consumers had no claim against Red Stripe's manufacturer which was not under any "duty to completely change the packaging or include words such as 'DOMESTIC' or 'local ingredients' to alert such consumers of a change." *Dumas*, 2016 WL 1367511, at *5.

### C.    Other Vita Coco Marketing Cited in the Amended Complaint

Plaintiffs cherry-pick from Vita Coco's website a series of references to Brazil (*e.g.*, Am. Compl. ¶¶ 35-36), none of which rise to the level of misrepresentations.  On the contrary, other portions of ***the same website*** cited in the Amended Complaint flatly contradict Plaintiffs' narrative that Vita Coco contrived to hide its non-Brazilian production.[10]

### 1.    Vita Coco's Website

Plaintiffs cannot have it both ways.  The story that Plaintiffs quote (selectively) from Vita Coco's website about how "Vita Coco was born" is entirely accurate and does not say or imply a thing about production source.  *See* Am. Compl. ¶¶ 33-34.  But the same website also vividly refutes the core allegation of Plaintiffs' Amended Complaint: the suggestion that Vita Coco has hidden its international sites of production.

By way of illustration, a visitor to Vita Coco's website can view the page cited in the Amended Complaint by clicking on "About Us" and selecting "Our Story" from a drop-down menu. http://vitacoco.com/our-story/; Am. Compl. ¶¶ 33-34; RJN Ex. A.  From the very same menu, visitors can select a different page, "Giving Back".  http://vitacoco.com/givingback/; RJN Ex. B.  This page prominently displays a map dotted with *all* of Vita Coco's production sites. The "Giving Back" page goes further, offering the following text:



In 2004, our founders Mike and Ira traveled to the sandy beaches of Brazil to produce the very first batch of Vita Coco with a small collective of local coconut farmers. ***Things have***

---

[10] Vita Coco's website is "central" to—and, indeed, is cited in support of—Plaintiffs' claims and allegations and, accordingly, is a document that "in fairness should have been attached to the amended complaint."  *See* Am. Compl. ¶¶ 33-34, 38, 40.  The Court therefore may review it "at the pleading stage without converting the motion into one for summary judgment."  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 n.16 (11th Cir. 1999).  *See* RJN at 6-8, Exs. A, B.

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

*changed a lot since the early days (we now operate factories in tropical countries all over the world)*, but one important thing hasn't: our respect and appreciation for the people and places we rely on each day. *Id.* (emphasis added).  The "Giving Back" page goes on to highlight a dozen Vita Coco projects "in the lives of the people we work with and the communities they live in," such as "Rooms for Change" (classrooms built in the Philippines); "Good Seedlings" (gifts to "our farmers" of coconut palm seedlings in Sri Lanka and the Philippines); and "What's the Buzz" ("giving bee boxes to the farmers we work with in Sri Lanka").  *Id.*  In other words, far from hiding these non-Brazilian production partners, Vita Coco touts those relationships and the related charitable endeavors with tremendous pride.

### 2.     Vita Coco's Other Brand-Building Activities

Plaintiffs cite a litany of Vita Coco's marketing efforts evoking Brazil, such as the creation of a Vita Coco-themed and Brazil-inspired bikini; a Brazilian-soccer inspired uniform worn by Vita Coco's sales representatives; Brazilian vacation contests; and whimsical questions asked during Vita Coco's hiring process.  Am. Compl. ¶¶ 37, 39-40.  But while Plaintiffs rail against Vita Coco's efforts to "mix[] the elements of Brazil in its marketing" (*id.* ¶ 17), it does not follow that Vita Coco's imaginative nods to Brazil are a species of deceit.  If that were the case, no one could enjoy a dinner at Outback Steakhouse (featuring elements of Australia in its marketing), Olive Garden (featuring elements of Italy in its marketing), or P.F. Chang's (featuring elements of China in its marketing) without being a victim of consumer fraud.

### D.     Plaintiffs Have Not Satisfied Rule 9(b).

Because Plaintiffs have not even met Rule 8's pleading standards to identify actionable misrepresentations, they certainly have not met the more demanding burden of Rule 9(b) for their Florida and California claims. The "purpose of this heightened pleading requirement is to ensure that defendants accused of fraudulent conduct have adequate notice of the allegations so that they might defend against them."  Order Granting Defendants' Motion to Dismiss, *Alaei v. Kraft Heinz Food Co.*, Case No. 15cv2961-MMA, ECF No. 22 at 4 (S.D. Cal. Apr. 22, 2016) (dismissing CLRA claim in deceptive labeling case alleging misleading "MFD in USA" statement) (citing *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1305 (S.D. 2013)).

These principles are amply illustrated here.  Despite pointing to the changes in Vita Coco's labeling and production sources over time (*e.g.*, Am. Compl. ¶¶ 22, 29), none of the Plaintiffs explain **when** they purchased Vita Coco, other than "at all relevant times," nor **where**,

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL 33131-3456

other than "at retailers" in their home state. *Id.* ¶¶ 46, 49, 52. Nor do they specify **which** of Vita Coco's various marketing activities enumerated in the Amended Complaint (*e.g.*, *id.* ¶¶ 35-40) actually caused their injury, much less which statements Plaintiffs relied upon (*Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793-94 (9th Cir. 2012) (UCL and CLRA require actual reliance)). Indeed it is hard to see how a Vita Coco themed bikini "inspired by Vita Coco's Brazilian roots" (Am. Compl. ¶ 39) or Vita Coco's "hiring criteria" for prospective employees (*id.* ¶ 40) deceived Plaintiffs about the production source of Vita Coco coconut water.

Even under Rule 8's more relaxed standard applicable to the New York claim, Plaintiff Gold has not explained which "material deceptive acts" caused her injury. *Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000). "If the plaintiff did not see any of these statements," then those statements "could not have been the cause of [her] injury, there being no connection between the deceptive act and the plaintiff's injury." *Gale v. Int'l Bus. Machs. Corp.*, 781 N.Y.S.2d 45, 47 (N.Y. App. Div. 2004) (dismissing NY GBL § 349 complaint for failing "to plead causation with sufficient specificity to withstand dismissal" where plaintiff did not allege that he saw any of the misleading statements alleged before purchasing a computer).

> **E.      Plaintiffs Have Not Alleged That Vita Coco Caused Their Injury.**

Finally, Plaintiffs have failed to state a claim against Vita Coco because they have not alleged that Vita Coco caused their injury. *See Stutman*, 95 N.Y. 2d at 28 (2000) (allegation that defendant caused plaintiff's injury is required element of GBL § 349 claims); *Moore v. News Corp.*, No. 6:09–cv–2182–Orl–31DAB, 2009 WL 5215407, at *1 (M.D. Fla. Dec. 30, 2009) (same is true of FDUTPA claims); *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1175 (S.D. Cal. 2012) (UCL and CLRA claims). Nowhere in the Amended Complaint do Plaintiffs allege that their claimed injury—the price they paid for Vita Coco—was set by Vita Coco rather than by the retailers that sold them Vita Coco's coconut water. *See* Am. Compl. ¶¶ 46, 49, 52.

This same defect recently prompted a New York court to dismiss GBL § 349 claims based on allegations that a candy manufacturer's use of oversized packaging deceived consumers who purchased their products at movie theaters into paying a premium price. Mem. Decision and Order  Granting Defs.' Mot. to Dismiss, *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04967 (CM) (S.D.N.Y. Oct. 26, 2016) (Appended hereto as Ex. B) at 2-3. The court reasoned that the plaintiffs failed to state a claim because it was not "clear that [their] alleged injury (the price paid) flowed from any act of [the defendants]," because "the Complaint [did] not state that [the

18

defendants]—rather than the movie theater—set the price of the [c]andy." *Id.* at 14; *see also Lombardo v. Johnson & Johnson Consumer Cos., Inc.,* 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) (finding allegedly deceptive pricing practices too remote and speculative to satisfy the causation element of FDUPTA where "Defendants themselves do not set the retail prices of the Products; rather, they make price suggestions to retailers, who ultimately set the prices.").

So too here: even if it were true that Vita Coco's coconut water commands a premium price, "the [Amended] Complaint still fails to state that [Vita Coco], and not the ultimate . . . seller, benefited from any price inflation." *See Izquierdo*, No. 16-cv-04967 at 2-3.

## IV.    Plaintiffs' Claim Of Entitlement To A Full Refund Should Be Dismissed.

Plaintiffs' claim of entitlement to a "full refund" based on the alleged "worthlessness" of the coconut water they purchased and consumed is entirely unsupported.  For each claim set forth in the Amended Complaint, a plaintiff's damages are measured by the additional money— *i.e.*, the price premium—paid by a plaintiff as a result of a defendant's alleged misrepresentations.[11]   Plaintiffs hope to inflate their claimed damages beyond this standard, alleging that the coconut water they purchased was "worthless" entitling them to a full refund. *See* Am. Compl. ¶¶ 2, 45, 100, 102, 103, 111, 113, 122, 126.  This theory of "worthlessness" is legally baseless, contrary to common sense, and contradicted by Plaintiffs' own allegations.

Plaintiffs here have not alleged that they paid for a truly worthless product such as a non-existent exclusive right to use a trade name (*see Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1294 (M.D. Fla. 2009)), a plumbing system that was never completed (*see Tri-County Plumbing Servs., Inc. v. Brown*, 921 So. 2d 20, 22 (Fla. 3d DCA 1996)), or grass seed that does not grow grass (*see In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 412 (S.D.N.Y. 2015)).  Rather, Plaintiffs allege that their products are "worthless" simply because they were "mislabeled."  This theory has been resoundingly rejected by multiple courts in other food and beverage labeling

---

[11] *See, e.g.*, *BPI Sports, LLC v. Labdoor, Inc.*, No. 0:15-cv-62212, 2016 WL 739652, at *6 (S.D. Fla. Feb. 25, 2016) (under FDUTPA, "the standard measurement for actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered" (quotation omitted)); *Koenig v. Boulder Brands*, Inc., 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) (false advertising plaintiff "adequately alleges injury under GBL § 349 by claiming that he paid a premium for a product based on the allegedly misleading representations"); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1122 (C.D. Cal. 2015) (UCL restitution damages and CLRA actual damages "determined by taking the difference between the market price actually paid by consumers and the true market price" (quotation and emphasis omitted)).

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

cases, and their reasoning compels the same result here.  *See, e.g.*, *Brazil v. Dole Packaged Foods, LLC*, --- F. App'x ---, 2016 WL 5539863, at **2-3 (9th Cir. Sept. 30, 2016) ("a plaintiff cannot be awarded a full refund unless the product she purchased was worthless" and arguably mislabeled fruit was not worthless); *Reid v. GMC Skin Care USA Inc.*, No. 8:15-CV-277, 2016 WL 403497, at *15 (N.D.N.Y. Jan. 15, 2016) (dismissing allegations that eye contour cream was "worthless" where complaint did not explain "the manner in which the [product] failed"); *Swearingen v. Pac. Foods of Or., Inc.*, No. 13–cv–04157–JD, 2014 WL 3767052, at *1-2 (N.D. Cal. July 31, 2014) (argument that non-dairy beverages were "worthless due to their illegality" one that "[o]ur district has repeatedly rejected").

Moreover, Plaintiffs' "worthlessness" theory collapses under the weight of their own allegations—even *they* do not believe that the coconut water they purchased was "worthless." Plaintiffs acknowledge that they "consistently" purchased and consumed Vita Coco (which they would not have done were the product truly devoid of value), Am. Compl. ¶ 46, 49, 52, and even admit that they "would purchase Vita Coco again" if it were labeled and marketed differently. Am. Compl. ¶¶ 48, 51, 54; *see Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1335 (S.D. Fla. 2007) (dismissing unjust enrichment and FDUTPA claims, among others, reasoning that plaintiffs were "not entitled to recover any damages since they undisputedly still choose to purchase" the allegedly mislabeled product, even after learning "the 'truth' regarding its alleged lack of . . . benefits"); *cf. Herazo, v. Whole Foods Mkt., Inc.*, No. 14–61909–CIV, 2015 WL 4514510, at *3 (S.D. Fla. July 24, 2015) (dismissing claims for injunctive relief because "[t]he only logical deduction" from the plaintiffs' description of a product as "worthless" is that they "will not be purchasing [it] in the future").  Accordingly, the portions of the Amended Complaint characterizing Vita Coco's coconut water as "worthless" should be stricken and Plaintiffs' damages sought should be limited to the "price premium"—if any—that they paid as a result of Vita Coco's allegedly deceptive marketing and labeling.

## CONCLUSION

For all the reasons set forth above, the Court should dismiss Plaintiffs' claims in their entirety and with prejudice.

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL 33131-3456

Dated:  November 4, 2016

Respectfully submitted,

/s/ *Melissa Pallett-Vasquez*
MELISSA C. PALLETT-VASQUEZ
Florida Bar No. 715816
mpallett@bilzin.com
LORI P. LUSTRIN
Florida Bar No.  59228
llustrin@bilzin.com
**BILZIN SUMBERG BAENA PRICE & AXELROD
LLP**
1450 Brickell Ave, Suite 2300
Miami, Florida 33131
Tel.: (305) 374-7580  Fax: (305) 374-7593

and

SCOTT VOELZ *(admitted pro hac vice)*
svoelz@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor,
Los Angeles, CA 90071
Tel: (213) 430-6680  Fax: (213) 430-6407

HANNAH Y. CHANOINE *(admitted pro hac vice)*
hchanoine@omm.com
CHRISTOPHER S. COGBURN *(admitted pro hac vice)*
ccogburn@omm.com
**O'MELVENY & MYERS LLP**
Times Square Tower, 7 Times Square,
New York, NY 10036
Tel: (212) 326-2128  Fax: (212) 326-2061
*Attorneys for Defendant All Market Inc.*

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on November 4, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ *Lori P. Lustrin*
Lori P. Lustrin

22

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456