**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO: 1:16-CV-21238-Scola/Otazo-Reyes**

JOSHUA WASSER, ILA GOLD, and
ROBERTO ISRAEL J. BARAJAS-RAMOS,
on behalf of themselves and all others                          CLASS ACTION
similarly situated,

     *Plaintiffs*,

v.

ALL MARKET INC.,

     *Defendant*.

_____

**DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**
**AND INCORPORATED MEMORANDUM OF LAW**

All Market Inc. ("Vita Coco"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Local Rule 7.1, moves to dismiss Joshua Wasser, Ila Gold, and Roberto Israel J. Barajas-Ramos's ("Plaintiffs") Second Amended Complaint ("SAC") [D.E. 95] with prejudice.[1]

## INTRODUCTION

Plaintiffs have not cured the multiple deficiencies of their original Complaint. According to Plaintiffs, Vita Coco's labels deceived them into thinking they were enjoying coconut water sourced exclusively from Brazil, when in fact Vita Coco harvests coconuts from tropical countries in *addition* to Brazil. Plaintiffs know that Brazil remains a major source of Vita Coco coconut water. In fact, in their original Complaint Plaintiffs were unable to offer any allegations that they had purchased non-Brazilian Vita Coco. On August 31, 2016, Judge King dismissed the original Complaint for lack of standing ("Standing Order"), agreeing with Vita Coco that "[t]he knowledge that a product might have come from somewhere other than the source represented does not create a concrete injury." D.E. 27 at 3.

The SAC adds a single—and entirely speculative—new allegation: that "Plaintiffs purchased and drank Vita Coco that was not sourced or manufactured in Brazil, and that was made with non-Brazilian coconuts." *See, e.g.*, SAC ¶ 2. The single new allegation does not cure Plaintiffs' standing problem. Indeed, conspicuously absent from the SAC are any facts specifying what products they purchased, when, where, how frequently they made their purchases, or from where the purchased products were sourced.

There is a reason Plaintiffs fail to supply a *single* detail regarding their purchases. Any "facts" Plaintiffs might offer contradict their theory: that Plaintiffs *did not know* the origin of the product(s) they purchased and blindly consumed Vita Coco under the misimpression that they were drinking solely Brazilian sourced coconut water. Plaintiffs cannot possibly know that they purchased non-Brazilian sourced coconut water unless they looked at the statement of origin on the containers. But, Plaintiffs admit—as they must, to salvage a straight-faced argument for deception—that they did not do this prior to purchase. *Id*. at ¶ 31 ("Reasonable consumers, including Plaintiffs, cannot or do not read the fine print on the Container each time they buy the drink to discern where the product is made."). Nor can the origin of Plaintiffs' purported purchases possibly be established because Plaintiffs do not allege that they kept their containers.

---

[1] On July 10, 2017, the Court granted Plaintiffs' motion to substitute Mr. Ramos for Ms. Rechtman as the California putative class representative [D.E. 89].

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

Even if Plaintiffs could establish that they purchased non-Brazilian coconut water, the information provided on the Vita Coco container would defeat Plaintiffs' claims for a separate reason: because the allegedly deceptive phrase "born in brazil" cannot be viewed without also seeing the country of origin disclosure. Plaintiffs' claims thus rely on an inherent contradiction: that reasonable consumers are confused by certain statements on product packaging but blind to others that would dispel their confusion. This year alone, several courts have dismissed putative beverage-labeling class actions on nearly identical facts, recognizing that this contradiction renders allegations of deception implausible as a matter of law.

Plaintiffs' inability to provide any specifics regarding the timing, size, frequency and nature of their purchases is fatal to their claims for an equally compelling reason. Plaintiffs cannot bring claims based on products they never purchased.[2] Plaintiffs' failure to allege any specific facts to support their standing also precludes as a matter of law their ability to allege an ascertainable class and thus, the case must be dismissed for lack of subject matter jurisdiction.

The various other defects in Plaintiffs' initial pleadings also remain. Because Plaintiffs now know the "truth" (that Vita Coco sources from several tropical countries)—and, indeed, acknowledge that they can determine whether any unit of Vita Coco was produced in Brazil simply by reading the label—they cannot demonstrate any potential future injury that would supply standing for injunctive relief. Plaintiffs' allegations likewise foreclose any theory that Vita Coco is "worthless."

Simply put, the premise that underlies each of Plaintiffs claims is flawed: that Vita Coco should have abandoned its Brazilian beginnings entirely when the company expanded coconut water production into other countries, and that now, any time Vita Coco even mentions Brazil it has somehow committed an act of consumer fraud. That is not the law. Accordingly, the Court should dismiss the SAC in its entirety.

## BACKGROUND

### I.      Vita Coco's Birth in Brazil

Vita Coco is a true American success story. Two childhood friends, New Yorkers Michael Kirban and Ira Liran, visited Brazil and witnessed first-hand the Brazilian enthusiasm

---

[2] Plaintiffs' allegations regarding the deceptiveness of Vita Coco's marketing are just as vague; Plaintiffs have not identified a single actionable misrepresentation, much less *which* statements caused them injury.

2

for coconut water.  *See id*. at ¶ 33.  As described on Vita Coco's website, when Brazil inspired Kirban and Liran to bring coconut water to the U.S. market, "Vita Coco was born."  *Id*.  Barely twelve years later, the coconut water category has exploded in popularity in the U.S. and abroad—largely because of these two innovators.  *Id.* ¶¶ 11-12, 21.

Initially, Vita Coco sourced all of its coconut water from Brazil.  *Id.* ¶ 14.  To this day, Vita Coco sources huge volumes of Brazilian coconut water for U.S. distribution.  *Cf. id*. at ¶ 23.[3]  Eventually, sky-high demand outpaced supply, and the company responded by expanding production to other countries, eventually partnering with farmers and factories in the Philippines, Malaysia, Thailand, Indonesia, and Sri Lanka.  *See id.* ¶¶ 21-22.  Vita Coco did not keep these developments quiet; on the contrary, Vita Coco always has been transparent about (and promoted) the sources of its coconut water.  In a 2012 interview with a widely distributed magazine, Kirban explained how Vita Coco was "producing coconut water in a dozen facilities, in South America and Southeast Asia."[4] *See also infra* pp. 16-17 (discussing Vita Coco website).  Nevertheless, as Plaintiffs themselves recognize, Brazil remains a vital part of Vita Coco's identity, history, and current business.  *See, e.g.,* SAC at ¶¶ 23, 33-40.

## II.    The Vita Coco Label

Plaintiffs acknowledge that as Vita Coco's production expanded beyond Brazil, its labels evolved accordingly.  *Id*. at ¶¶ 16, 29; *compare id.* Ex. A *with id.* Ex. B.  When Vita Coco was produced exclusively in Brazil, the products read "Made in Brazil" on the ***front*** panel of the original rectangular container, and then later read "Imported from Brazil" on the ***front*** side-angled display panel of the subsequent eight sided containers known as "Tetra Paks."  *Id*. ¶ 16, Ex. A.  When production expanded beyond Brazil, Vita Coco removed "Imported from Brazil"

---

[3] The SAC incorrectly alleges that "[a]ll Large and Small size Vita Coco are manufactured and sourced outside Brazil" other than certain small size containers sold in 4-packs.  *Id*. at ¶ 23.  *See* Dec. of Jonathan Burth in Support of Req. For Jud. Notice ("Burth Decl.") Ex. 1-11 (demonstrating variety of sizes produced in Brazil).  A court ruling on a motion to dismiss may take judicial notice of allegedly deceptive labels.  *See* Def.'s Req. for Jud. Notice ("RJN") at 5-7.
[4] Reshma Yaqub, *Vita Coco's CEO Has Something to Prove*, Inc. Magazine (July/August 2012), *available at* http://www.inc.com/magazine/201207/reshma-yaqub/the-way-i-work-michael-kirban-vita-coco.html.  RJN at 8-9, Ex. C.  On a motion to dismiss, "courts may take judicial notice of documents such as . . . newspaper articles . . . for the limited purpose of determining which statements the documents contain."  *US ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015).  Vita Coco requests that the Court take judicial notice only of the fact that this article and the statements therein was published, which can be readily verified by visiting the webpage and cannot be reasonably disputed.  F. R. E. 201(b)(2).

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

and added "Born in Brazil," an homage to the company's roots.  The slogan, moreover, appears on the Tetra Pak's ***back*** side-angled panel right next to the country of origin.[5]  *See* SAC Ex. B. While the front and back panels are similar, the spout is positioned closest to the front panel, where it is naturally positioned for a consumer to drink (a consumer reversing that position may be in for a spill).  *Id.* at Ex. B, 7-8 (showing differing location of front and back panels based on spout location; "Born in Brazil" is on back side-angled panel); *id.* at 1-5 (images of rear panel); *see* SAC ¶¶ 2, 29 (incorrectly alleging slogan is on the front).

On Vita Coco's current packaging, the phrase "Born in Brazil" appears barely more than an inch (and, on small-sized units, even ***less*** than an inch) away from the statement identifying the country of origin (e.g., "Produced in Brazil," "Produced in Sri Lanka") on the adjoining back panel.  *See, e.g.*, *id.* at ¶ 30, Ex. B at 9; Burth Decl. Ex. 1-11.  The font for the country of origin, moreover, is in bold typeface, and is nearly the same size as that used for the words "Born in Brazil"; the country of origin is also set off from other text by a dividing line (except when the unit is produced in Brazil).  *Compare* SAC Ex. B at 2 (Produced in Thailand) *with* Ex. B at 9 (Produced in Brazil).  Set against a matte, contrasting background, the country of origin is legible to a consumer looking at the "Born in Brazil" phrase on the back side-angled panel of the Vita Coco container from any reasonably direct angle.  *See, e.g.*, *id.* Ex. B at 2.

ARGUMENT[6]

## I.    Legal Standards

Defendants may challenge claims through a motion to dismiss when the Court lacks subject matter jurisdiction or when the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(1), 12(b)(6).  Dismissal under Rule 12(b)(1) is appropriate where a complaint does not establish jurisdictional standing under Article III of the U.S. Constitution. Article III confers federal jurisdiction only when there is an actual case or controversy, which requires that the plaintiff allege: (1) "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) injury that is fairly traceable to the challenged

---

[5] Vita Coco is happy to supply demonstrative examples of the products for the Court's inspection in connection with this Motion.  *See, e.g.*, *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1340 (S.D. Fla. 2014)(inspecting demonstrative examples of beer alleged to be deceptively labeled as originating from Germany); *Dumas v. Diageo PLC*, No. 15cv1681, 2016 WL 1367511, *3 (S.D. Cal. Apr. 6, 2016) (inspecting examples of beer alleged to be deceptively labeled as originating from Jamaica).

[6] Unless otherwise notated, all emphasis is added and all internal quotations are omitted.

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

conduct of the defendant; and (3) injury that will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss" under Rule 12(b)(6). *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1372 (S.D. Fla. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 678, 679 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive dismissal. *Iqbal*, 556 U.S. at 678; *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Unless Plaintiffs have pled specific and concrete facts that, if true, would "nudge[] the[] claims across the line from conceivable to plausible," the Court must grant this motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiffs also must meet Rule 9(b)'s heightened pleading standards for their California and Florida claims where, as here, the claims sound in deception and misrepresentation. *See, e.g.*, *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1294 (S.D. Fla. 2007) (dismissing FDUTPA claim for "fail[ure] to satisfy the mandates of Rule 9(b)"); *accord Librizzi v. Ocwen Loan Servicing, LLC*, 120 F. Supp. 3d 1368 (S.D. Fla 2015);[7] *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (UCL and CLRA). Accordingly, Plaintiffs must spell out the "who, what, when, where, and how" of Vita Coco's alleged deceptive conduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). They have not done so.

## II.   Plaintiffs Have Not Cured Their Lack of Article III Standing.

### A.   Plaintiffs Have Not Plausibly Alleged That They Purchased Non-Brazilian Coconut Water.

The original Complaint alleged that Plaintiffs purchased Vita Coco during the relevant period, and subsequently learned (at some unalleged time) that Vita Coco sources its coconuts from various tropical countries in addition to Brazil. *See, e.g.,* Compl. ¶ 44 ("Wasser consistently purchased Vita Coco during the relevant time period at retailers in the State of Florida. Wasser has since learned that not all Vita Coco is sourced and manufactured with Brazilian coconuts."). Holding that this allegation was too speculative to serve as the predicate for the critical requirement of injury, Judge King dismissed the action.

---

[7] Vita Coco recognizes that other courts in this District disagree that Rule 9(b) applies to FDUTPA claims. *See, e.g.*, *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355 n.5 (S.D. Fla. 2012) (acknowledging split); *Gastaldi v. Sunvest Communities*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009) (declining to apply Rule 9(b) to FDUTPA claim).

5

Plaintiffs' SAC attempts to pay lip-service to the standing defect that Judge King determined was fatal to the original Complaint. In the one substantive deviation from their original pleading, Plaintiffs now claim that despite their alleged deception—and notwithstanding their admission that they "[did] not read the fine print on the Container each time they [bought] the drink to discern where the product is made"—they somehow now know that the particular containers of Vita Coco that *they* purchased (but do not allege they retained) were "not sourced or manufactured in Brazil" and were "made with non-Brazilian coconuts." SAC ¶¶ 31, 42. The new allegation changes nothing; it remains entirely speculative that Plaintiffs ever bought non-Brazilian Vita Coco.

Indeed, conspicuously absent from the SAC are any particularized facts about the specific purchase(s) plaintiffs made that would meet *Twombly's* plausibility requirement. "Without reference" to any "factual context" explaining how plaintiffs actually know they were injured, "the Federal Rules do not require courts to credit a complaint's conclusory statements." *Iqbal*, 556 U.S. at 686; *Howard v. Kerzner Int'l Ltd.*, No. 12-22184-CIV, 2014 WL 714787, at *5 (S.D. Fla. Feb. 24, 2014) ("courts need not accept internally inconsistent factual claims, conclusory allegations, unwarranted deductions, or mere legal conclusions made by a party").

Where, as here, specific factual allegations of injury are lacking, dismissal is appropriate. In *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014), for example, the Eighth Circuit affirmed the dismissal of a false advertising case on standing grounds where the allegation was that some of Hebrew National kosher hot dogs did not accord with strict standards of kashrut. 747 F.3d at 1030-31. The Eighth Circuit agreed that the "consumers' allegations fail[ed] to show that any of the particular packages of Hebrew National beef they personally purchased contained non-kosher beef" and that it was "pure speculation to say that the particular packages sold to the consumers were tainted by non-kosher beef." *Id.* The Court explained that "[i]n the context of a claim of a defective product, the requirement that the plaintiffs' injury-in-fact be 'particularized' means that it is not enough for . . . plaintiffs to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, they must allege that *their* product *actually exhibited* the alleged defect.").

The Second Circuit Court of Appeals' recent decision in *John v. Whole Foods Market Group., Inc.,* 858 F.3d 732 (2d Cir. 2017) further underscores the deficiency of Plaintiffs' allegations. The plaintiff in Whole Foods alleged that Whole Foods engaged in a deceptive

6

overpricing practice by overweighing its pre-packaged foods and attached to his complaint a press release detailing specific findings by the New York City Department of Consumer Affairs ("DCA") of systematic overcharging of the pre-packaged foods at eight New York City Whole Foods stores and setting forth resulting overcharge ranges.  The district court dismissed the case, finding that the plaintiffs did not allege that any particular purchase they made was affected by the overweighting practice.

The Second Circuit disagreed and found that the plaintiff had satisfied the "low threshold" of plausible injury-in-fact where the complaint contained specific factual allegations that (i) the plaintiff "routinely shopped" at two specific Whole Foods stores in Manhattan that were the subject of the DCA investigation; (ii) the plaintiff made "regular[] purchase[s]" of "pre-packaged cheese and cupcakes "one or two times per month"; (iii) the plaintiff's purchases occurred during the exact "same period" as the DCA investigation; (iv) the cheese and cupcakes plaintiff purchased were "among the pre-packaged products that the DCA alleged Whole Foods mislabeled with overstated weights"; and (v) the DCA found that 89 percent of the pre-packaged products at the eight stores examined (including the two stores plaintiff patronized) were affected.  *Id*. at 734-36.  The court thus concluded that the plaintiff had "plausibly alleged that he suffered an injury in fact by pleading both the frequency of his purchases and the systematic overcharging of pre-packaged foods at the Whole Foods stores he patronized." *Id.* at 738.

The threadbare and detail-free allegations of the SAC stand in stark contrast to the facts alleged in *Whole Foods*.  The sole allegation Plaintiffs provide is that they "consistently purchased Vita Coco during the relevant time period at retailers in the State [in which they reside]." SAC at ¶¶46, 49, 52.  Unlike the *Whole Foods* plaintiff*, Plaintiffs supply **zero** facts regarding the frequency of their purchases, let alone what products they purchased, the stores they purchased from, or the timing of their purchases.

Moreover, there are no allegations in the SAC that even come close to the DCA's findings of overweighting—that equated to "systematic overcharging" by Whole Foods—which led the court to find sufficient allegations of a "nontrivial economic injury."  While Plaintiffs claim they were injured because they supposedly "paid a premium for Vita Coco" (SAC ¶¶ 2, 20, 45), Plaintiffs do not include a **single** allegation regarding the prices they paid; nor have they alleged that Vita Coco played any role in setting the prices that Plaintiffs paid.  *See Lombardo v. Johnson & Johnson Consumer Companies, Inc.,* 124 F. Supp. 3d 1283 (S.D. Fla. 2015) (Scola,

7

J.) ("Defendants' allegedly deceptive pricing practices are too remote and speculative to satisfy the causation element [of FDUTPA]. *Defendants themselves do not set the retail prices of the Products; rather they make pricing suggestions to retailers, who ultimately set the prices. Therefore, [plaintiffs'] damages—if any—were not directly caused by Defendants' conduct*.").

> **B.      Plaintiffs Lack Standing to Bring Claims For Products They Did Not Purchase.**

Plaintiffs seek to represent a nationwide putative class and three subclasses of consumers who purchased Vita Coco within a four year statutory period that was not sourced, manufactured, or imported from Brazil. SAC at ¶55. The SAC defines "Vita Coco" as "non-flavored coconut water sold in one-liter size ("Large"), 16.9 fluid ounces ("Medium"), and 11.1 fluid ounces ("Small"), sold individually and in packages." *Id.* at n.2. There are no allegations, however, regarding when Plaintiffs' made their purchases, the size(s) they purchased, and whether the purchases were of individual units or multi-packs (and if so, what size multi-packs).

These omissions are fatal. Florida, New York, and California law only confer standing to sue on plaintiffs who *actually purchased* allegedly mislabeled products. *Dapeer*, 95 F. Supp. 3d at 1373 (dismissing claims where plaintiff "lacks Article III standing to bring claims on behalf of [] products he did not purchase "because he cannot conceivably allege any injuries from products that he never purchased or used"); *In re Takata Airbag Product Liability Lit.,* MDL No. 2599, 2016 WL 1266609, at *3 (S.D. Fla. Mar. 11, 2016); *Toback v. GNC Holdings, Inc.*, No. 13–80526–CIV, 2013 WL 5206103, at *5 (S.D. Fla. Sept. 13, 2013); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009); *Meyer v. Sprint Spectrum, L.P.*, 45 Cal. 4th 634, 638 (Cal. 2009).

And while Plaintiffs would like this Court to believe that the details of their purchases are of no consequence, these specifics are at the heart of this case; the nature of the claims asserted necessarily vary depending on date of purchase, size, and whether the product was sold as a single or in a multi-pack. For example, for large Vita Coco sold in 4-packs and 6-packs, and small Vita Coco sold in 12-packs, the outer cardboard packaging is all that is visible to a consumer at the time of purchase. Burth Decl., ¶¶ 13-14. Because these exterior packages do not contain the phrase "born in brazil", no purchaser could possibly be deceived by the slogan. *Id.* Accordingly, Plaintiffs have no standing to pursue claims on behalf of purchasers of categories of Vita Coco if they never purchased those sizes and quantities.

For these reasons, even with all reasonable inferences drawn in their favor, Plaintiffs cannot meet even the "low threshold" of plausibility required to plead a concrete and

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

particularized injury in fact.[8]  *Whole Foods,* 858 F.3d at 732.  Because this Court cannot be forced to guess as to whether an injury actually occurred, the lack of standing that prompted Judge King to dismiss the original Complaint remains, and the Court should rule likewise here.

### C.  The Revised Standing Allegations Demonstrate that the Class is Not Ascertainable, and this Court Lacks Subject Matter Jurisdiction

#### 1.  The Class is Not Ascertainable as a Matter of Law

The only conceivable way for Plaintiffs to adequately allege their standing is to state they discovered that they drank non-Brazilian coconut water ***after*** they purchased or drank the product but ***before*** they discarded the container.  This same requirement, however, applies not only to the named Plaintiffs, but to each member of the putative class.  It is for this reason that on the face of the SAC, the class is not ascertainable as a matter of law, and therefore this Court lacks subject matter jurisdiction over this action pursuant to 18 U.S.C. 1332(d).

As the Eleventh Circuit explained in *Karhu v. Vital Pharms., Inc.,* 621 Fed. Appx. 945, 946 (11th Cir. 2015) "Rule 23 implicitly requires that the 'proposed class is adequately defined and clearly ascertainable.'"  "This threshold issue of 'ascertainability,' relates to whether the putative class can be identified: '[a]n identifiable class exists if its members can be ascertained by reference to objective criteria.'" *Randolph v. J.M. Smucker Co.,* 303 F.R.D. 679, 684 (S.D. Fla. 2014) (citing *Bussey v. Macon Cty. Greyhound Park, Inc.,* 562 Fed. Appx. 782, 787 (11th Cir. 2004)).  The "objective criteria" must be able to be applied in an "administratively feasible way." *Karhu,* 621 Fed. Appx. at 946.  Administrative feasibility, in turn, means the existence of a "manageable process that does not require much, if any, individual inquiry." *Id.*

Based on Judge King's Standing Order, the objective criteria to determine class membership in this case are that a consumer (1) purchased non-Brazilian Vita Coco; (2) believed that the Vita Coco was sourced from Brazil at the time she purchased and drank the product; and (3) subsequently discovered that the drink was not sourced from Brazil.  By definition, these "objective criteria" require individual proof for each putative class member.  And, the Eleventh Circuit has firmly rejected uncorroborated consumer affidavits where, as here, defendants' due process rights require "allowing them to challenge each claimant's class membership." *Id.* at

---

[8] This is particularly true with respect to Plaintiffs' Florida and California claims, which must satisfy the stringent Rule 9(b) pleading standard by setting forth the "who, what, when, where, and how" of their alleged deception.  *See infra* at 18.

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

948-49 (discussing multiple problems with self-identification ascertainment including possibility of false consumer responses and danger of violating due process).

In short, there is no way that the objective criteria in this case can be applied in a manageable and administratively feasible way to satisfy the law on ascertainably in this Circuit.

**2. The Lack of an Ascertainable Class Deprives this Court of Subject Matter Jurisdiction Over this Case**

The sole basis alleged in the SAC for this Court's subject matter jurisdiction is 28 U.S.C. § 1332(d) ("CAFA").  SAC at ¶ 3.  CAFA provides federal courts with original jurisdiction over class actions where there is diversity between any member of a class and defendant, and where the amount in controversy exceeds $5 million.  *See* § 1332(d)(2).  The Court's subject matter jurisdiction is lacking because, as a matter of law, this case cannot qualify as a valid class action.

Admittedly, it is not often that Courts are called upon to evaluate their lack of jurisdiction over a class action at the motion to dismiss stage.  Indeed, it is only in extraordinary circumstances (as here) that a complaint so clearly on its face forecloses the prospect of certification that a Court can be in a position to make that legal determination on the pleadings. However, as Judge Cohn recently held in his order dismissing the class case of *Karhu v. Vital Pharms., Inc.*, No. 13-60768, 2014 WL 1274119, at *2 (S.D. Fla. Mar. 27, 2014), "CAFA, once invoked, [does not] vest[] a court with subject-matter jurisdiction *ad infinitum*."  To the contrary, federal district courts are required to evaluate the basis for their jurisdiction "*sua sponte* whenever it may be lacking." *Id.* at *4 (citing *Gilmore v. Dir., U.S.D.O.L.*, 455 F. App'x 934, 935–36 (11th Cir. 2012) (per curiam) (internal quotation marks omitted)).

Judge Cohn further observed that because the question of whether a class is certifiable is a legal conclusion, once the determination is made by the Court that certification is not possible, dismissal for lack of jurisdiction is appropriate:

> After a court has determined that there will be no class certification order . . . the action falls outside the scope of the circumstances enumerated under section 1332(d)(8) in which subject-matter jurisdiction exists. . . . Much as the Court should dismiss an action for lack of subject-matter jurisdiction upon a legal determination that the plaintiff has from the outset failed to satisfy section 1332(a)'s amount-in-controversy requirement, or its diversity requirement, ***so too should the Court dismiss a putative class action upon a legal determination that the plaintiff may not maintain his suit on a class basis***.

*Id.* at *4.

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL 33131-3456

As discussed above, Plaintiffs' attempt to allege a class action fails as a matter of law because there is no administratively feasible way to ascertain an identifiable putative class. Thus, just as Judge Cohn determined in *Karhu,* there is no basis for this Court's subject matter jurisdiction, and the action, accordingly, should be dismissed.

### D. Because They Know The "Truth," Prospective Injunctive Relief Would Not Redress Plaintiffs' Alleged Injury.

Plaintiffs also lack Article III standing to seek ***prospective*** injunctive relief. Even though Plaintiffs allege that they would purchase Vita Coco coconut water again if "properly labeled and marketed" (SAC at ¶¶ 48, 51, 54), they are not "realistically threatened by a repetition of the violation." *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006).

Courts in this district routinely dismiss injunctive relief claims when plaintiffs attempt to override Article III standing requirements. *See, e.g., Dapeer,* 95 F. Supp. 3d at 1373 ("The Supreme Court has long held that to seek prospective or injunctive relief, plaintiffs (including individually named plaintiffs representing a class) must be able to demonstrate more than mere injury from past wrongs") (quoting *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974)); *Jallali v. USA Funds,* No. 11-62510-CIV, 2012 WL 3291873, *6 (S.D. Fla. Aug. 13, 2012) (Scola, J.) (dismissing injunctive relief claim where past harm "does not itself show a present case or controversy regarding injunctive relief…if unaccompanied by any continuing, present adverse effects."). In *Strumlauf v. Starbucks Corp.*, the Northern District of California also denied injunctive relief on this same ground, holding that notwithstanding the defendant's alleged misrepresentations about the coffee chain's under-filled lattes, "[t]here is no danger that [plaintiffs] will be misled in the future" because "[n]ow they know." --- F. Supp. 3d ---, 2016 WL 3361842, at *3 (N.D. Cal. June 17, 2016).[9]

Like the plaintiffs in each of these cases, Plaintiffs are now "fully aware" of the 'truth' about Vita Coco—namely, that its coconut water is produced from both Brazilian and non-Brazilian sources. And because they know that they can determine whether any particular unit is

---

[9] *See also Lusson v. Apple, Inc.*, No. 16-cv-00705-VC, 2016 WL 6091527, at *4 (N.D. Cal. Oct. 19, 2016) (dismissing claims for injunctive relief, where defendant's "alleged deception can't give rise to future injury because it consists of a nondisclosure of which the plaintiffs are already aware"); *Garrison v. Whole Foods Mkt. Grp., Inc.*, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014) (claim for injunctive relief dismissed with prejudice because "plaintiffs have not alleged— and cannot plausibly allege" a "real and immediate threat of repeated injury" where they now know that products marked "All Natural" contain allegedly synthetic ingredients).

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL 33131-3456

produced in Brazil simply by looking at the label, there can be no misunderstanding about the origin of any coconut water Plaintiffs purchase in the future.

### III.    Plaintiffs Have Not Identified Any Actionable Misrepresentations.

#### A.    Vita Coco's Tetra Paks Would Not Mislead Reasonable Consumers.

Even without their standing problems, all of Plaintiffs' claims founder for an equally compelling reason: they have not identified a single actionable misrepresentation likely to deceive a reasonable consumer.[10]  "Likely to deceive" demands "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie*, 105 Cal. App. 4th at 508.  Instead, it means "that the ad is such that it is ***probable*** that a ***significant*** portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*

While the question of whether a statement is false or misleading is ordinarily a question of fact, courts have not hesitated to dismiss claims where they "can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging." *Dumas v. Diageo PLC*, No. 15cv1681, 2016 WL 1367511, at *3 (S.D. Cal. Apr. 6, 2016) (dismissing a similar lawsuit over the labels of Red Stripe beer, concluding that phrases like "Taste of Jamaica" and "Jamaican Style Lager" would not deceive reasonable consumers into believing the beer is actually brewed in Jamaica.).[11]

This year, the District Court for the Eastern District of New York dismissed two beverage labeling suits predicated on strikingly similar allegations.  In *Nelson v. MillerCoors, LLC,* No. 15-CV-7082, 2017 WL 1403343 (E.D.N.Y. March 31, 2017), the plaintiffs alleged they were misled into believing Foster's Beer was still imported from Australia, when Foster's has been

---

[10] *PNR, Inc. v. Beacon Prop. Mgmt. Inc.*, 842 So. 2d 773 (Fla. 2003); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (1st Dist. 2003); *Stutman v. Chem. Bank*, 95 N.Y. 2d 24 (2000); *cf. Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090 (Fla. 3d DCA 2014).

[11] *See also Salters v. Beam Suntory*, No. 4:14cv659, 2015 WL 2124939, at *3 (N.D. Fla. May 1, 2015) (dismissing claims that "handmade" on labels of Maker's Mark bourbon because "no reasonable person would understand 'handmade' in this context to mean literally made by hand"); *Welk v. Beam Suntory Imp. Co.*, 124 F. Supp. 3d 1039, 1043-44 (S.D. Cal. 2015) (same for Jim Beam labels); *Keunzig v. Hormel Foods Corp.*, 505 F. App'x 937, 938 (11th Cir. 2013) (affirming dismissal of claims that certain fat-free and calorie claims on food labels were unfair or deceptive); *Lacoff v. Buena Vista Publ'g, Inc.*, 183 Misc. 2d 600, 610 (N.Y. Sup. 2000) (dismissing consumer fraud claims relating to investment book promising to "beat the stock market" and provide group's "secret recipe for investment success" as non-actionable).

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

brewed in the United States for years.  Like Plaintiffs here, the *Nelson* plaintiffs pointed to the "multiple references to Australian culture and symbols" contained on the Foster's packaging and advertising including "an image of a Red Kangaroo, the national symbol of Australia, and the Southern Cross constellation"—contained on Australia's flag—as examples of the purported deception.[12]  *Id.* at *1.

The court dismissed the complaint finding that no reasonable consumer could possibly be misled by the Foster's container and marketing considering the country of origin disclaimer was in close proximity to the allegedly deceptive design elements:

> **The idea that consumers purchase products based on certain of a label's statements or images (e.g., pictures of a constellation and a kangaroo) but are blind to others (e.g., a statement in plain English of where Foster's Beer is brewed) in close proximity on that label strains credibility.**

*Id.* at *5.

The Court came to the same conclusion in *Bowring v. Sapporo U.S.A., Inc.,* No. 16-CV-1858, 2017 WL 902151 (E.D.N.Y. Feb. 10, 2017) where the plaintiff alleged that Sapporo's use of Japanese imagery and the slogans "The Original Japanese Beer" and "Japan's Oldest Brand" in its advertising led them to believe that Sapporo was brewed in Japan.  As in *Nelson*, the court found the allegations implausible where allusions to the company's historic roots in Japan were "**eclipsed by the accurate disclosure statement**" which "appears in contrasting, visible font, and states in clear language where the product is produced."  *Id.* at *4; *see also Dumas*, 2016 WL 1367511, at *5 ("anyone examining the label carefully enough to read the language on the back of the label would see that the beer is brewed and bottled in Pennsylvania.").

*Sapporo, Nelson,* and *Dumas* are directly on point.  Here, Plaintiffs bear the burden of alleging a "specific and measurable claim" capable of being proved false or being reasonably interpreted as a statement of objective fact.  *Vitt v. Apple Comput., Inc*., 469 F. Appx 605, 607

---

[12] So too here. Plaintiffs allege that the color schemes of the Tetra Paks "mimic[] the Brazilian flag" (SAC at ¶ 2).  The color schemes, however, are palpably different.  Vita Coco's dominant color is sky blue, while the Brazilian flag's colors are dark blue, Kelly green, and yellow. *Compare* SAC Ex. B at 1-9 (images of Vita Coco) *with* RJN Ex. D (Brazilian flag).  The label presents a classic tropical beach scene, including palm trees, a peaceful ocean touching the sky, and a coconut with a straw sticking out of it.  SAC Ex. B at 9; Burth Decl. Ex. 1-11.  Plaintiffs themselves allege that coconut water "has long been a popular drink in tropical countries, often drank straight from the coconut."  SAC at ¶ 7.  That is precisely what Vita Coco's labels convey.

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

(9th Cir. 2012).  Plaintiffs fail to do so, pointing only to a "generalized, vague" slogan that could not deceive a reasonable consumer, particularly where the slogan cannot be read without also viewing production information.  *Welk*, 124 F. Supp. 3d at 1043; *see also Kommer v. Bayer Consumer Health*, -- F. Supp. 3d --, 2017 WL 2231162, *6 (S.D.N.Y. 2017) (dismissing with prejudice deceptive business practices and false advertising case because "[a]ssuming a reasonable consumer might ignore the evidence plainly before him 'attributes to consumers a level of stupidity that the Court cannot countenance and that is not actionable'.").

The slogan "born in brazil" always appears in close proximity—less than 1 inch away on small units, approximately 1 inch away on medium units, and about 1¼ inches away on the large units—to a similarly-sized, clearly legible, and bold printed statement of the country of origin on each container of Vita Coco.[13]  SAC Ex. B at 2, 9; Burth Decl. Ex. 1-11.  And like the production information contained on the Red Stripe beer label in *Dumas*, the bold, legible lettering used on the Vita Coco containers to disclose the country of origin is set against a contrasting background.  *Compare Dumas*, 2016 WL 1367511, at *5 (finding significant that beer's actual brewing location was printed on "the edge of the label" and that "[a]lthough the words are small, the contrasting white print is legible") *with Marty*, 43 F. Supp. 3d at 1340 (concluding that "Product of USA" statement on beer can "is printed in white font against a shiny metallic silver background" and can be "obscured by overhead lighting.").[14]

Because the country of origin statement is so apparent, Plaintiffs include assertions (as did the plaintiffs challenging Beck's Beer in *Marty*) that Vita Coco's outer cardboard packaging of its small-sized 4-packs obscures the country of origin statement.  *See* SAC at ¶¶ 2, 30.

---

[13] The label is in full compliance with the requirements of 19 CFR § 134.46, the federal regulation governing product labels that reference a country other than the country of origin.  *See, e.g.*, CROSS, HQ 731035 (Feb. 29, 1988) ("To be considered 'in close proximity', the country of origin information must be visible simultaneously with the reference to the place other than the country of origin, without any manipulation of the article.").  Accordingly, any recovery for the alleged harm that Plaintiffs' complain of is expressly foreclosed by federal law.

[14] Other courts have reached similar conclusions, determining that products labeled "Havana Club" and "Cajun Boy," cannot mislead reasonable consumers told the product's country of origin.  *Pernod Ricard USA LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 253 (3d Cir. 2011) (even if "Havana Club" on bottle could be understood to signify the product's source as Havana, Cuba, "those same words cannot mislead a reasonable consumer who is told in no uncertain terms that 'Havana Club' is a brand of rum made in Puerto Rico"); *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 753 (5th Cir. 2006) ("Cajun Boy" and "Cajun Delight" trade names on imported seafood were not misleading because products were labeled with country of origin).

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

Notably, however, Plaintiffs, do not allege that they purchased 4-packs—of any size.  Plaintiffs also do not—because they cannot—plead that all (or even most) Vita Coco is sold in 4-packs (making the allegation irrelevant for all stand-alone units).  Moreover, Plaintiffs acknowledge as they must that "some Small size Vita Coco sold in 'four packs' are manufactured and sourced from Brazil" (*id.* at ¶ 23) and thus there can be no misrepresentation as to those products.  Finally, the images attached to the SAC include two separate styles of cardboard cartons for 4-packs, one of which leaves the country of origin statement in full view.  *Id.* Ex. B at 8-9.

### B. Even Standing Alone, the "Born in Brazil" Slogan Would Not Mislead Reasonable Consumers.

Without a doubt, the linchpin of the SAC is the phrase "Born in Brazil,"[15] which, as noted, appears on the back side-angled panel of Vita Coco's Tetra Paks.  Even standing alone, it is simply not probable that consumers would reasonably rely on "Born in Brazil" to identify the country of origin, or that it could mislead a significant number of consumers, acting reasonably in the circumstances.  *Lavie*, 105 Cal. App. 4th at 508.

The notion that a product manufactured from a harvested crop like coconut water can be "born" is nonsensical.  No consumer could reasonably interpret "Born in Brazil" as a statement of objective fact, much less connect it to Plaintiffs' extreme conclusion that every bottle of Vita Coco is exclusively "sourced and manufactured with Brazilian coconuts," any more than a consumer could discern from a beer marked "[t]he Taste of Jamaica" "what Jamaica 'tastes' like."  *Dumas*, 2016 WL 1367511, at *4.  Rather, the phrase "Born in Brazil" is a subjective reference to an abstract and romantic product attribute (Vita Coco's Brazilian heritage) and is precisely the type of non-actionable statement that courts often refer to as "puffery" or "sales talk."  *See, e.g.*, *Alvarez v. Royal Caribbean Cruises*, 905 F. Supp. 2d 1334, 1342 (S.D. Fla. 2012); *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1342-43 (S.D. Fla. 2011).

By contrast, in *Marty* the court concluded that the combination of the phrase "Originated in Germany" with "Brewed under the German Purity Law of 1516" and "German Quality" created a specific, measurable affirmative representation designating German origins and making "it sound like the production of the beer was subject to German law" that could be proved demonstrably true or false.  *Dumas,* 2016 WL 1367511, at *5 (discussing *Marty*, 43 F. Supp. 3d

---

[15] *See e.g.*, SAC at ¶¶ 2, 29-31, 36, 50, 53, 60, 71, 72, 78, 84, 90, 94-96, 99, 106, 109, 115-16, 118.

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

at 1340-43).  Unlike the objective statements in *Marty*, at worst, the phrase "Born in Brazil" is non-actionable puffery and thus cannot entitle Plaintiffs to any legal relief.

**C.     Vita Coco Had No Heightened Duty to Inform Existing Customers of Its Expanded Production.**

While it is not entirely clear from the SAC, another injury alleged is that Plaintiffs understood Vita Coco to be produced in Brazil exclusively in the early years of the company, but the company then expanded production "without informing" Plaintiffs.  SAC at ¶¶ 95, 110, 117. In essence, this boils down to a claim that Vita Coco owed a heightened duty of disclosure to Plaintiffs who had purchased their products previously—one which was not met by printing the specific production location on each unit in boldfaced, visible type on the nutrition panel—and that Vita Coco is liable for consumer fraud if it did not proactively disavow its Brazilian beginnings and the whimsy of its Brazilian-inspired tropical brand.  But as the court in *Dumas* observed in dismissing similar allegations about Red Stripe Beer, although "[c]onsumers who used to buy Red Stripe when it was made in Jamaica might very well continue to buy the product without bothering to read the packaging or labeling under the assumption that it is still brewed in Jamaica," those consumers had no claim against Red Stripe's manufacturer which was not under any "duty to completely change the packaging or include words such as 'DOMESTIC' or 'local ingredients' to alert such consumers of a change."  *Dumas*, 2016 WL 1367511, at *5.

**D.     Other Vita Coco Marketing Cited in the Second Amended Complaint**

**1.     Vita Coco's Website**

Plaintiffs cherry-pick references to Brazil from Vita Coco's website (*e.g.*, SAC at ¶¶ 33-34), none of which constitute a misrepresentation.  On the contrary, other portions of ***the same website*** cited in the SAC flatly contradict Plaintiffs' narrative that Vita Coco contrived to hide its non-Brazilian production.[16]  Plaintiffs cannot have it both ways.  The story that Plaintiffs quote (selectively) from Vita Coco's website about how "Vita Coco was born" is entirely accurate and does not say or imply a thing about production source.  *See id*.  But the same website vividly refutes the core allegation of the SAC: that Vita Coco hides its production sites.

---

[16] The version of the website cited by Plaintiffs is "central" to—and, indeed, is cited in support of—Plaintiffs' claims and allegations (*see* SAC at ¶¶ 33-34, 38, 40) and, accordingly, is a document that "in fairness should have been attached" to the SAC.  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 n.16 (11th Cir. 1999).  The Court therefore may review the entirety of that same website iteration "at the pleading stage without converting the motion into one for summary judgment."  *Id.;* RJN at 6-8, Exs. A, B.

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

A visitor to the version of Vita Coco's website cited by Plaintiffs could view the page cited in the SAC by clicking on "About Us" and selecting "Our Story" from a drop-down menu.[17] From the same menu, visitors could select a different page, "Giving Back".[18] This page prominently displayed a map dotted with *all* of Vita Coco's production sites. The "Giving Back" page goes further:



In 2004, our founders Mike and Ira traveled to the sandy beaches of Brazil to produce the very first batch of Vita Coco with a small collective of local coconut farmers. ***Things have changed a lot since the early days (we now operate factories in tropical countries all over the world)***, but one important thing hasn't: our respect and appreciation for the people and places we rely on each day. *Id.* The "Giving Back" page then highlights a dozen Vita Coco projects "in the lives of the people we work with and the communities they live in," such as "Rooms for Change" (classrooms built in the Philippines); "Good Seedlings" (gifts to "our farmers" of coconut palm seedlings in Sri Lanka and the Philippines); and "What's the Buzz" ("giving bee boxes to the farmers we work with in Sri Lanka"). *Id.* Far from hiding these non-Brazilian production partners, Vita Coco touts those relationships with tremendous pride.

### 2. Vita Coco's Other Brand-Building Activities

Plaintiffs cite a litany of Vita Coco's marketing efforts evoking Brazil, such as the creation of a Vita Coco-themed and Brazil-inspired bikini; a Brazilian-soccer inspired uniform worn by Vita Coco's sales representatives; Brazilian vacation contests; and whimsical questions asked during Vita Coco's hiring process. SAC ¶¶ 37, 39-40. But while Plaintiffs rail against Vita Coco's efforts to "mix[] the elements of Brazil in its marketing" (*id.* ¶ 17), it does not follow that Vita Coco's imaginative nods to Brazil are a species of deceit. If that were the case, no one could enjoy a dinner at Outback Steakhouse (featuring elements of Australia in its marketing), Olive Garden (featuring elements of Italy in its marketing), or P.F. Chang's (featuring elements of China in its marketing) without being a victim of consumer fraud.

---

[17] SAC at ¶¶ 33-34; RJN Ex. A.
[18] RJN Ex. B.

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL 33131-3456

### E.       Plaintiffs Have Not Satisfied Rule 9(b).

Because Plaintiffs cannot meet Rule 8's pleading standards to identify actionable misrepresentations, they certainly have not met the more demanding burden of Rule 9(b) for their Florida and California claims. The "purpose of this heightened pleading requirement is to ensure that defendants accused of fraudulent conduct have adequate notice of the allegations so that they might defend against them."  Order Granting Defendants' Motion to Dismiss, *Alaei v. Kraft Heinz Food Co.*, Case No. 15cv2961-MMA, ECF No. 22 at 4 (S.D. Cal. Apr. 22, 2016) (dismissing CLRA claim in deceptive labeling case alleging misleading "MFD in USA" statement) (citing *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1305 (S.D. 2013)).

These principles are amply illustrated here.  Again, despite pointing to the changes in Vita Coco's labeling and production sources over time (*e.g.*, SAC ¶¶ 22, 29), Plaintiffs do not and cannot explain ***when*** they purchased Vita Coco, other than "at all relevant times," or ***where***, other than "at retailers" in their home states.  Nor do they specify ***which*** of Vita Coco's various marketing activities enumerated in the SAC (*e.g.*, *id.* at ¶¶ 35-40) actually caused their injury, much less which statements Plaintiffs relied upon (*Sateriale v. R.J. Reynolds Tobacco Co*., 697 F.3d 777, 793-94 (9th Cir. 2012) (UCL and CLRA require actual reliance)).[19]

Even under Rule 8's more relaxed standard applicable to the New York claim, Plaintiff Gold has not explained which "material deceptive acts" caused her injury. *Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000). "If the plaintiff did not see any of these statements," then those statements "could not have been the cause of [her] injury, there being no connection between the deceptive act and the plaintiff's injury."  *Gale v. Int'l Bus. Machs. Corp.*, 781 N.Y.S.2d 45, 47 (N.Y. App. Div. 2004) (dismissing NY GBL § 349 complaint for failing "to plead causation with sufficient specificity to withstand dismissal" where plaintiff did not allege that he saw any of the misleading statements alleged before purchasing a computer).

### F.       Plaintiffs Have Not Alleged That Vita Coco Caused Their Injury.

Finally, Plaintiffs have failed to state a claim against Vita Coco because they have not alleged that Vita Coco caused their injury.  *Lombardo,* 124 F. Supp. at 1290; *Stutman*, 95 N.Y. 2d  at 28 (2000) (allegation that defendant caused plaintiff's injury is required element of GBL §

---

[19] Indeed it is hard to see how a Vita Coco themed bikini "inspired by Vita Coco's Brazilian roots" (SAC ¶ 39) or Vita Coco's "hiring criteria" for prospective employees (*id.* ¶ 40) deceived Plaintiffs about the production source of Vita Coco coconut water.

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

349 claims); *Moore v. News Corp.*, No. 6:09-cv-2182-Orl-31DAB, 2009 WL 5215407, at *1 (M.D. Fla. Dec. 30, 2009) (same is true of FDUTPA claims); *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1175 (S.D. Cal. 2012) (UCL and CLRA claims).   Nowhere in the SAC do Plaintiffs allege that their claimed injury—the unidentified price they paid for Vita Coco—was set by Vita Coco rather than by the retailers that sold them Vita Coco.  *See* SAC ¶¶ 47, 50, 53.

This same defect recently prompted a New York court to dismiss GBL § 349 claims based on allegations that a candy manufacturer's use of oversized packaging deceived consumers who purchased their products at movie theaters into paying a premium price.  *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04967, 2016 WL 6459832, *2-3 (S.D.N.Y. Oct. 26, 2016).  The court reasoned that the plaintiffs failed to state a claim because it was not "clear that [their] alleged injury (the price paid) flowed from any act of [the defendants]," because "the Complaint [did] not state that [the defendants]—rather than the movie theater—set the price of the [c]andy." *Id.* at 14.   So too here: even if it were true that Vita Coco's coconut water commands a premium price, "the [Amended] Complaint still fails to state that [Vita Coco], and not the ultimate . . . seller, benefited from any price inflation."  *Izquierdo*, 2016 WL 6459832 at 2-3.

## IV.  Plaintiffs' Claim Of Entitlement To A Full Refund Should Be Dismissed.

For each claim set forth in the SAC, a plaintiff's damages are measured by the additional money—*i.e.*, the price premium—paid by a plaintiff as a result of a defendant's alleged misrepresentations.[20]   Plaintiffs nevertheless allege that the coconut water they purchased was "worthless" and entitle them to a full refund.[21]   This "worthlessness" theory is legally baseless, contrary to common sense, and contradicted by Plaintiffs' own allegations.

Plaintiffs have not alleged that they paid for a truly worthless product such as a non-existent exclusive right to use a trade name (*see Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1294 (M.D. Fla. 2009)), a plumbing system that was never completed (*see Tri-County*

---

[20] *See, e.g.*, *BPI Sports, LLC v. Labdoor, Inc*., No. 0:15-cv-62212, 2016 WL 739652, at *6 (S.D. Fla. Feb. 25, 2016) ("the standard measurement for actual damages [under FDUTPA] is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered"); *Koenig v. Boulder Brands*, Inc., 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) (plaintiff "adequately alleges injury under GBL § 349 by claiming that he paid a premium for a product based on the allegedly misleading representations"); *In re NJOY, Inc. Consumer Class Action Litig*., 120 F. Supp. 3d 1050, 1122 (C.D. Cal. 2015) (UCL damages and CLRA actual damages "determined by taking the difference between the market price actually paid by consumers and the true market price").

[21] *See* SAC at ¶¶ 2, 45, 100, 102, 103, 111, 113, 122, 126.

*Plumbing Servs., Inc. v. Brown*, 921 So. 2d 20, 22 (Fla. 3d DCA 1996)), or grass seed that does not grow grass (*see In re Scotts EZ Seed Litig*., 304 F.R.D. 397, 412 (S.D.N.Y. 2015)).  Rather, Plaintiffs allege that their products are "worthless" simply because they were "mislabeled."  This theory has been resoundingly rejected by multiple courts in food and beverage labeling cases. *See, e.g.*, *Brazil v. Dole Packaged Foods, LLC*, 2016 WL 5539863, at **2-3 (9th Cir. Sept. 30, 2016) ("a plaintiff cannot be awarded a full refund unless the product she purchased was worthless" and arguably mislabeled fruit was not worthless); *Reid v. GMC Skin Care USA Inc.*, No. 8:15-CV-277, 2016 WL 403497, at *15 (N.D.N.Y. Jan. 15, 2016) (dismissing allegations that eye contour cream was "worthless" where complaint did not explain "the manner in which the [product] failed"); *Swearingen v. Pac. Foods of Or., Inc.*, No. 13–cv–04157–JD, 2014 WL 3767052, at *1-2 (N.D. Cal. July 31, 2014) (argument that non-dairy beverages were "worthless due to their illegality" one that "[o]ur district has repeatedly rejected").

Moreover, Plaintiffs' "worthlessness" theory collapses under the weight of their own allegations—even *they* do not believe that the coconut water they purchased was "worthless." Plaintiffs acknowledge that they "consistently" purchased and consumed Vita Coco (which they would not have done were it truly devoid of value), SAC at ¶¶ 46, 49, 52, and even admit that they "would purchase Vita Coco again" if it were labeled and marketed differently.  *Id.* at ¶¶ 48, 51, 54.  *See Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1335 (S.D. Fla. 2007) (dismissing FDUTPA claim, among others, reasoning that plaintiffs were "not entitled to recover any damages since they undisputedly still choose to purchase" the allegedly mislabeled product, even after learning "the 'truth' regarding its alleged lack of . . . benefits"); *cf. Herazo, v. Whole Foods Mkt., Inc.*, No. 14–61909–CIV, 2015 WL 4514510, at *3 (S.D. Fla. July 24, 2015) (dismissing claims for injunctive relief because "[t]he only logical deduction" from the plaintiffs' description of a product as "worthless" is that they "will not be purchasing [it] in the future").

Accordingly, the SAC's characterization of Vita Coco as "worthless" should be stricken.

## CONCLUSION

For all these reasons, the Court should dismiss the SAC in its entirety and with prejudice.

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

Dated:  July 24, 2017

Respectfully submitted,

/s/ *Melissa Pallett-Vasquez*
MELISSA C. PALLETT-VASQUEZ
Florida Bar No. 715816
mpallett@bilzin.com
LORI P. LUSTRIN
Florida Bar No.  59228
llustrin@bilzin.com
**BILZIN SUMBERG BAENA PRICE & AXELROD
LLP**
1450 Brickell Ave, Suite 2300
Miami, Florida 33131
Tel.: (305) 374-7580  Fax: (305) 374-7593

and

SCOTT VOELZ *(admitted pro hac vice)*
svoelz@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor,
Los Angeles, CA 90071
Tel: (213) 430-6680  Fax: (213) 430-6407

HANNAH Y. CHANOINE *(admitted pro hac vice)*
hchanoine@omm.com
CHRISTOPHER S. COGBURN *(admitted pro hac vice)*
ccogburn@omm.com
**O'MELVENY & MYERS LLP**
Times Square Tower, 7 Times Square,
New York, NY 10036
Tel: (212) 326-2128  Fax: (212) 326-2061
*Attorneys for Defendant All Market Inc.*

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on July 24, 2017, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.

/s/ *Lori P. Lustrin*
Lori P. Lustrin

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL 33131-3456