## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:16-CV-21238-Scola/Otazo-Reyes

JOSHUA WASSER, ILA GOLD,
and ROBERTO ISRAEL BARAJAS-RAMOS,
on behalf of themselves and all others
similarly situated,

       Plaintiffs,

                                  **CLASS ACTION**

v.

ALL MARKET, INC.,

       Defendant.

_____

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs file this Memorandum of Law in Opposition to Defendant, All Market, Inc.'s ("**AMI**"), Motion to Dismiss Second Amended Complaint ("**Motion**"). [D.E. 96].

## I.  SUMMARY OF THE ARGUMENT

AMI's Motion ignores that the heart of this case is that "born in brazil" is an affirmative statement of origin that deceives consumers – a fact well known to AMI from many consumer complaints it received. Instead of addressing the deception, AMI tries to misguide this Court to believe that Judge King's August 31, 2016, Order Granting Defendant's Motion to Dismiss (the "**Order**") [D.E. 27] was the death knell of Plaintiffs' claims – it was not. Plaintiffs quickly and easily corrected in the Amended Complaint ("**AC**") [D.E. 34] the single pleading issue raised by Judge King. AC at ¶¶ 2, 42, 46, 49, 52; *see also* Second Amended Complaint ("**SAC**") [D.E. 95] at ¶¶ 2, 42, 46, 49, 52.[1] AMI's Motion takes the Court far afield on an analysis that creates an alternative narrative that improperly attacks and distorts the well-pled allegations of the SAC. Indeed, Plaintiffs properly allege their standing and the elements of their claims, easily "nudg[ing] their claims [well beyond] the line from conceivable to plausible."[2]

AMI's alternative facts are false and known to AMI to be false. AMI argues the allegations that Plaintiffs purchased Vita Coco made with "non-Brazilian coconuts" are not plausible because allegedly Brazil remains a "major" and "huge" source of Vita Coco production. Motion at 1-3, 6. Not only is this argument well beyond the allegations of the SAC, but it is utterly and totally false. AMI has admitted that over **81%** of AMI's production of Vita Coco occurred **outside** of Brazil, not in Brazil.[3] *See* AMI's Third Amended Responses and Objections to Plaintiffs' Interrogatories ("**Third Amended Interrogatory Responses**"), attached as **Exhibit "A."** In a similar vein, AMI argues that the slogan "born in brazil" cannot be deceiving (Motion at 15), a premise that is totally false, and known to AMI to be false from consumers complaints AMI has received that the slogan "born in brazil" on Vita Coco's containers is confusing and deceiving (the "**Consumer Complaints**"). *See* sampling of emails produced by AMI, attached as **Exhibits "B."** AMI then disputes Plaintiffs' allegations, which the Court must accept as true, and asks the Court to accept the self-serving sworn Declaration of

---

[1] The SAC merely substituted Plaintiff Ramos for former Plaintiff Rechtman as the California class representative, making no substantive changes to the AC which cured Judge King's Order.

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("heightened fact pleading of specifics" is not required, "only enough facts to state a claim to relief that is plausible") (emphasis added).

[3] Discovery shows that since this lawsuit was filed in 2016, AMI ramped up production in Brazil.

1

Jonathan Burth ("**Declaration**") [D.E 98]. Motion at 3, fn 3. Accepting Jonathan Burth's ("**Burth**") Declaration would be highly improper on a motion to dismiss, especially because of Burth's prior inconsistent sworn statements. *See* Plaintiffs' Memorandum of Law in Opposition to Request for Judicial Notice and to Strike the Declaration of Jonathan Burth [D.E. 101].

AMI does not cite a single case holding that the slogan "born in," or an analogous slogan, does not connote origin and does not mislead a reasonable consumer about a product's country of origin. Indeed, analogous precedent would defeat such a fruitless effort. *Marty v. Anheuser-Busch Companies, LLC*, 43 F. Supp. 3d 1333, 1342 (S.D. Fla. 2014), holds that slogans on Beck's beer referring to Germany, including "**Originated in Germany**," in conjunction with Beck's marketing campaign, can mislead a reasonable consumer to believe that the beer came from Germany. Federal Regulations and Customs and Border Patrol ("**CBP**") rulings on country of origin markings on imported products further support Plaintiffs' claims that "born in brazil" can mislead a consumer about the origin of the coconuts. *See* CROSS, HQ 562070 (June 20, 2001) (slogan "**Born in Oregon**" connotes origin and can mislead as to true origin of product).

AMI's attempts to distinguish the clear parallel between "born in brazil," "Originated in Germany," and "Born in Oregon," also fail. *Dumas v. Diageo PLC*, 15-CV-1681, 2016 WL 1367511 (S.D. Cal. Apr. 6, 2016), cited by AMI, is inapplicable because Vita Coco is not labeled as a Brazilian "style" drink. Furthermore, *Nelson v. MillerCoors, LLC*, 15-CV-7082, 2017 WL 1403343 (E.D.N.Y. March 31, 2017), and *Bowring v. Sapporo U.S.A., Inc.*, 16-CV-1858, 2017 WL 902151 (E.D.N.Y. Feb. 10, 2017), also cited by AMI, have no application here because they deal only with allegedly deceptive imagery on packaging, not with an affirmative statement of origin. Furthermore, neither case holds that two contradictory statements of origin on the Container ("born in brazil" versus "Produced in Malaysia") can disclaim deception and liability.

Other cases cited by AMI actually support Plaintiffs' claims. *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014), merely holds that plaintiffs must allege the product they purchased actually exhibited the defect in order to meet the injury-in-fact requirements. *Id.* at 1030. *John v. Whole Foods Market Group., Inc.*, 858 F.3d 732 (2d Cir. 2017), holds that even though the plaintiff did not know if he actually purchased a deceptive product, it was plausible that he purchased a deceptive product because the majority of the products were deceptive. *Id.* at 737. Here, Plaintiffs' allegations that they purchased all sizes of Vita Coco, including a Vita Coco not made in Brazil, goes far beyond the pleading requirements set forth in *Wallace* and

2

*Whole Foods.* SAC at ¶¶ 46, 49, 52 and SAC fn. 2 (defining Vita Coco).[4] AMI furthers its false narrative by stating that Plaintiffs' well pled allegations rely on an "inherent contradiction" allegedly because there is no way that Plaintiffs can know they drank "non-Brazilian coconut water" while claiming that they were deceived into buying it. Motion at 2. This nonsensical argument would foreclose virtually all deceptive labeling class actions in one fell swoop. Like any deceptive labeling action, Plaintiffs routinely drank Vita Coco believing they were drinking Brazilian coconut water based on the slogan "born in brazil." Upon discovering the hidden country of origin statement (*i.e.*, Produced in Sri Lanka), Plaintiffs stopped drinking Vita Coco because they were confused as to the source of the drink, and thereafter brought this lawsuit. This is no different than most other deceptive labeling cases and does not defy plausibility.

## II.     BACKGROUND

"This is a class action on behalf of consumers of AMI's coconut water, Vita Coco, who have been deceived by AMI to believe that the Vita Coco that they buy and consume is manufactured in Brazil, and made from Brazilian coconuts, when it is not." SAC at ¶ 1. The SAC defines Vita Coco as the non-flavored coconut water sold individually in Containers and in Packages, in three sizes: 11.1 ounces ("Small"), 16.9 ounces ("Medium"), and one-liter ("Large"). *Id.* at fn. 2, ¶ 23. In 2011, AMI moved from Brazil the overwhelming majority of its sourcing of coconuts and manufacturing of Vita Coco and then secretly masked the change in taste of coconuts by adding sugar to Vita Coco. *Id.* at ¶¶ 1, 22, 25, 27. The SAC alleges **no** Large units of Vita Coco were produced in Brazil during the limitations period, a fact confirmed by AMI's Responses, Amended Responses, and Second Amended Responses to Plaintiffs' First Set of Interrogatories, which were verified by Burth. *See* SAC at ¶ 23; *see also* AMI's Responses, Amended, and Second Amended Responses, attached as **Composite Exhibit "C."**[5]

AMI's Motion goes well beyond the four corners of the SAC to argue that Vita Coco sources "huge volumes of Brazilian coconut water for U.S. distribution," and mis-cites Plaintiffs' SAC to mislead the Court to believe its outlandish contentions are supported by Plaintiffs'

---

[4] Because Plaintiffs allege all Larges were made outside of Brazil [SAC at ¶ 23], as a matter of fact, Plaintiffs purchased a Vita Coco made outside of Brazil.

[5] Nearly a year into discovery and without explanation, Burth now attests that 105,600 units of Large Vita Coco were produced in Brazil in 2013. *See* Ex. A. However, in his Declaration, Burth states Large Vita Coco was made in Brazil in 2011 (outside the class period) and in 2012 (a portion in the class period), saying nothing about 2013. *Compare*, Ex. A, and D.E. 98. Burth's ever-changing positions are very much at issue and not appropriately decided at this stage.

3

allegations. Motion at 3. The SAC alleges the exact <u>opposite</u>. The overwhelming majority of Vita Coco is sourced and manufactured <u>outside</u> of Brazil.[6]

AMI then argues beyond the allegations of the SAC that its slogan evolved to "born in brazil" to "pay homage to the company's roots," that it did not keep the "truth" of sourcing coconuts from outside of Brazil "quiet," and that its slogan is not deceiving. Motion at 3-4.[7] A *sampling* of AMI's production of Consumer Complaints indicating consumer confusion from the slogan "born in brazil" shows the disingenuousness of its claim that the slogan is not deceptive:[8]

> **I have a big concern with your product's advertising**. The 6 pack cases of 1L coconut water and the 12 pack cases of the small **cartons have misleading advertising. The outside of the cases and then the actual cartons all say 'Born in Brazil.'** But when I check the back of the carton, I've seen they say 'Produced in the Philippines' or 'Produced in Mexico.' **Where is Vita Coco coming from? Please make it clear where the coconut water originates. Don't say 'Born in Brazil' if that's false. If it is not false, please specify on the back by stating 'Produced in Mexico/Philippines with coconuts from Brazil.' It's not fair to be vague or lie to your loyal customers.** (August 3, 2012)

> What does the tag 'born in Brazil' mean? My Vita Coco says produced in the Philippines. **Do you guys get your coconuts from Brazil and then package them in the Philippines? My job is having an intense debate about this.** (May 15, 2013)

> Recently I bought a 1 Liter tetra pack from a Meijer shop, on the front side of the pack it says 'Born in Brazil' and on the side it says 'Produced in Indonesia.' **Could you let me know what is difference between 'Born' and 'Produced', this seems to be [a] little confusing.** (July 2, 2013)

---

[6] *See e.g.*, SAC at ¶1 ("AMI deceptively moved most of its sourcing of coconuts and manufacturing of Vita Coco to the Philippines, Malaysia, Indonesia, Thailand, and Sri Lanka – no longer using Brazilian coconuts"); ¶22 ("deceptive plan to move production and manufacturing of Vita Coco from Brazil to other parts of the world"); ¶27 ("moved a large portion, if not most, of its sourcing, production and manufacturing to the Philippines, Malaysia, Indonesia, Thailand and Sri Lanka"); *see also* Ex. A.

[7] All of the statements surrounding "born in brazil" on the Container *i.e.*, "chill it don't spill it," "hydrate naturally," and "pure coconut water" all refer to the coconut water – not AMI's heritage. SAC at Ex. B. A reasonable consumer would believe "born in brazil" similarly refers to the origin of the drink, not AMI's heritage. Either way, this is a factual dispute not proper here.

[8] AMI produced at least 27 Consumer Complaints relating to consumer confusion about the "born in brazil" slogan. One can only wonder how many other consumers are confused, but did not take the time to email AMI a complaint.

Where does the coconut water come from?  The bottles says 'produced in Malaysia' and 'born in brazil.' **I'm confused. Do you import coconuts from Brazil to Malaysia?** (August 13, 2014)

**[Y]our label has left us a little more than perplexed.**  Born in Brazil and produced in Indonesia, is the statement we want your clarification please. (May 23, 2015)

I just want to ask, why are you borned [sic] in Brazil but produced in the Philippines?  **Its confusing for me.** (February 11, 2016)

*See* Consumer Complaints, at Ex. B. (emphasis added).[9]

Due to AMI's deception Plaintiffs purchased Vita Coco at prices higher than other coconut water, believing it to be made with Brazilian coconuts which "they did not receive." SAC at ¶¶ 2, 45, 48, 51, 54. AMI's mislabeling and switch of its key ingredient to non-Brazilian coconuts entitles Plaintiffs to a full refund. *Id.* at ¶¶ 2, 45, 100-102, 103, 111, 113, 122, and 126.

## III.    ARGUMENT AND MEMORANDUM OF LAW

### A. Standard on Motion to Dismiss

Plaintiffs' SAC need only "contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012). On a Rule 12(b)(6) motion to dismiss, the Court must accept a complaint's allegations as true and construe them in the light most favorable to the plaintiff.  *Baloco v. Drummond Co. Inc.,* 640 F.3d 1338, 1345 (11th Cir. 2011); *BPI Sports, LLC v. Labdoor, Inc.*, 15-62212-CIV, 2016 WL 739652, at *2 (S.D. Fla. Feb. 25, 2016) (allegations assumed true "even if doubtful in fact"). A Rule 12(b)(6) motion to dismiss cannot test the merits of a claim, but only requires that the allegations, assumed to be true, raise a claim "above the speculative level." *Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1037 (11th Cir. 2008). A plaintiff's claims are "facially plausible" when "the court can draw the reasonable inference that the defendant is liable for the misconduct alleged from the pled facts." *Resnick*, 693 F.3d at 1326.

Rule 12(b)(1) challenges to a court's subject matter jurisdiction come in two forms: a facial or factual attack. A "facial attack," like a Rule 12(b)(6) motion, requires the court to take all allegations as true to see if the "plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232–33 (11th Cir. 2008).  A "factual attack" challenges "the existence of subject matter jurisdiction in

---

[9] Although stamped "Confidential," AMI has agreed these documents are not confidential.

fact . . . and matters outside the pleadings" can be considered and weighed. *Douglas v. United States*, 814 F.3d 1268, 1278 (11th Cir. 2016). But when a factual attack also implicates an element of the claim, the proper course is to find that jurisdiction exists and address the objection as a direct attack on the merits. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

Here, AMI pretends to make a facial attack on the allegations of the SAC, but in reality its arguments morph from facial to factual when it serves its purpose. If the Court determines AMI is making a Rule 12(b)(1) factual attack, the Court should also consider evidence in support of Plaintiffs' standing, like AMI's interrogatory responses and the Consumer Complaints.[10]

### B. Plaintiffs Properly Allege Article III Standing

AMI attempts to heighten the requirements needed to meet Article III standing by arguing that Plaintiffs have not made "specific factual allegations" to show an injury-in-fact and cannot show they bought Vita Coco made outside of Brazil. Motion at 1, 6. AMI's argument is not supported by the law and is simply incorrect.

To allege standing, a plaintiff must first show an injury-in-fact. Second, the plaintiff must demonstrate a causal connection between the asserted injury-in-fact and the challenged action of the defendant. Third, the plaintiff must show that the injury will be redressed by a favorable decision. *Marty,* 43 F. Supp. 3d at 1352 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *Granite State Outdoor Adven, Inc. v. City of Clearwater*, 351 F.3d 1112, 1116 (11th Cir. 2003) (same). In *Marty*, the Court held plaintiffs plead injury-in-fact by alleging they "paid a premium price for what they believed was imported beer when in fact it was domestic beer." 43 F. Supp. 3d at 1352; *Reynolds v. Wal-Mart Stores, Inc.*, 4:14cv381, 2015 WL 1879615, at *2 (N.D. Fla. April 23, 2015) (injury-in-fact met by alleging paid more for product than otherwise would have paid, or bought it when otherwise would not have done so because of misrepresentation). Here, Plaintiffs make these necessary allegations. SAC at ¶¶ 2, 42, 46-47, 49-50, 52-53, 58, 96, 106, and 118.

AMI overstates Judge King's Order [D.E. 27] and pretends Plaintiffs did not comply with it. The Order simply notes that "[t]he Complaint does not contain <u>general allegations</u> sufficient to show an injury in fact . . . because [t]he Complaint never states that the coconut water that

---

[10] AMI goes well beyond the four corners of the SAC, asking the Court to accept the testimonial statements of Burth. *See* Plaintiffs' Memorandum of Law in Opposition to Request for Judicial Notice and to Strike the Declaration of Jonathan Burth [D.E. 101].

Plaintiffs purchased came from somewhere other than Brazil." (emphasis added). This is the crux of Judge King's Order, which Plaintiffs cured by alleging in the SAC that "Plaintiffs purchased and drank Vita Coco that was not sourced or manufactured in Brazil, and that was made with non-Brazilian coconuts." SAC at ¶¶ 2, 42, 46, 49, and 52.[11] AMI's argument that Judge King "held" that Plaintiffs' claims were "too speculative" or "fatal" are yet more alternative facts, and is simply not true. Motion at 5, 6.  Plaintiffs directly addressed Judge King's Order and properly allege standing.  SAC at ¶¶ 2, 42, 46, 49, 52.

AMI's reliance on *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014) and *John v. Whole Foods Market Group., Inc.*, 858 F.3d 732 (2d Cir. 2017) is misplaced. Motion at 6. In *Wallace*, plaintiffs brought a class action against ConAgra because some Hebrew National hot dogs marked with a Kosher symbol were allegedly not kosher. 747 F.3d at 1028. As noted by AMI, the Eighth Circuit held that "the requirement that plaintiffs' injury-in-fact be 'particularized' means that it is not enough for ... plaintiffs to allege that a product line contains a defect or that a product is at risk for manifesting this defect; <u>rather they must allege that their product actually exhibited the alleged defect</u>." *Id.* at 1030 (emphasis added). Notably, the *Wallace* plaintiffs failed to allege the products *they purchased* were affected by the deception. *Id*. Here, however, Plaintiffs allege the Vita Coco they purchased "actually exhibited the alleged defect." *Wallace*, 747 F.3d at 1030; *see also* SAC at ¶¶ 2, 42, 46, 49, 52.

AMI's reliance on *Whole Foods* is equally misplaced. *Whole Foods* entirely <u>supports</u> Plaintiffs' position. 858 F.3d at 732. *Whole Foods* does not hold that allegations of specific stores, dates/timing of purchase, or prices are required. Motion at 7.  The Second Circuit held the plaintiff sufficiently alleged standing to assert a class claim for mislabeling and overcharging of pre-packaged food, even though the plaintiff <u>did not allege</u> he actually purchased a mislabeled product. 858 F.3d at 737-38. The plaintiff alleged that (i) Whole Foods systematically mislabeled and overpriced pre-packed cheese and cupcakes, (ii) he routinely and regularly purchased these products, but did not allege that any of the products he actually purchased were mislabeled, and

---

[11] Plaintiffs also allege: (i) Plaintiffs purchased Vita Coco that did not come from Brazil and were injured in fact by paying a price premium for Brazilian coconut water they did not receive, or by receiving a worthless product; (ii) Plaintiffs paid a premium price for a coconut water 'born in brazil' and made with Brazilian coconuts that they did not receive; and (iii) AMI mislabeled the Vita Coco Containers rendering the coconut water worthless entitling Plaintiffs to a full purchase price refund. SAC at ¶¶ 2, 42, 46, 49, and 52.

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., Suite 2700, Miami, FL 33131  305.379.9000
WWW.KLUGERKAPLAN.COM

(iii) a press release from the New York City Department of Consumer Affairs announced 89% of Whole Foods' pre-packaged products were mislabeled and resulted in systematic overcharging to consumers. 858 F.3d at 737.[12] Taking all inferences in plaintiff's favor, the court held "it is plausible that [plaintiff] overpaid for at least one product" and that plaintiff "satisfies the 'low threshold' required to plead injury in fact." *Id.*

> Here, Plaintiffs' allegations are more detailed than those in *Whole Foods.*
>
> [Plaintiffs] <u>consistently</u> purchased Vita Coco during the <u>relevant time period at</u> <u>retailers</u> in the State of Florida. [Plaintiffs] purchased and drank Vita Coco <u>that</u> <u>was not sourced or manufactured in Brazil</u> and that was made with non-Brazilian coconuts.

SAC at ¶¶ 46, 49, 52 (emphasis added). Plaintiffs further allege that "AMI deceptively moved most of its sourcing of coconuts and manufacturing of Vita Coco to the Philippines, Malaysia, Indonesia, Thailand, and Sri Lanka – no longer using Brazilian coconuts" and that a "large portion, if not most" of Vita Coco is made outside Brazil. *Id.* at ¶1 ("moved most of its sourcing of coconuts"), ¶22 ("deceptive plan to move production"), and ¶27 ("moved a large portion, if not most, of its sourcing"). AMI's Third Amended Interrogatory Responses confirm that <u>81%</u> of Vita Coco sold in the United States between 2013 and 2015 was made outside of Brazil. *See* Ex. A. Like in *Whole Foods,* Plaintiffs allege what product they purchased (Vita Coco), how often they purchased the product ("consistently"), and that the deception was pervasive ("large portion, if not most"). SAC at ¶¶ 1, 22, 27, 46, 49, 52. Plaintiffs do not need to allege a defining time period for their purchases because the confusion existed the entire class period. SAC at ¶ 55.[13]

AMI does not cite authority to support its argument that Plaintiffs' failure to allege the prices they paid for Vita Coco renders the SAC subject to dismissal. Motion at 7, 8. Indeed, Plaintiffs' allegations that they paid a "premium" based on AMI's misrepresentations is sufficient to properly allege standing. SAC at ¶¶ 47, 50, 53; *see Whole Foods*, 858 F.3d at 736 (overpaying for product results in financial loss and injury in fact); *Reynolds*, 2015 WL 1879615, at *2 (same); *Marty*, 43 F. Supp. 3d at 1352 (same). Additionally, AMI's bald argument that it is not responsible for setting the price at a retail store is well beyond the four corners of the SAC

---

[12] Of course, because his claim was against Whole Foods, Inc., the *Whole Foods* plaintiff also identified the retailer at which he purchased the mislabeled products. 858 F.3d at 734.

[13] Plaintiffs Wasser and Gold testified at deposition they purchased non-Brazilian Vita Coco. AMI misleads the Court by arguing Plaintiffs did not keep their Containers. Plaintiff Ramos has containers of non-Brazilian Vita Coco that he purchased which are available for inspection.

8

and not supported by <u>any</u> evidence. Also, AMI's reliance on this Court's decision in *Lombardo v. Johnson & Johnson Consumer Companies, Inc.*, 124 F. Supp. 3d 1283, 1289–90 (S.D. Fla. 2015) (Scola, J.) is misplaced. In *Lombardo,* this Court ruled on a motion for summary judgment, and discovery here *can* "establish evidence of indirect causation, for example, by showing that [retail] prices correlate to [AMI's] suggested retail prices." *Id.* at 1290.[14]

### C. AMI's Ascertainability Argument is Premature, and is Wrong on the Merits

AMI ignores the limits on motions to dismiss and attempts to transform its Motion into a premature opposition to a motion for class certification, arguing that "the class is not ascertainable as a matter of law." Motion at 9. This argument is premature, as "arguments related to Plaintiffs' class allegations are better suited to an opposition to a motion for class certification, rather than as a basis for a motion to dismiss." *Oginski v. Paragon Properties of Costa Rica, LLC*, 11–60647–CIV, 2011 WL 3489541, at *3 (S.D. Fla. Aug. 9, 2011). *Oginski* held:

> The Court finds Defendants' argument for dismissal based on insufficient class action allegations should be rejected. Dismissal at this stage is an extreme remedy appropriate only where a defendant demonstrates "from the face of [the] complaint that it will be impossible to certify the classes alleged by the plaintiff [ ] regardless of the facts the plaintiff[ ] may be able to prove." "To dismiss Plaintiff[s'] class allegation before discovery would be an acknowledgment by this Court that class certification is impossible." Defendants' arguments related to Plaintiff class allegations are better suited to an opposition to a motion for class certification, rather than as a basis for a motion to dismiss.

*Id.* (internal citation omitted). Many cases are in accord.[15]

---

[14] AMI also argues that Plaintiffs lack standing because Plaintiffs do not specify which size Container they purchased. Motion at 1, 8. This is false and a red herring. There is only <u>one</u> product -Vita Coco coconut water- which is packaged in Containers with identical labeling that happens to be in three sizes, all of which implicate the same set of concerns. *Garrison v. Whole Foods Mkt. Group, Inc.*, 13-cv-05222, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014) (relying on *Gratz v. Bollinger,* 539 U.S. 244, 265 (2003) to hold plaintiffs have standing to file class action over products bearing nearly identical labels to those not purchased); *Mednick v. Precor, Inc.*, 14-C-3624, 2016 WL 5390955, at *5 (N.D. Ill. Sept. 27, 2016) (standing to represent five models of treadmills because the marketing and representations were the same, even though plaintiff did not purchase all models). Further contradicting AMI's argument, Plaintiffs allege they drank "Vita Coco" which is defined as non-flavored coconut water sold in Large, Medium, and Small sizes – each of which Plaintiffs purchased. SAC at ¶¶ 46, 49, 52, fn 2.
[15] *Desmond v. Citimortgage, Inc.*, 12–cv–23088, 2015 WL 845571, at *1 (S.D. Fla. Feb. 25, 2015) (citing *Oginski*); *Giordano v. Davison Design & Dev., Inc.*, 13-60248-CIV, 2013 WL 11982356, at *5 (S.D. Fla. July 18, 2013); *Iyamu v. Clarfield, Okon, Salomone, & Pincus, P.L.*,

9

Notwithstanding, AMI's premature arguments are without basis. Motion at 9. An individual inquiry into each putative class member's belief is not necessary because Plaintiffs do not need to prove reliance. "As the Eleventh Circuit has noted, to prove the causation element of a FDUTPA claim, 'a plaintiff need not prove reliance on the allegedly false statement ... but rather a plaintiff must simply prove that an objectively reasonable person would have been deceived.'" *Lombardo v. Johnson & Johnson Consumer Companies, Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) (Scola, J) (citing *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011)).[16] Like *Lombardo*, *Carriuolo* and *Fitzpatrick*, class members only need to show that they purchased Vita Coco not produced in Brazil.[17] Further, with the advent of e-commerce, class members' purchases may be proven without the need for affidavits.

Second, AMI incorrectly relies on and misconstrues *Karhu v. Vital Pharm., Inc.*, 621 Fed. Appx. 945, 946 (11th Cir. 2015). AMI argues the Eleventh Circuit "firmly rejected" attempts to meet ascertainability with consumer affidavits, that there is no administratively feasible way to identify the class, and that certification would require individual mini-trials. Motion at 10. Initially, however, *Karhu* is not instructive here as *Karhu's* ruling on ascertainability occurred at the certification stage, not on a motion to dismiss. But *Kahru* does not stand for AMI's sweeping position that self-identification is improper as a matter of law. *Id.*

In *Kahru*, the plaintiff purchased a dietary supplement based on advertising that it aids in fat loss. 621 Fed. Appx. at 946. The plaintiff filed a class action alleging that the advertisement was deceptive, and moved to certify the class. The district court denied certification, holding that the ascertainability requirement was not met. *Id.* The Eleventh Circuit affirmed, noting the district court's exercise of its discretion, and plaintiff's procedural failures:

---

950 F. Supp. 2d 1271, 1275 (S.D. Fla. 2013); *Lemontang v. J.W. Lee, Inc.*, 08-60744-CIV, 2008 WL 2609658, at *1 (S.D. Fla. June 26, 2008).

[16] *See also Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984-86 (11th Cir. 2016) ("A party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue" and "[t]he mental state of each class member is irrelevant" because "it does not matter that there may have been differences among the class members' subjective reliance"); *Fitzpatrick*, 635 F.3d at 1283 (FDUTPA hinges on whether allegedly deceptive conduct would deceive an objective reasonable consumer).

[17] California and New York also do not require reliance. *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 982–83 (C.D. Cal. Feb. 23, 2015) ("need not show individualized reliance"); *Gale v. Int'l Bus. Machines Corp.*, 781 N.Y.S.2d 45, 46 (2004) (reliance not an element); *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) (reliance not an element).

10

> The district court likewise acted *within its discretion* when it rejected identification
> via affidavit. Because <u>Karhu had not himself proposed an affidavit-based method</u> ...
> Without a specific proposal as to how identification via affidavit would successfully
> operate, the district court had no basis to accept the method. We therefore uphold the
> district court's ascertainability holding in full.

*Id*. at 949 (emphasis added). *Karhu* is *not* a blanket rejection of the ability to ascertain a class on small dollar-claims; rather *Karhu* lays out a standard *for* obtaining an administratively feasible class. *Id*. at 946 ("plaintiff must propose an administratively feasible method by which class members can be identified").

Indeed, *Kahru* rejects, rather than supports, AMI's arguments. *Kahru* states that Plaintiffs can obtain ascertainment of a class "via self-identification" as long as the method does not implicate defendant's due process rights and does not require a series of mini-trials. *Id*. at 948-49. Thus, "[a] plaintiff might establish that self-identification-based ascertainment is administratively feasible and otherwise unproblematic by proposing a case-specific and demonstrably reliable method for screening each self-identification." *Id*. at fn 5. In *Kahru*, however, the plaintiff did not "propose a realistic method of identifying the individuals who purchased Meltdown" and did not timely raise an "affidavit-based method." *Id*. at 946, 949. Unlike AMI's position, the *Karhu* court made clear that it was *not* trying to "eradicate small-dollar class action claims." *Id*. at 950.

"Self-identification can and should be a sufficient means of ascertaining a class, particularly for a class of consumers of a cheap and unique product like the one at issue here." *Id*. at 951. This was reinforced in Judge Martin's concurrence in *Karhu*, noting that the Eleventh Circuit's "approval of the class in *Fitzpatrick v. General Mills, Inc.,* 635 F.3d 1279 (11th Cir. 2011), exemplifies [the] approach" that the "court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding." *Id*. at 952. Judge Martin explained that *Fitzpatrick* affirmed the certification of a class of all purchasers of YoPlus yogurt, despite the "likely difficulties" of "identifying those consumers that bought YoPlus, and of that group, who paid a premium for it," and "calculating the appropriate compensation for each plaintiff." *Id*. at 952. *Id*. at 952 (citing *Fitzpatrick v. General Mills, Inc.,* 263 F.R.D. 687, 702 (S.D. Fla. 2010)). Even though consumers were unlikely to retain receipts or proof of purchase, "this difficulty [was] not in itself

11

a sufficient basis to prevent certification of the class. <u>We easily allowed certification of that class without questioning its ascertainability.</u>" *Id.* (emphasis added) (internal quotation omitted).

As demonstrated, arguments about methods by which ascertainability can be met are not ripe or properly before the Court, and AMI's claim that *Karhu* sounds the death knell to ascertainably in small dollar class claims is wrong. Plaintiffs will further address ascertainability in a motion for class certification, as is appropriate, after pre-certification discovery is complete.

### D. The Court Has Subject Matter Jurisdiction under the Class Action Fairness Act

AMI's argument that the court lacks subject matter jurisdiction under 28 U.S.C. § 1332(d) is premised solely on its incorrect argument that the class is not ascertainable. Motion at 10. AMI's ascertainability argument is incorrect, as shown above in Section C. Accordingly, there is no basis for the Court to dismiss based on a claimed lack of subject matter jurisdiction.

### E. Plaintiffs' Claims for Injunctive Relief are Properly Pled

Plaintiffs' claims for injunctive relief are properly pled because Plaintiffs allege that AMI has failed to correct its deceptive labeling and marketing of Vita Coco, and that Plaintiffs would purchase the product in the future if properly labeled and marketed. SAC at ¶¶ 48, 51, 54, 84; *Marty*, 43 F. Supp. 3d at 1354 (need to allege "that the plaintiffs would purchase Beck's in the future" to plead standing for injunctive relief); *Seidman v. Snack Factory, LLC*, 14-cv-62547, 2015 WL 1411878, at \*5 (S.D. Fla. March 26, 2015) (same); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 192 (D.D.C. 2013) (same); *Mason v. Nature's Innovation, Inc.*, 12-cv-3019, 2013 WL 1969957, at \*4 (S.D. Cal. May 13, 2013) (same).

AMI theorizes that injunctive relief is not appropriate because "Plaintiffs are now fully aware of the truth about Vita Coco" and therefore there is no future threat of deception. Motion at 11. AMI's argument is illogical, and summarily rejected in *Richardson.* 991 F. Supp. 2d at 194 (rejecting arguments that plaintiffs lack standing because they necessarily know of alleged deception and therefore not at risk of being fooled because without an injunction plaintiffs cannot rely on deceptive label with any confidence). *Richardson*, equally applies here.

Moreover, AMI's argument assumes that the country of origin disclaimer is sufficient to apprise of Vita Coco's true origin, which contradicts Plaintiffs' allegations. SAC at ¶¶ 30, 31. Further, Plaintiffs allege that no Large Vita Coco is made in Brazil, and that AMI's Packaging of Small 4-packs of Vita Coco made outside of Brazil blocks the country of origin statement. SAC at ¶¶ 2, 23, 30, 31. Therefore, any argument by AMI that Plaintiffs can determine the true origin

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., Suite 2700, Miami, FL 33131  305.379.9000
WWW.KLUGERKAPLAN.COM

of the coconuts from the Container is of no merit, and does not cure the threat of future injury. *Id.*; *see also Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) ("[s]hould plaintiffs encounter the denomination 'All Natural' on an Arizona beverage at the grocery store today, they could not rely on that representation with any confidence" and therefore an injunction is proper); *Richardson*, 991 F. Supp. 2d at 194 ("plaintiffs, knowledgeable about the misrepresentations, are likely to suffer future harm in the absence of an injunction"). Plaintiffs are not alleging a mere conjectural "threat of future injury," but rather a "real and immediate" threat necessitating an injunction. *Marty*, 43 F. Supp. 3d at 1353 (relying on *Parr v. L & L Drive–Inn Rest.,* 96 F.Supp.2d 1065, 1080–81 (D.Haw.2000) ("[p]laintiff ha[d] established a likelihood of future injury based on his reasonable desire to patronize [a particular fast food restaurant] in the future"); *Fortyune v. Am. Multi–Cinema, Inc.,* No. CV01–05551, 2002 WL 32985838 (C.D.Cal. Oct. 22, 2002) (in ADA case "plaintiff had established a likelihood of future injury because '[the p]laintiff and his wife frequent[ed] the [movie theater in question] and the lack of accommodation continue[d] to exist'")).

Here, if Plaintiffs want to purchase a Large Vita Coco, like in *Richardson*, Plaintiffs "will be harmed – without an injunction – by not being able to rely on the ["born in brazil"] label with any confidence" because all Larges, like the "salon-only" products, contain the deceptive slogan. *Richardson*, 991 F. Supp. 2d at 194, 195. Similarly, if Plaintiffs want to purchase a four-pack of Small Vita Coco they would be unable to view the country of origin statement because the outer Packaging covers it (SAC at ¶ 30), further leaving Plaintiffs susceptible to future injury. *Marty*, 43 F. Supp. 3d at 1353.

The cases cited by AMI are of no weight on these facts. Motion at 11. For example, AMI's reliance on this Court's decision in *Jallali v. USA Funds,* 11-62510-CIV, 2012 WL 3291873, at *1 (S.D. Fla. Aug. 13, 2012) (Scola, J.) is misplaced because the case was not brought under the consumer protection statutes. The case related to unpaid wages pursuant to a garnishment order where plaintiff "did not allege any facts suggesting an immediate threat of future harm." *Id.* at *1, 6. Adopting AMI's argument for dismissal would turn consumer protection laws on their head. Each consumer protection statute at issue in this case is intended to

13

stop a prohibited practice through injunctive relief, necessarily requiring the plaintiff to be aware of the practice to obtain the injunctive relief expressly provided by these statutes.[18]

### F. Plaintiffs Properly Allege an Actionable Misrepresentation

AMI misdirects the Court when it tries to analogize "born in brazil" to the non-equivalent terms "Jamaican Style Lager," "The Taste of Jamaica," "Havana Club," and "Cajun Boy." *See*, Motion at 12-16 (relying on *Dumas*, 2016 WL 1367511 at *1). AMI takes the Court further astray, attempting to analogize "born in brazil," an affirmative statement of origin, to imagery on a packaging that might connote origin. Motion at 12-16 (relying heavily on *Nelson, LLC*, 2017 WL 1403343 at *1, and *Bowring*, 2017 WL 902151 at *2). AMI's analysis is misplaced.

*Dumas v. Diageo PLC*, 15-cv-1681, 2016 WL 1367511 (S.D. Cal. Apr. 6, 2016), dismissed a complaint alleging that although Red Stripe beer is no longer imported from Jamaica, the packaging's slogans "Jamaican Style Lager" and "The Taste of Jamaica" were designed to deceive consumers to maintain the brand identity of Jamaican beer. *Dumas*, 2016 WL 1367511 at *1. *Dumas* zeroed in on the words "style" and "taste," holding that "the very fact that the word 'style' is used indicates that the product is *not* from Jamaica" and that "who can say what Jamaica 'tastes' like." *Id*. (emphasis in original). *Dumas* held "style" and "taste" "cannot reasonably be constructed as a designation of origin." *Id*. at *5.[19] Here, unlike *Dumas*, there is no modifier word like "style," the Vito Coco Container does not state "Brazilian Style Coconut Water" or "The Taste of Brazil."

Importantly, *Dumas* itself notes that "Jamaican Style Lager" and "The Taste of Jamaica" are <u>distinguishable</u> from **"[t]he term 'Originated in Germany' [which] could be understood**

---

[18] Consumer protection statutes are designed to protect not only the rights of litigants but also the consuming public at large. *Martorella v. Deutsche Bank Nat'l Trust Co.*, 161 F. Supp. 3d 1209, 1224 (S.D. Fla. 2015). "It follows that an aggrieved party may pursue a claim for declaratory or injunctive relief under the Act, even if the effect of those remedies would be limited to the protection of consumers who have not yet been harmed by the unlawful trade practice." *Id*.; *see also* Fla. Stat. § 501.211(1) ("may bring an action . . . to enjoin a person who has violated, is violating, or is otherwise likely to violate this part"); N.Y. Gen. Bus. Law § 349 ("may bring an action in his own name to enjoin such unlawful act or practice..."); Cal. Bus. & Prof. Code §§ 17203 ("may be enjoined in any court of competent jurisdiction"); Fed. R. Civ. P. 23(b)(2) ("the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief ... is appropriate respecting the class as a whole").

[19] The same cannot be said about AMI's affirmative representation "born in." A simple analogy proves the point. If you ask a Florida native what country they were "born in," the answer is the United States. This is exactly the connotation provided by AMI's slogan "born in brazil."

to mean that the beer <u>came from</u> Germany." *Dumas*, 2016 WL 1367511 at \*5 (emphasis added). This case is much more similar to *Marty v. Anheuser-Busch* than to *Dumas*. *Marty* alleged class claims that Beck's misled consumers to believe that the beer "Originated in Germany," with "German Quality" while being "Brewed Under the German Purity Law of 1516" when it was in fact brewed in the United States. *Marty*, 43 F. Supp. 3d at 1336. The *Marty* plaintiffs alleged that they "purchased Beck's in reliance on representations contained on the packaging and Beck's history of being an imported beer from Germany." *Id*. Anheuser-Busch unsuccessfully argued, like AMI here, that "any mistaken belief that Beck's is brewed in Germany is contradicted by the packaging's statement 'Product of USA.'" *Id*. at 1340. The Court disagreed, finding the slogans referring to Germany, including "Originated in Germany," could mislead a reasonable consumer to believe that the beer came from Germany. *Id.* at 1342.[20]

AMI relies heavily on *Nelson v. MillerCoors, LLC* and *Bowring v. Sapporo U.S.A., Inc.*, which are equally inapplicable. In *Nelson*, the plaintiff alleged he was deceived into believing Foster's beer – an "Australian-*style* beer" – was made in Australia by Foster's beer bottles and cans, which contain a picture of a red kangaroo and stars from the Australian flag. *Nelson*, 2017 WL 1403343 at \*1-2. The plaintiff further alleged the marketing campaign which used "Australian accents and scenery" and "Foster's Australian for Beer" added to the deception. *Id*.

---

[20] The "born in brazil" slogan is not synonymous to "puffery," or slogans like "handmade," "beat the stock market," "secret recipe for investment success," "an experience you'll never forget," or "a good deal", as AMI argues. *See* Motion at 12 fn. 11, 15. Such statements do not make affirmative representations about the origin of the coconuts like "born in brazil." AMI's assertion that the deception is then cured by the distance of its disclaimer (Motion at 14), are factual issues not appropriately resolved at this stage, and in any event is not supported by the facts alleged or the law on conspicuousness. AMI is well aware that consumers of AMI's Vita Coco have consistently complained that they are confused as to the origin of the coconuts despite AMI's disclaimer or purported "one inch measurement" argument. *See* Consumer Complaints, Ex. B. AMI's claim that its slogan pays homage to its "heritage" (Motion at 13) is also inapposite, and at best a question of fact. *US v. Ninety–Five Barrels More or Less of Alleged Apple Cider Vinegar*, 265 U.S. 438, 443 (1924) ("Deception may result from the use of statements not technically false or which may be literally true"); *Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 391 F. Supp. 2d 1148, 1165 (S.D. Fla. 2005) (deception can occur if challenged statements are literally true, but misleading). AMI's argument that a parenthetical in the "giving back" section of its website that has nothing to do with the product, and a hearsay internet article, is considered "disclosure" to a consumer also must fail. Motion at 1-3, 16, 17; *Balser v. Hain Celestial Group, Inc.*, 2016 WL 696507 at \*2 (9th Cir. Feb. 22, 2016) ("product information on a website also cannot override as a matter of law any misimpressions created by the label").

15

at *2. Importantly, the Foster's labeling did not make any express claim that the beer was made, brewed in, or born in Australia. *Id.* at *5. To the contrary, the label contained an "explicit disclaimer" in all capital letters that the beer is "BREWED AND PACKAGED . . . BY OIL CAN BREWERIES, ALBANY GA AND FORT WORTH TX." *Id.* at *6. In dismissing the complaint, the court found the express disclaimer "eclipses" the images of a kangaroo and a constellation so that a reasonable consumer would not be misled to think Foster's Beer was made in Australia. *Id.* at *6. However, the Court warned that disclaimers **fail** to cure allegedly misleading statements where the misrepresentation is clear and the disclaimer is "exceedingly vague or requires consumers to make inferences." *Id.* at *5. Said differently, "[a]n effective disclaimer would have 'explicitly stated' the relevant information such that it would be '**impossible**' for those who viewed it to be deceived." *Id.* at *6.

*Bowring v. Sapporo U.S.A., Inc.,* is an even more tenuous comparison. In *Bowring*, the plaintiff alleged she was deceived into believing Sapporo's beer was made in Japan due to a packaging label that contained the "North Star" and allusions of imagery to Japan. *Bowring*, 2017 WL 902151 at *1, 4. The "Sapporo labels [did] **not** include the word 'Japan'." *Id.* at *3 (emphasis added). The Court held that "[t]he use of a trademarked star symbol and allusion to the company's historic roots in Japan are eclipsed by the accurate disclosure statement" and therefore a reasonable consumer could not be misled. *Id.* at *4.

AMI's purported country of origin disclaimer does not "dispel" confusion over the origin of Vita Coco. Motion at 12-14. Both *Nelson* and *Sapporo* deal solely with packaging that has imagery that could connote origin (*i.e.*, a red kangaroo or North Star symbol), but not a direct statement in "plain English" of an affirmative statement of origin (*i.e.,* "born in brazil"). Unlike the "allusion" and "imagery" from these cases, "born in brazil" is an affirmative statement of origin. Unlike *Nelson* and *Bowring*, here, if a consumer even sees the purported "disclaimer," the diametrically opposite statements themselves create confusion as to Vita Coco's origin.[21]

---

[21] The court in *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 244 (3d Cir. 2011), held that no reasonable interpretation of "Havana Club" on the label could mislead consumers because, underline unlike the facts here, right below "Havana Club," in "prominent," large, capital letters, and on the same side of the label, it stated "PUERTO RICAN RUM." *Id.* at 252 (emphasis added). A picture of the "Havana Club" label is found in the opinion and can be compared to the Vita Coco Container. *Compare, Id.* at 245 and SAC at Ex. B. In *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 745 (5th Cir. 2006), a Louisiana company sold catfish imported from China with the phrase "Cajun Boy" on the packaging. *Id.* at 747. To avoid

16

Plaintiffs allege that the purported "disclaimer" of the actual country of origin (*i.e.,* Produced in Philippines) is not conspicuous because the font is small, hidden on a separate side of the Container, imbedded in a paragraph with other language, blends into the background color (blue on blue) and, in the four-packs made outside of Brazil, is not visible to the consumer until after the Vita Coco is purchased and taken out of its exterior Packaging. SAC at ¶¶ 30, 31; *Baloco,* 640 F.3d at 1345 (court must accept allegations as true and construe in light most favorable to plaintiff). It is a far cry from the disclaimer contemplated by *Nelson* and *Bowring.*[22]

A reasonable consumer should <u>not</u> be expected to look beyond a misrepresentation to discover the truth from the ingredient list in small print on the side of the box, nor should the consumer have to open a carton to remove the product to ascertain whether representations made on the face of the packaging are misleading. *Marty,* 43 F. Supp. 3d at 1341.[23]

      i)     **Whether a Reasonable Consumer is Deceived by Vita Coco's Container, Packaging, Labeling and Marketing is a Question of Fact**

Whether AMI's slogan "born in brazil" is deceptive is a question of fact, not appropriate on a motion to dismiss. *Bohlke v. Shearer's Foods,* 14-cv-80727, 2015 WL 249418, at \*9 (S.D. Fla. Jan. 20, 2015) ("[w]hether [specific] conduct constitutes an unfair or deceptive trade practice is a question of fact for the jury to determine"); *Janney v. Mills,* 12-cv-03919, 2014 WL

---

misleading the consumer that "Cajun Boy" catfish originated from Louisiana, the company stamped the word "Chinese" <u>above</u> the word catfish on each package. *Id.* at n. 5. Neither case is analogous to Vita Coco's <u>small</u> font disclaimer, found on a <u>different</u> <u>side</u> of the Container than "born in brazil." SAC at ¶¶ 30 and 31. Moreover, the side panel containing the country of origin marking is not visible when stacked on store shelfs. SAC at Ex. B.

[22] As if this was not sufficient to overcome AMI's alleged disclaimer on a motion to dismiss, AMI is also not in compliance with the requirements of 19 CFR § 134.46 because the country of origin marking is not "on the **same side(s) or surface(s),**" and does not use "**letters of at least equal size,**" as the "born in brazil" slogan. CROSS, NY K80551 (emphasis added); CROSS, HQ 563007 (July 14, 2004); CROSS, HQ H105329 (Aug. 12, 2010).

[23] *See also*, *Williams v. Gerber Products Co.*, 552 F.3d at 939-40 (9th Cir. 2008) (unreasonable to expect reasonable consumer "to look beyond misleading representations on the front of the box to discover the truth … in small print on the side of the box"); *Bohlke v. Shearer's Foods,* 2015 WL 249418, at \*9 ("A consumer might be misled…regardless of additional disclosures on the back of packaging…consumer might rely on these representations without scrutinizing the ingredients…"); *Yumul v. Smart Balance, Inc.,* 733 F. Supp. 2d 1117, 1129 (C.D. Cal. 2010) (same); *but see, Nelson,* 2017 WL 1403343 at \*5 (idea that consumers purchase products based on certain statements on label but not others in close proximity strains credibility).

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., Suite 2700, Miami, FL 33131  305.379.9000
WWW.KLUGERKAPLAN.COM

1266299, at *3 (N.D. Cal. March 26, 2014) (only under "rare" circumstances may a court assess the alleged deceptive labeling at this stage).

Like *Marty*, the Federal regulations and CBP rulings are particularly instructive and persuasive that "born in" is an affirmative statement of origin that can deceive a consumer.[24] CBP enacted 19 C.F.R. § 134.46 to **"prevent the possibility of misleading the ultimate purchaser as to the origin of the imported article"** where the markings of a country name are not the product's country of origin.  *See* CROSS, NY K80551 (Nov. 20, 2003) (emphasis added); CROSS, HQ H247824 (Nov. 21, 2013) (same).  19 C.F.R. § 134.46 is squarely on point:

> In any case in which . . . the name of any foreign country or locality other than the country or locality in which the article was manufactured or produced appear on an imported article or its container, and those words, letters or names may mislead or deceive the ultimate purchaser as to the actual country of origin of the article, there shall appear legibly and permanently in close proximity to such words, letters or name, and in at least a comparable size, the name of the country of origin preceded by "Made in," "Product of," or other words of similar meaning.

*Id.* (emphasis added); *see also*, 21 C.F.R. § 101.18(c) (FDA's similar regulation).

In a closely analogous case, the CBP applied 19 C.F.R. § 134.46 to rule that the phrase **"Born in Oregon"** found on women's apparel hangtags **"connote[s] origin and could mislead or deceive an ultimate purchaser as to the origin of the imported garments**.**"** CROSS, HQ 562070 (emphasis added); *see also* CROSS, HQ 734036 (May 20, 1991) (reference to "Los Angeles, CA" on Canadian sparkling water may mislead the ultimate purchaser).

Like "Originated in Germany" and "Born in Oregon," AMI's slogan "born in brazil" connotes origin and can mislead consumers about the origin of the coconuts, as Plaintiffs allege.

### G. Plaintiffs Do Not Need to Satisfy Rule 9(b), But Do So In any Event

AMI asserts a split of authority in this district about whether Rule 9(b) applies to Plaintiffs' consumer protection claims, but nonetheless argues that the heightened pleading requirements of Rule 9(b) apply. Motion at 5 fn.7, 18. AMI's review of these Rule 9(b) cases is superficial. A more detailed review demonstrates that the cases are harmonized as follows: if the

---

[24] *Trayco, Inc. v. United States*, 89-03612, 1991 WL 516834, at *5 (D.S.C. March 26, 1991) (CROSS rulings interpreting CBP regulations "must" be given substantial deference); *Scotch Whiskey Ass'n v. Consol. Distilled Products, Inc.*, 79-C-3107, 1981 WL 40524, at *3 (N.D. Ill. May 7, 1981) ("Judicial deference to the findings made by a specialized administrative body is a well-settled rule of law"). The CBP rulings are referred to as Customs Rulings Online Search System (hereinafter, "**CROSS**") and are available at http://rulings.cbp.gov.

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., Suite 2700, Miami, FL 33131  305.379.9000
WWW.KLUGERKAPLAN.COM

underlying claim is solely grounded in deceptive and unfair trade practices as here, as opposed to cases alleging intentionally fraudulent conduct, then the heightened requirements of Rule 9(b) do **not** apply. *Toback v. GNC Holdings, Inc.*, 13-80526-CIV, 2013 WL 5206103, n. 1 (S.D. Fla. Sept. 13, 2013) (class action FDUTPA claim regarding deceptive labeling does not require heightened pleading); *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1354–55 (S.D. Fla. 2012) (Rule 9(b) not applicable to class action FDUTPA claim grounded in misleading labeling of honey). The cases cited by AMI to support its Rule 9(b) argument (Motion at 5) are inapplicable because each claim was grounded in fraud. *Librizzi v. Ocwen Loan Servicing, LLC*, 120 F. Supp. 3d 1368, 1372 (S.D. Fla. 2015) (non-class action alleging <u>fraudulent</u> home mortgage loan claim); *Garcia v. Santa Maria Resort, Inc.* 528 F. Supp. 2d 1283, 1294 (S.D. Fla. 2007) (FDUTPA claim arising from <u>securities fraud</u>); *Kearns v. Ford Motor Company*, 567 F.3d 1120 (9th Cir. 2009) (UCL and CLRA claims arising from <u>fraudulent</u> conduct regarding pre-owned vehicle program).

Here, Plaintiffs' consumer protection claims do not trigger Rule 9(b) because the allegations are grounded in unfair trade practices and not fraud.[25]

### H. Plaintiffs Properly Allege that Vita Coco Caused Plaintiffs Actual Harm

AMI argues Plaintiffs' claims fail because Plaintiffs "have not alleged that Vita Coco caused their injury" as "the price they paid for Vita Coco" was set by retailers, not AMI. Motion at 18, 19. As discussed *supra* in Section B, this argument is of no merit, and also was rejected in *Marty*, 43 F. Supp. 3d at 1346-47. In any event, Plaintiffs plead exactly what AMI contends they have not: actual harm caused by AMI by pleading damages under the price premium theory. SAC at ¶¶ 2, 45, 48, 51, 54.

### I. Plaintiffs Properly Allege that Vita Coco is Worthless

Plaintiffs properly plead damages under the "worthlessness" damage theory. In *Bohlke*, 2015 WL 249418 at *8, the court held allegations that "the Products are misbranded and

---

[25] Even if this Court applies Rule 9(b), Plaintiffs' allegations meet the rule. *See* Background Section, *supra*; SAC ¶¶ 1, 2, 19, 20, 22, 29, 31, 43 - 47, 49, 50, 52, 53 (alleging a reasonable consumer would be misled by the slogan "born in brazil," Plaintiffs relied on the slogan thinking they were purchasing Brazilian coconut water, and due to AMI's deceptive conduct paid a premium). Plaintiffs allege numerous details about AMI's deceptive marketing of Vita Coco. *Id.* at ¶¶ 1, 2, 27, 33-34, 35-40 (website depicting manufacturing plant with Brazilian flag and Vita Coco traveling to the United States); ¶¶ 35-40 (advertising as: "born out of brazil," #BornInBrazil, and sales uniforms made of colors to mimic Brazil's soccer jerseys). These allegations would satisfy Rule 9(b) if it applied in a consumer unfair trade practices case.

valueless" and that "there is no market value for an unlawful product" are sufficient to plead a "worthlessness" damage theory. *Id.*; *Seidman*, 2015 WL 1411878 at *3 (same). Here, Plaintiffs similarly allege that AMI mislabeled Vita Coco rendering the coconut water worthless, entitling Plaintiffs to a full refund. SAC at ¶¶ 2, 45. Plaintiffs also allege "worthlessness" in each consumer protection count. SAC at ¶¶ 102-103, 111, 113, 122, 126. "Where a product is rendered valueless by an alleged defect, the purchase price is an appropriate measure of damages." *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1294 (M.D. Fla. 2009). Here, Vita Coco is made with one main ingredient, coconuts. Plaintiffs allege they did not purchase Brazilian coconuts as they believed, rendering the product worthless. SAC at ¶¶ 2, 45, 100, 102-103, 111, 113, 122, 126. The fact that Plaintiffs consistently purchased Vita Coco does not defeat their claims because they were duped to believe that Vita Coco was made in Brazil from Brazilian coconuts. AMI fails to cite a single case in this jurisdiction to support its argument that worthlessness is not proper, nor to refute the law in *Bohlke* and *Seidman* that Plaintiffs have properly pled a claim that Vita Coco was worthless.[26] AMI is simply wrong in arguing that the worthlessness theory "has been resoundingly rejected by multiple courts in other food and beverage labeling cases" and in its reliance on *Brazil*, *Reid*, and *Swearingen*. Motion at 19-20. These cases simply do not support AMI's argument. *Brazil v. Dole Packaged Foods, LLC*, 14-17480, 2016 WL 5539863, at *2 (9th Cir. Sept. 30, 2016), acknowledged the viability of the worthless damage theory, but found on summary judgment that plaintiff "ha[d] not proven Dole's products were valueless." *Reid v. GMC Skin Care USA Inc.*, 15-cv-277, 2016 WL 403497, at *15 (N.D.N.Y. Jan. 15, 2016), did not render any holding regarding the viability of the worthlessness theory, and *Swearingen v. Pac. Foods of Oregon, Inc.*, 13-cv-04157, 2014 WL 3767052, at *1 (N.D. Cal. July 31, 2014) merely held that plaintiff's purchase of an illegal product was not a basis for standing.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' respectfully request that this Court deny Defendant, All Market, Inc.'s, Motion to Dismiss the Second Amended Complaint.

---

[26] AMI cites *Herazo v. Whole Foods Mkt., Inc.*, 2015 WL 4514510, at *3 (S.D. Fla. July 24, 2015). *Herazo* does not discuss the worthlessness damage theory and is therefore of no weight.

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., Suite 2700, Miami, FL 33131  305.379.9000
WWW.KLUGERKAPLAN.COM

Respectfully submitted,

**KLUGER, KAPLAN, SILVERMAN,**
**KATZEN & LEVINE, P.L.**
*Attorneys for Plaintiffs*
Miami Center, Twenty Seventh Floor
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 379-9000
Facsimile:  (305) 379-3428


By: */s/ Steve I. Silverman*

     **STEVE I. SILVERMAN**
     Fla. Bar No. 516831
     ssilverman@klugerkaplan.com
     **PHILIPPE LIEBERMAN**
     Fla. Bar No. 27146
     plieberman@klugerkaplan.com
     **RICHARD I. SEGAL**
     Florida Bar No. 57187
     rsegal@klugerkaplan.com


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 17, 2017, I served the foregoing document on all counsel or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic notices.


By: /s/ Steve I. Silverman

     **STEVE I. SILVERMAN**

21

## SERVICE LIST

**Melissa C. Pallett-Vasquez, Esq.**
*mpallett@bilzin.com*
**Lori P. Lustrin, Esq.**
*llustrin@bilzin.com*
**BILZIN SUMBERG BAENA PRICE & AXELROD, LLP**
1450 Brickell Ave., Suite 2300
Miami, FL 33131
Phone No. (305) 374-7580
Fax No. (305) 374-7593
*Counsel for Defendant, All Market, Inc.*


**Scott Voelz, Esq.** (*admitted pro hac vice*)
*svoelz@omm.com*
**O'MELVENY & MYERS, LLP**
400 South Hop Street, 18th Floor
Los Angeles, CA 90071
Phone No. (213) 430-6680
Fax No. (213) 430-6407
*Counsel for Defendant, All Market, Inc.*


**Hannah Y. Chanoine, Esq.** (*admitted pro hac vice*)
hchanoine@omm.com
**Christopher S. Cobgurn, Esq.** (*admitted pro hac vice*)
ccogburn@omm.com
**O'MELVENY & MYERS, LLP**
Times Square Tower, 7 Times Square
New York, NY 10036
Phone No. (212) 326-2128
Fax No. (212) 326-2061
*Counsel for Defendant, All Market, Inc.*

22