# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:16-CV-21238-Scola/Otazo-Reyes

JOSHUA WASSER, ILA GOLD,
and ROBERTO ISRAEL BARAJAS-RAMOS,
on behalf of themselves and all others
similarly situated,

        Plaintiffs,

                                              **CLASS ACTION**

v.

ALL MARKET, INC.,

        Defendant.

_____

## PLAINTIFFS' MEMORANDUM IN OPPOSITION
## TO DEFENDANT, ALL MARKET, INC.'S MOTION TO STRIKE THE
## DECLARATIONS OF DR. CLAUDIU V. DIMOFTE AND CHRISTIAN TREGILLIS

Plaintiffs, JOSHUA WASSER, ILA GOLD, and ROBERTO ISRAEL BARAJAS-RAMOS (collectively the "**Plaintiffs**"), through undersigned counsel, hereby file their Memorandum in Opposition to Defendant, ALL MARKET INC.'s ("**AMI**"), Motion to Strike (the "**Motion to Strike**") the Declarations of Dr. Claudiu V. Dimofte ("**Dimofte Declaration**") [D.E. 221] and Christian Tregillis ("**Tregillis Declaration**") [D.E. 220] (collectively, the "**Declarations**"), and in support state as follows:

## INTRODUCTION

While not specifically titled a "motion to strike," the first section of AMI's Reply in Support of its Motion to Exclude the Reports, Opinions, and Testimony of Claudiu V. Dimofte and Christian Tregillis ("**Reply in Support of Motion to Exclude** ") [D.E. 230] asks the Court to strike (or, as framed by AMI, to "disallow") the Dimofte and Tregillis Declarations. *See Reply in Support of Motion to Exclude*, at p. 4-6.[1]   However, the Dimofte and Tregillis Declarations, which were filed in support of Plaintiffs' Response to AMI's *Daubert* motion, do <u>*not*</u> provide new or different opinions than either expert submitted in their expert reports or in

---

[1] If the Court should deem this this Response as a surreply, Plaintiffs respectfully request leave to file this surreply.

their depositions.   Rather these Declarations were submitted to address and rebut AMI's erroneous attacks made on their experts' reports and conclusions in AMI's *Daubert* motion, and to explain why AMI's attacks are incorrect.  Indeed, there is no way for Dimofte or Tregillis - or any expert - to foresee and address, in preemptory fashion in their initial reports, each and every possible critique that AMI may lodge against their opinions.  This is precisely why courts routinely allow experts to submit affidavits and declarations in response to attacks on their expert reports and opinions.

Nonetheless, in a blatant effort to prevent Plaintiffs' experts from responding to AMI's erroneous and misleading criticisms through their Declarations, AMI asks the Court to strike (or "disallow") them.  As explained below, contrary to AMI's assertions, the Dimofte and Tregillis Declarations do nothing more than respond to AMI's attacks and are entirely consistent with the expert reports and deposition testimony provided by Dimofte and Tregillis that is the subject of AMI's *Daubert* motion.  The Declarations do not offer any new opinions or methodologies and properly rebut the matters in AMI's *Daubert* motion, as is permitted.  Accordingly, the Court should deny the Motion to Strike.

## ARGUMENT AND AUTHORITIES

### I.     Standard of Review

Rule 26, "does not limit an expert's testimony to simply reading his report." *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006).  "The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report." *Id.*  Indeed, "[a]s an initial matter, it is clear that experts need not include every aspect of their testimony in the original report." *Massachusetts Mutual Life Ins. Co. v. DB Structured Prod., Inc.*, No. 11-30039-MGM, 2015 WL 12990692, at *3 (D. Mass. Mar. 31, 2015).

Particularly pertinent here is that "there is no prohibition in the Federal Rules on the submission of replies correcting errors in the expert's original report *or responding to a critique of that report.*"  *Palatkevich v. Choupak*, No. 12 Cv. 1681, 2014 WL 5463371, at *2 (S.D.N.Y. Oct. 22, 2014) (emphasis added). "The practical reality is that experts often will not be in a position to predict every challenge or critique of their analysis at the time of the original report. This is especially true in the context of a *Daubert* challenge." *Massachusetts Mutual Life Ins.*

2

*Co.*, 2015 WL 12990692 at *3; *see also Burchfield v. CSX Transp., Inc.*, No. 1:07-CV-1263-TWT, 2009 WL 1405144, at *8 (N.D. Ga. May 15, 2009) ("[u]nless there is an ability to explain and confirm opinions, an expert would simply read his Rule 26 report and sit down . . . depositions would include hours more questioning by the lawyer who retained the expert to make sure that every question that could later be taken out of context, or perhaps incompletely answered, would be corrected").

"While the Eleventh Circuit has held a supplemental expert report may be excluded pursuant to Rule 37(c) if not timely filed, courts have denied motions seeking to preclude consideration of expert affidavits on untimeliness grounds ***where the affidavits did not offer new opinions***." *Green v. Five Star Mfg., Inc.* No. 2:24-cv-00449-SGC, 2016 WL 1243757, at *3 (S.D. Ala. Mar. 30, 2016) (emphasis added); *see also Travelers Prop. Cas. Co. of Am. v. All-South Subcontractors, Inc.*, No. 17-0041-WS-B, 2018 WL 1787883, at *10 (S.D. Ala. Apr. 13, 2018) (noting that expert "affidavits are typically allowed if they do not offer new expert opinions but simply clarify or explain previously given opinions"); *Lidle ex rel. Lidle v. Cirrus Design Corp.*, No. 08 Cv. 1253, 2010 WL 2674584, at *7, n.4 (S.D.N.Y. July 6, 2010) ("where an expert affidavit expounded a ***wholly new and complex approach, as opposed to merely supporting an initial position***, the expert's affidavit should be stricken") (emphasis added).

In fact, courts routinely deny motions to strike expert declarations and affidavits that support the opinions expressed in initial reports and that respond to criticism of those opinions. *See, e.g., Green*, 2016 WL 1243757 at *3 (denying motion to strike expert affidavit that provided "greater detail" regarding methodology utilized in forming opinion and identified "additional sources" that support opinion); *Rockhill-Anderson v. Deere & Co.*, 994 F. Supp. 2d 1224, 1239 (M.D. Ala. 2014) (denying motion to strike expert affidavits where "overall opinions expressed in the affidavits [were] consistent with previously disclosed reports and deposition testimonies"); *All-South Subcontractors, Inc.*, 2018 WL 1787883 at *10 (denying motion to strike expert affidavit that could not "reasonably be viewed as disclosing new or different opinions").

Although the Eleventh Circuit has never had the occasion to rule on a motion to strike a supplementary or explanatory expert affidavit or declaration (*see* Section C *infra*), other Federal Circuit Courts of Appeal agree with the district court authorities within the Eleventh Circuit that are discussed above. *E.g., Johnson v. Memphis Light Gas & Water Div.*, 695 Fed. Appx. 131, 143 n.11 (6th Cir. 2017) (reversing exclusion of expert affidavit because affidavit contained no

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• MIAMI CENTER, 27TH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131• 305.379.9000

new opinions; "The district court … perceived Dr. Laboy's affidavit as "new evidence" that could have been obtained prior to the filing of dispositive motions. We do not read Dr. Laboy's affidavit in the same way. Rather, we perceive it as an attempt to correct the district court's erroneous reading of Dr. Laboy's autopsy report and deposition testimony, …"); *Poulis-Minott v. Smith*, 388 F.3d 354, 357-59 (1st Cir. 2004) (explanatory affidavits permissible; "The issue here is not that the experts' affidavits were entirely new and unannounced, but rather whether any new information was included in the expert affidavits that was not included in the 'complete statement of all opinions to be expressed,' as required by Rule 26(a)"). *Cf. Sobrino-Barrera v, Anderson Shipping Co., Ltd.*, 495 Fed. Appx. 430, 432-33 (5th Cir. 2012) (expert affidavits acceptable so long as they do not go "beyond 'proving up' the opinions contained in that report"; striking affidavit because for the first time affidavit contained opinion that "stowing pipe hard aft to the bulkhead is an 'abnormal and unsafe' practice of stowing pipe").

## A.   *AMI's attempt to strike the Tregillis Declaration should be denied.*

AMI argues that the Tregillis Declaration should be stricken because it discloses **_one_** additional supporting source and responds to AMI's misleading attempt to manipulate data utilized by Tregillis in his report. *See Reply in Support of Motion to Exclude*, at p. 6.  In a blatant effort to mischaracterize the Tregillis Declaration, AMI also implies that Tregillis revealed a new measurement for determining what constitutes a "marketing phrase." *Id.*  Tregillis did not, and does not offer any new or different opinions from those in his report and deposition.

As an initial matter, and based on the authorities above, the Tregillis Declaration should stand because AMI does not even attempt to argue that Tregillis has offered any new opinions in his declaration.  In fact, AMI concedes that the one additional *source* cited by Tregillis in his Declaration is to *support* why he did not utilize a "brand" variable in his regression analysis, a point of criticism in AMI's *Daubert* motion, Tregillis preferring to account for "brand" in another commonly recognized manner.

Furthermore, in his Declaration, Tregillis merely responds to AMI's improper manipulation of the data he used in his expert report and explained why the manipulation is misleading and why it is critical to conduct a full regression analysis (as he did).  Tregillis Declaration, ¶¶ 40-41.  Finally, AMI's claim that Tregillis offered a previously undisclosed "measurement" (i.e., that a paragraph on the back of a container of Zico coconut water container has letters approximately 1.5mm tall) does not change his underlying opinion or the

4

methodology he employed to determine what constitutes a "marketing phrase."  In fact, his Declaration merely mentions the height of the font used in the sentence as explanatory, and in no way suggests that he used 1.5mm as any sort of benchmark.  Tregillis Declaration, ¶¶ 16-17. None of these topics are new or unexpected to AMI, as Tregillis had previously testified to each of these issues at his deposition.  Tregillis Deposition [D.E. 216] at 134-35; 156-70; 197-201; 203-20; 263-276.

In sum, none of the arguments proffered by AMI support their demand that the Court strike the Tregillis Declaration.  The Tregillis Declaration simply responds to AMI's after-the-fact critiques of his expert opinion, which is consistent with the Rules and not a basis for to strike his declaration.

### B.  AMI's attempt to strike the Dimofte Declaration should be also denied.

Similar to its attempts to strike the Tregillis Declaration, AMI tries to use Dimofte's response to AMI's critiques of his expert report as a basis to strike the Dimofte Declaration. Importantly, AMI's sole focus on striking the Dimofte Declaration relates to the Conjoint Analysis.  AMI does not make any challenges to the Dimofte Declaration regarding any further explanation or support it contains regarding Dimofte's consumer perception survey. Accordingly, AMI offers no basis to strike the Dimofte Declaration regarding the consumer perception study issues discussed in it.

AMI argues that the Court should not consider the Dimofte Declaration because it responds to AMI's criticism that his Conjoint Analysis only considered consumers' opinions of Brazilian coconut water vis-à-vis coconut water produced in the Philippines.  *See Reply in Support of Motion to Exclude*, at p. 4-5.  However, the information in the Dimofte Declaration regarding country of origin stereotypes[2] is entirely consistent with the opinion reached in his expert report and does not offer any new methodology for his Conjoint Analysis.  Dimofte Declaration, ¶ 45-50.  In fact, Dimofte testified at his deposition regarding these same issues - country of origin stereotypes and consumers' perceptions of products from Southeast Asia - and

---

[2] AMI uses Dr. Dimofte's references to ASEAN country "stereotypes" in a pejorative manner. In doing so, AMI further demonstrates its misunderstanding of these issues.  There is a wide body of established research employing the word "stereotype" in connection with country of origin issues.  *See, e.g.,* references assembled at https://www.google.com/search?q=country+of+origin+stereotype&ei=Q5xHW7ifMIHctQWvm YDYBA&start=0&sa=N&biw=1680&bih=933, accessed August 6, 2018.  AMI's attempts to prejudice the Court against Dr. Dimofte in this manner should not be countenanced.

Kluger, Kaplan, Silverman, Katzen & Levine, P.L.• Miami Center, 27th Floor, 201 So. Biscayne Blvd., Miami, FL 33131• 305.379.9000

his declaration is consistent with his deposition testimony.  *See* Dimofte Depo [D.E. 217], p. 75-76; 226-31.  Dimofte's deposition was the first instance at which he could have responded to this attack as there was no way of predicting the arguments AMI would attempt to launch at his Conjoint Analysis.  Nonetheless, AMI's position is essentially that Dimofte should have anticipated each of their potential critiques and provided a full preemptory response in his initial report or be precluded from responding to their attacks.  As explained above, this is not the law. Accordingly, the Court should also deny AMI's attempt to strike the Dimofte Declaration.

### C. The only case relied upon by AMI to support its Motion to Strike is readily distinguishable.

Despite the numerous cases addressing attempts to strike expert affidavits and declarations in instances like this, AMI focuses solely on one case to argue that the Court should strike the Dimofte and Tregillis Declarations.  *See Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821 (11th Cir. 2009).  However, *Mitchell* is readily distinguishable from the instant case as it simply does not support AMI's position that Dimofte and Tregillis are not permitted to explain and defend their opinions in response to AMI's *Daubert* motion.

In *Mitchell*, the plaintiff offered an expert on the allegedly defective design of the vehicle in question.  *Id.* at 823-25.  The plaintiff's expert did not conduct any of his own experiments or tests regarding the vehicle design and instead relied only on three scientific papers to support the opinion in his report that the vehicle design was defective.  *Id.*  In fact, the expert "repeatedly" testified during his deposition that his opinion was based only on the three scientific papers and, when he appeared before the trial court on a *Daubert* hearing, he still failed to offer any specific additional grounds for his opinion.  *Id.*  Accordingly, when the plaintiff filed additional scientific papers to support the expert's opinion, the trial court granted the defendant's motion to strike the additional scientific papers.  *Id.*

Unlike *Mitchell*, both Dimofte and Tregillis conducted their own studies from which their opinions were derived, and rather than rely on a few scientific papers to create their opinions, both Dimofte and Tregillis merely offered scientific papers to support their methodologies in response to AMI's attacks on those methodologies.  Also, unlike *Mitchell*, because Dimofte and Tregillis conducted their own analyses, instead of relying on third-party papers, their declarations are entirely consistent with their initial reports and deposition testimony.  In other words, *Mitchell* simply does not support AMI's contention that Dimofte and Tregillis should have

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• MIAMI CENTER, 27TH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131• 305.379.9000

anticipated each and every one of AMI's possible attacks, or that their Declarations in defending such are not appropriate.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny AMI's Motion to Strike the Dimofte and Tregillis Declarations.

Respectfully submitted,

**KLUGER, KAPLAN, SILVERMAN,
KATZEN & LEVINE, P.L.**
*Attorneys for Plaintiffs*
Miami Center, Twenty Seventh Floor
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 379-9000
Facsimile:  (305) 379-3428

By: */s/ Steve I. Silverman*
     **STEVE I. SILVERMAN**
     Fla. Bar No. 516831
     ssilverman@klugerkaplan.com
     **PHILIPPE LIEBERMAN**
     Fla. Bar No. 27146
     plieberman@klugerkaplan.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 7, 2018, I served the foregoing document on all counsel or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic notices.

By: */s/ Steve I. Silverman*
     **STEVE I. SILVERMAN**

<u>**SERVICE LIST**</u>

**Melissa C. Pallett-Vasquez, Esq.**
*mpallett@bilzin.com*
**Lori P. Lustrin, Esq.**
*llustrin@bilzin.com*
**Jerry Goldsmith, Esq.**
*jgoldsmith@bilzin.com*
**Raquel M. Fernandez, Esq.**
*rfernandez@bilzin.com*
**Bilzin Sumberg Baena Price & Axelrod, LLP**
1450 Brickell Ave., Suite 2300
Miami, FL 33131
Phone No. (305) 374-7580
Fax No. (305) 374-7593
*Counsel for Defendant, All Market, Inc.*

**Scott Voelz, Esq.** (*admitted pro hac vice*)
*svoelz@omm.com*
**O'Melveny & Myers, LLP**
400 South Hop Street, 18th Floor
Los Angeles, CA 90071
Phone No. (213) 430-6680
Fax No. (213) 430-6407
*Counsel for Defendant, All Market, Inc.*

**Hannah Y. Chanoine, Esq.** (*admitted pro hac vice*)
hchanoine@omm.com
**Christopher S. Cobgurn, Esq.** (*admitted pro hac vice*)
ccogburn@omm.com
**O'Melveny & Myers, LLP**
Times Square Tower, 7 Times Square
New York, NY 10036
Phone No. (212) 326-2128
Fax No. (212) 326-2061
*Counsel for Defendant, All Market, Inc.*

**Richard I. Segal, Esq.**
Rich@segalzuckerman.com
**Segal Zuckerman, P.A.**
20801 Biscayne Boulevard, Suite 304
Aventura, FL 33180
Phone No. (305) 682-1110
Fax No. (305) 682-1800
*Co-Counsel for Plaintiffs*

Kluger, Kaplan, Silverman, Katzen & Levine, P.L.• Miami Center, 27th Floor, 201 So. Biscayne Blvd., Miami, FL 33131• 305.379.9000