United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Joshua Wasser, and others, ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 16-21238-Civ-Scola |
| All Market, Inc., Defendant. ) | |

**Order Denying the Plaintiffs' Motion for Class
Certification and Dismissing the Second Amended Complaint**

This case revolves around the Defendant All Market, Inc.'s ("AMI") use of the phrase "born in brazil" on containers of Vita Coco, a coconut water. The Plaintiffs claim this slogan misled them into purchasing the product by implying that Vita Coco was manufactured in or sourced from Brazil, when it was not. On that basis, the Plaintiffs assert numerous state law causes of action on behalf of themselves and classes of like consumers.

Now before the Court is the Plaintiffs' motion for class certification (the "Motion," ECF No. 193). Having reviewed the parties' briefing and exhibits, and the applicable law, the Court **denies** the Motion for the reasons described below.

**1. Background**

The Plaintiffs are consumers of Vita Coco, a brand of coconut water produced by AMI. Each of the six claims asserted by the Plaintiffs is premised on the theory that Vita Coco's slogan "born in brazil," which is printed on certain drink containers, misleads consumers into believing that Vita Coco is sourced from Brazilian coconuts and manufactured in Brazil, when it is not. The Plaintiffs allege they have been deceived by this slogan, and assert claims on behalf of themselves and proposed classes of Florida, New York and California consumers against AMI for unjust enrichment (Count 1), injunctive relief (Count 2), violation of the Florida Deceptive and Unfair Trade Practices Act (Count 3), violation of the New York General Business Law section 349 (Count 4), violation of the California Unfair Competition Law and Business and Professions Code (Count 5), and violation of the California Consumer Legal Remedies Act (Count 6). (*See* 2d Am. Compl., ECF No. 93.) The sole jurisdictional basis for these claims is the Class Action Fairness Act of 2005. 28 U.S.C. §1332(d)(2); (2d Am. Compl. at ¶ 3.)

Through the Motion, the Plaintiffs request certification of the following six classes:

- three injunctive relief classes (the "Injunctive Classes") under Federal Rule of Civil Procedure 23(b)(2) for consumers from Florida, New York and California, respectively, "who purchased individually-packaged, original-flavored (pure), Small, Medium or Large Vita Coco within the statutory period from April 2012 through the present, at retail [in either Florida, New York or California] for offsite, personal, family, or household consumption and not for re-sale, that was not sourced, manufactured, or imported from Brazil," (Mot. at 12); and

- three damage classes (the "Damage Classes") under Rule 23(b)(3) for consumers from Florida, New York and California, respectively, "who purchased an individually-packaged, original-flavored (pure), Large-sized 1L tetrapack of Vita Coco within the statutory period from April 2012 through the present, at retail in [Florida, New York or California] for offsite, personal, family, or household consumption and not for re-sale." (*Id.*)

The Plaintiffs argue that the six proposed classes should be certified because: (1) the Plaintiffs have Article III standing; (2) the classes are ascertainable; (3) the requirements of Federal Rule of Civil Procedure 23(a) are satisfied; (4) the Injunctive Classes meet the requirements of Rule 23(b)(2); and (5) the Damage Classes meet the requirements of Rule 23(b)(3).

AMI opposes the Motion, arguing that: (1) the proposed classes are not ascertainable; (2) the Damage Classes fail Rule 23(b)(3)'s predominance requirement; (3) the proposed classes do not meet Rule 23(a)'s typicality requirement; and (4) the Injunctive Classes are moot. (Opp. to Mot. for Class Cert., ECF No. 207.)

## 2. Standard for Class Certification

Class actions are "exception[s] to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Parties seeking to certify a class must "affirmatively demonstrate . . . compliance with Rule 21." *Id.* Class certification analysis entails consideration of the factual and legal issues comprising the plaintiff's cause of action. *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000).

The Court begins its review of a motion for class certification by determining whether "at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steinman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000); *see also Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis of class certification must begin with the issue of standing. . . . Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others.").

If the named plaintiffs possess Article III standing, the Court then determines whether class certification is appropriate under Federal Rule of Civil Procedure 23. "Under Rule 23, certification is proper where the proposed classes satisfy an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3)." *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015). Under Rule 23(a), the party seeking certification must demonstrate: "(1) that the class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) that the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Satisfaction of the Rule 23(a) factors, however, does not end the inquiry, and a class still may not be certified unless one of the requirements of Rule 23(b) are satisfied. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004).

Proposed injunctive or declaratory classes must satisfy Rule 23(b)(2). Under that rule, certification is appropriate only where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Lakeland Regional Med. Center, Inc. v. Astellas US, LLC*, 763 F.3d 1280, 1291 (11th Cir. 2014). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011). Therefore, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.*

Where certification is sought under Rule 23(b)(3), the plaintiff must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). In making such determinations, courts consider "the class members' interests in individually controlling the

prosecution or defense of separate actions"; "the extent and nature of any litigation concerning the controversy already begun by or against class members"; "the desirability of undesirability of concentrating the litigation of the claims in the particular forum"; and "the likely difficulties in managing a class action." *Id.*

In reviewing a motion for class certification, the Court must conduct a "rigorous analysis" of the facts and law to determine whether the plaintiff has met its burden of demonstrating compliance with Rule 23. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1169 (11th Cir. 2010) (citation omitted); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (the "burden of proof to establish the propriety of class certification rests with the advocate of the class."). While the district court's class certification analysis "may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013) (citations omitted). Rather, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

### 3. Discussion

#### A. The Plaintiffs Lack Standing to Represent the Injunctive Classes

Count II of the Second Amended Complaint seeks injunctive relief. Specifically, the Plaintiffs request the Court "to enjoin AMI from improperly labeling and marketing its product as 'born in brazil,' requiring AMI to remove and/or clarify the deceptive language and/or to include a prominent disclaimer on the Container, Packaging, and marketing material that informs consumers that Vita Coco is made with coconuts throughout the world, and manufactured and imported throughout the world, or alternatively, to resume production only in Brazil." (2d Am. Compl. at ¶ 84.) The Plaintiffs claim they "face[] a real and immediate threat of future harm" necessitating such an injunction "because of the deceptive Container, Packaging, labeling and marketing of Vita Coco which is sold at inflated prices based upon the deception." (*Id.* at ¶¶ 48, 51, 54.) They allege the requested injunction would "prevent and end this practice" and the Plaintiffs "would purchase Vita Coco again if and when it is properly labeled and marketed." (*Id.*)

To proceed on behalf of the Injunctive Classes named Plaintiffs must possess Article III standing. *Prado-Steinman*, 221 F.3d at 1279-80; *Griffin*, 823

F.2d at 1482; *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (where "none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."). Standing is a matter of jurisdiction and can be raised at any point in litigation, *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994), whether by the parties or the Court, *Juidice v. Vail*, 430 U.S. 327, 331-32 (1977); *Hammond v. Reynolds Metals Co.*, 219 F. App'x 910, 915 (11th Cir. 2007) (affirming district court's *sua sponte* dismissal of claims for lack of standing); *Pace v. Peters*, 524 F. App'x 532, 535, 537 (11th Cir. 2013) (same); *Austin & Laurato, P.A. v. United States,* 539 F. App'x 957 (11th Cir. 2013) (same); *Mejia v. Uber Techs., Inc.*, 291 F. Supp. 3d 1314, 1316-18 (S.D. Fla. 2018) (Bloom, J.) (*sua sponte* dismissing case for lack of standing (citing *Bischoff v. Osceola Cty., Fla.*, 22 F.3d 874, 878 (11th Cir. 2000) (holding that, where not briefed by the parties, "the district court correctly reached out and considered the question of standing *sua sponte*")).

Article III standing ensures that a "justiciable case and controversy exists between the parties," *Chiles v. Thornburgh,* 865 F.2d 1197, 1212 (11th Cir. 1989), and at "an irreducible constitutional minimum" consists of three elements:

> "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotations, citations and alterations omitted). With respect to standards of proof, standing is "not [a] mere pleading requirement[], but rather an indispensable part of the plaintiff's case, [and] each element must be supported in the same way as any other matter on which plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.*; *see also Fla. Pediatric Society/Fla. Chapter of Am. Academy of Pediatrics v. Benson*, No. 05-23037, 2009 WL 10668660, at *2, n.3 (S.D. Fla. Sept. 30, 2009) (Jordan, J.) (discussing burden of proof for Article III standing at class

certification stage); *Dapeer v. Neutrogena Corp.*, No. 14-22113, 2015 WL 10521637, at *12 (S.D. Fla. Dec. 1, 2015) (Torres, M.J.) (at the class certification stage, "[t]he bar is simply higher than a pleading standard and it is the Plaintiff's burden to prove injury-in-fact.").

For injunctive relief, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy," where "unaccompanied by any continuing, present adverse effects." *O'Shea*, 414 U.S. at 495-96. In other words, to satisfy Article III, a Plaintiff pursuing injunctive relief must seek to redress a real and immediate threat of future injury, and past harm will not suffice. *See Lombardo v. Johnson & Johnson Consumer Cos., Inc.*, No. 13-60536, 2014 WL 10044838, at *6 (S.D. Fla. Sept. 10, 2014) (Scola, J.) (allegations of past harm were insufficient to confer standing to pursue injunctive relief on behalf of class under FDUPTA); *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1359 (S.D. Fla. 2014) (O'Sullivan, M.J.) (dismissing claim for injunctive relief in deceptive labeling class action where plaintiffs failed to allege they would "likely suffer a real and immediate threat of future injury" and thus lacked standing).

Further, "a controversy is not justiciable when a plaintiff independently caused his own injury." *Swann v. Secretary, Ga.*, 668 F.3d 1285, 1288 (11th Cir. 2012)*; Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402, 418, n.7 (2013) (holding that "self-inflicted injury" did not give rise to Article III standing); *Pevsner v. E. Air Lines, Inc.*, 493 F.2d 916, 918 (5th Cir. 1974)[1] (self-inflicted injury did not satisfy Article III); *Samuels v. Fed. Hous. Fin. Agency.*, 54 F. Supp. 3d 1328, 1334-35 (S.D. Fla. 2014) (Cooke, J.); *Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("We have consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing. Such harm does not amount to an 'injury' cognizable under Article III. Furthermore, even if self-inflicted harm qualified as an injury it would not be fairly traceable to the defendant's challenged conduct. . . . As the [plaintiff] has *chosen* to remain in the lurch, it cannot demonstrate an injury sufficient to confer standing." (citations omitted); 13 Fed. Prac. & Proc. Juris. 2d § 3531.5, Causation (2004) ("[A]t some point, standing may be denied because the injury seems solely—or almost solely—attributable to the plaintiff.").

---

[1] The Eleventh Circuit has adopted, as binding precedent, all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Under that framework, the Plaintiffs must allege something more than past deception by the "born in brazil" slogan to provide them standing to proceed on behalf of the Injunctive Classes. The Second Amended Complaint alleges that each plaintiff "faces a real and immediate threat of future harm because of the deceptive Container, Packaging, labeling and marketing of Vita Coco which is sold at inflated prices based upon the deception," that an "injunction would prevent and end this practice," and that the Plaintiffs "would purchase Vita Coco again if and when it is properly labeled and marketed." (2d Am. Compl. at ¶¶ 48, 51, 54.) In other words, the Plaintiffs allege that they will be harmed in the future because they choose not to purchase Vita Coco until the labeling and marketing has changed.

These alleged future injuries are self-inflicted. AMI has not forced the Plaintiffs to stop buying Vita Coco; rather, that was the Plaintiffs' choice. And the face of the Second Amended Complaint reveals that the Plaintiffs will not be deceived by the "born in brazil" slogan in the future. Indeed, the Plaintiffs allege that they now know "that not all Vita Coco is manufactured in Brazil, or that the Vita Coco being purchased is neither manufactured nor sourced in Brazil, nor made with Brazilian coconuts." (*Id.* at ¶ 31.) Thus, if and when the Plaintiffs choose to purchase Vita Coco in the future, they will do so with knowledge that the "born in brazil" slogan does not reflect the location the beverage was manufactured in or sourced from. And any amount paid for those future purchases will be the result of an informed decision—not because the Plaintiffs were deceived by the "born in brazil" slogan as to the origin of the product. The Plaintiffs "cannot manufacture standing by choosing" not to purchase a product because of allegedly deceptive labeling, when the Plaintiffs actually know the truth underlying that labeling and thus cannot be deceived by it in the future. *Clapper*, 568 U.S. at 402.

To the extent the Plaintiffs argue that the requested injunction will cause them to pay less for Vita Coco, (2d Am. Compl. at ¶¶ 48, 51, 54), the Court rejects this argument. AMI submitted evidence that removal of the "born in brazil" slogan did not, in fact, change the price of Vita Coco. In this respect, AMI provided the sworn statement of Jonathan Burth, AMI's Vice President of Global Supply Chain, who declared that AMI: has stopped producing Vita Coco containers that include the "born in brazil" slogan; has begun selling relabeled containers without that slogan in May 2018; and has not and does not intend to reduce the wholesale prices or Manufacturer Suggested Retail Price for the relabeled Vita Coco. (ECF No. 208-70.) Further, AMI's expert, Keith Ugone, Ph.D., documented the same in his rebuttal report, finding Vita Coco was sold at the same price with and without the "born in brazil" slogan. (ECF No. 208-56 at 17-20.) It is the Plaintiffs' heightened burden to establish their standing at

this advanced stage of the case, *see Lujan*, 504 U.S. at 561, and they have failed to submit non-speculative evidence that the requested injunctive relief would decrease Vita Coco's cost, or otherwise counter AMI's proffer that it would not. Thus, the Court finds there is no factual dispute that removing the "born in brazil" slogan did not affect the price of Vita Coco, and that theory cannot support the Plaintiffs' standing here.

Finding the Plaintiffs' lack Article III standing with respect to the Injunctive Classes, the requested class certifications under Rule 23(b)(2) are **denied**.[2]

### B. Rule 23(b)(3) Damage Classes

AMI challenges certification of the Rule 23(b)(3) Damage Classes under the ascertainability, predominance and typicality elements. As further detailed below, the Court finds the proposed Damage Classes are not ascertainable, denies certification on that basis, and does not reach the parties' other arguments.[3]

---

[2] Other reasons exist to deny certification of the Injunctive Classes. For one, the Plaintiffs have not shown that their self-imposed bans on Vita Coco purchases are typical of the injuries suffered by other members of the proposed Injunctive Classes. *See Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) ("A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3).").

Further, and perhaps most importantly, AMI submitted sworn declarations of two of its vice presidents stating that AMI has removed the "born in brazil" slogan from its packaging and "has no intention of using" that phrase "on its containers, packaging or marketing at any point in the future." (ECF Nos. 208-69, 208-70.) The Plaintiffs have not rebutted this showing or otherwise demonstrated why a Rule 23(b)(2) injunctive class is necessary, where the Plaintiffs know the truth underlying the "born in brazil" slogan and will not be deceived by it in the future. *See Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 68 (S.D.N.Y. 2015) (declining to certify Rule 23(b)(2) injunctive class where "Defendant has already removed the 'All Natural' label from three of the four challenged products," was "in the process of removing the 'All Natural' label from the fourth" and "submitted a sworn declaration that it 'has no plans to re-introduce the 'all natural' claim on the Crisco Oil labels at any point in the future.'"); *see also Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1374 (S.D. Fla. 2015) (Cooke, J.).

[3] The Court previously held that the Plaintiffs sufficiently alleged standing at the motion to dismiss stage. (ECF No. 135, at 4-5.) The Plaintiffs have submitted record evidence that they observed AMI's "born in brazil" marketing

### i. **The Damage Classes Are Not Ascertainable**

The Plaintiffs attached to the Motion the declaration of Richard Simmons ("Simmons"),[4] a class administrator, who proposes a three-tiered class member identification method that he claims will render the class ascertainable. (*See* Simmons Dec., ECF No. 193-1.) Specifically, Simmons proposes identifying class members from:  (i) "third party data such as loyalty programs or retailer records," (*id.* at ¶ 22); (ii) receipts, Vita Coco bottles or UPC codes produced by class members, (*id.* at ¶ 23); and (iii) self-identification, where class members submit affidavits "indicating that they bought the product within the class period, identifying the state of purchase, the retailer (if known), the approximate amount paid for the product, a description of the bottle(s) they purchased, and the amount purchased," (*id.* at ¶ 24).

Simmons then proposes five second-level analyses that he claims will provide "significant indicia of reliability" and flag fraudulent or faulty memory claims. (*Id.* at ¶ 25 (proposing second level analyses of "Claimant Validation," "Transaction Analysis," "Price Analysis," "Quantity Analysis," and "Package Descriptions").) For "[c]laims failing these [second-level] screening criteria," Simmons proposes conducting "additional review" and requiring additional documentation. (*Id.* at ¶ 26.) If that review results in rejection, the claimant would then be entitled to appeal their claim denial before a special master or judge. (*Id.* at ¶ 29.)

"Rule 23 implicitly requires that the 'proposed class is adequately defined and clearly ascertainable.'" *Karhu*, 621 F. App'x at 946 (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)); *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014) (noting that ascertainability is a "threshold issue"). "Ascertainability has traditionally been defined as the existence of a class whose members can be identified by reference to objective criteria in the class definition." *Karhu*, 621 F. App'x at 952 (Martin, J., concurring); *see also Bussey*, 562 F. App'x at 787 ("An

---

slogan; believed that Vita Coco was manufactured and produced in Brazil on that representation; purchased Vita Coco in reliance on that belief; and suffered damage as a result, including violations of rights under consumer protection statutes. (*See* Mot. at 11-12.) The Court finds now, as it did before, that the Plaintiffs have sufficiently established standing to proceed on behalf of the Damage Classes at this stage.

[4]   AMI moved to strike Simmons's declaration. (*See* ECF No. 206.) Because the Court rejects his proposed identification method, it denies the motion to strike as moot.

identifiable class exists if its members can be ascertained by reference to objective criteria.").

"In order to establish ascertainability, the plaintiff must propose an administratively feasible method by which class members can be identified." *Karhu*, 621 F. App'x at 947. A class identification method is "administratively feasible" where it is "a 'manageable process that does not require much, if any, individual inquiry.'" *Id.* at 946 (quoting *Bussey*, 562 F. App'x at 787).

The Eleventh Circuit in *Karhu* addressed the ascertainability requirement in a case similar to this, where a deceptive labeling claim was brought on behalf of a class of consumers of a low cost good. There, the court undertook a review of a number of proposed methods for ascertaining class members, and its analysis is instructive here.

For one, the Eleventh Circuit held that plaintiffs proposing to identify class members through a defendant's records must "*establish* that the records are in fact useful for identification purposes, and that identification will be administratively feasible." *Id.* at 948 (emphasis added). Thus, where a plaintiff provides no more than unsupported "asserti[ons] that class members can be identified using the defendant's records," it does not satisfy the ascertainability requirement. *Id.*

Next, the Eleventh Circuit looked to class member self-identification by affidavit as a means of satisfying the ascertainability requirement. The Court established a two-part inquiry, where plaintiffs seeking to employ self-identification are required to establish that it is both "administratively feasible and not otherwise problematic." *Id.* The following issues were identified as central to "otherwise problematic" inquiry:

> On the one hand, allowing class members to self-identify without affording defendants the opportunity to challenge class membership 'provides inadequate procedural protection to defendants and implicates their due process rights.' On the other hand, protecting defendants' due-process rights by allowing them to challenge each claimant's class membership is administratively infeasible, because it requires a series of mini-trials just to evaluate the threshold issue of which persons are class members.

*Id.* at 948-49 (alterations and citations omitted). Thus, where "ascertainment via self-identification" is proposed, a plaintiff "must establish how the self-identification method . . . will avoid" those twin concerns, while also proposing an administratively feasible method. *Id.* at 949, n.5 ("A plaintiff might establish that self-identification-based ascertainment is administratively feasible and

otherwise unproblematic by proposing a case-specific and demonstrably reliable method for screening each self-identification.").

Finally, the *Karhu* Court left as an open question whether the plaintiffs may satisfy ascertainability by subpoenaing the records of third-party retailers to identify ultimate purchasers and consumers of the subject low-cost good. *Id.* at 950, n.6.

The Court begins by noting that the Damage Classes are defined by objective criteria. To be a member of the Damage Classes, a person must have purchased: (i) unflavored; (ii) individually packaged; (iii) one-liter Vita Coco; (iv) for offsite, personal, family or household consumption; (v) after April 2012; (vi) in New York, California, or Florida. The Plaintiffs carry the burden of establishing the existence of an administratively feasible method of identifying individuals that meet those criteria. *Karhu*, 621 F. App'x at 947. The Court finds that the Plaintiffs have not met this burden, as the proposed identification method is not administratively feasible and otherwise fails to satisfy the requirements of *Karhu*.

First, with respect to the Plaintiffs' proposal to identify class members through third-party sales data and loyalty-card programs, the Plaintiffs did not proffer any such records or data. Nor did the Plaintiffs produce evidence that these records exist for the time period at issue or that they would be useful for identification purposes. Indeed, the Court is unaware of any record evidence suggesting that the Plaintiffs have even reviewed such third party data. While the Eleventh Circuit has instructed that plaintiffs "cannot establish ascertainability simply by asserting that class members can be identified using the defendant's records," the Court finds that requirement equally applicable to the third party records at issue here. *Id.* at 948, 950 n.6 (leaving as an open question what plaintiffs "would need to *produce* in order to *establish* that the records of third-party retailers could be used to identify class members in an administratively feasible manner." (emphases added)); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 690 (S.D. Fla. 2014) (Bloom, J.). The Plaintiffs proffer no evidence to "*establish* that the [third party] records are in fact useful for identification purposes"; thus, the Court rejects that proposed identification method. *Karhu*, 621 F. App'x at 948 (emphasis added); *Vega*, 564 F.3d at 1265 (the "burden of proof to establish the propriety of class certification rests with the advocate of the class.").

Second, the proposal to identify class members by submission of receipts or containers would be sufficient, except it is unlikely to capture more than a handful of class members. Simmons recognizes that in class actions involving low cost consumer goods, like Vita Coco, "it is often unusual for consumers to maintain receipts or other proof of purchase." (Simmons Dec. at ¶ 17.) Indeed,

the Plaintiffs did not keep receipts of their own Vita Coco purchases. (*See* ECF No. 208-32.) While the "fact that putative class members are highly unlikely to retain proof of purchase for such a low price consumer item[, like Vita Coco,] is insufficient to defeat certification" by itself, the Court can and does consider the paucity of objective, corroborating evidence of class membership as a factor in determining ascertainability. *Randolph*, 303 F.R.D. at 689.

Finally, the third "tier"—self-identification by affidavit—represents the method by which the bulk of putative class members would be identified under Simmons' proposal. The Plaintiffs argue that they are only required to "propos[e] a case-specific and demonstrably reliable method for screening each self-identification," and that Simmons' proposal meets that standard. (Reply in Support of Mot. for Class Cert., ECF No. 219 at 6); *Karhu*, 621 F. App'x at 949 n.5. But a self-identification method must be administratively feasible. *Id.* And the Plaintiffs' proposal is not.

Here, Simmons suggests requiring each self-identifying class member to undergo a second-level, five-part analysis entailing: review of third party records to verify a claimant's state of residence; searches for duplicate claims based on substantially similar claimant information, including IP addresses; analysis of price and quantity data with respect to claimed amounts that fall outside of the normal range for each metric; and participation in a photo identification exercise requiring claimants to select a one-liter unflavored Vita Coco tetrapack from a line-up of other products. (Simmons Dec. at ¶ 25.) Claimants who fail the second-level analysis would be "subject to additional review and documentation." (*Id.* at ¶ 26.) Rejected claimants would then have a right to appeal their claim denial before a special master or judge. (*Id.* at ¶ 29.)

Simmons' self-identification method is not a "manageable process that does not require much, if any, individual inquiry." *Karhu*, 621 F. App'x at 946 (quoting *Bussey*, 562 F. App'x at 787). Indeed, that proposal involves layers of individual inquiry that amount to a series of impermissible "mini-trials," in addition to affording denied claimants a right of appeal. *See id.* at 948; (Simmons Dec. at ¶ 29.) The proposed self-identification method is therefore not administratively feasible.

The Court is aware that this may be the Plaintiffs' best effort at a "case-specific and demonstrably reliable" method of self-identification. *Karhu*, 621 F. App'x at 949 n.5. But the level of individual inquiry necessary to attempt to validate a self-identified claimant is especially high in this case. The proposed Damage Classes require a putative class member to meet at least six objective criteria. (Mot. at 12.) And to accurately self-identify, a class member must

recall detailed information about purchases of Vita Coco that occurred over a six year period.[5]

Numerous courts have recognized the issues inherent in requiring class members to accurately recall specific information about purchases of low-cost consumer goods, like Vita Coco. *See, e.g., Randolph*, 303 F.R.D. at 689 ("[T]aking the aforementioned variations in Crisco products in conjunction with the fact that the challenged product is a low-priced consumer item, of which the normal consumer likely does not retain significant memory about, the likelihood of a potential class member being able to accurately identify themselves as a purchaser of the allegedly deceptive product, is slim."); *Karhu*, 621 F. App'x at 953 (Martin, J., concurring) (proposing "the likelihood that potential class members could accurately identify themselves" as a factor to be considered when determining ascertainability). Such concerns are present here, where class membership is contingent on the purchase of a subset of Vita Coco products that are similar to other coconut waters, including other Vita Coco products, and where there appears to be nothing remarkable or memorable about such purchases.

It may be true that heightened scrutiny should be applied for individuals passing the memory test in minutiae that is required for membership in the Damage Classes, (*see* fn. 5, *supra*), but that does not alleviate the Plaintiffs' obligation to propose an administratively feasible method for doing so. Because the Plaintiffs' proposal is not administratively feasible for the reasons stated above, the Damage Classes are not ascertainable. As such, the Court **denies** the Plaintiffs' request to certify the Damage Classes.[6]

---

[5]   Members of the Damage Classes must accurately recall: (1) the date of purchase of Vita Coco (*i.e.* did the purchase occur after April 2012?); (2) the location of the Vita Coco purchase (*i.e.* did the purchase occur in Florida, New York, or California?); (3) the packaging in which the Vita Coco was purchased (*i.e.* was the purchased Vita Coco individually packaged, and not a two-pack, four-pack, six-pack or nine-pack?); (4) the flavor of the Vita Coco (*i.e.* was the Vita Coco original-flavored (pure), and not one of the seven other flavors at market during the relevant time frame?); (5) the size of the Vita Coco purchased (*i.e.* was the purchased Vita Coco 1 liter, and not 330 ml or 500 ml?); (6) the context and intended use of the Vita Coco purchase (*i.e.* was the Vita Coco purchased at retail for offsite, personal, family, or household consumption?); and (7) the number of Vita Cocos purchased meeting the above-mentioned criteria.

[6]   In addition, the ease of dissemination of class membership criteria may severely undercut the reliability of Simmons' proposal. *Karhu*, 621 F. App'x at 949 n.5 (requiring proposed self-identification methods be "demonstrably

### 4. Conclusion

The Court **denies** the Plaintiffs' motion for class certification. (ECF No. 193). In light of the Plaintiffs' assertion of jurisdiction only under CAFA and this order denying class certification, the Court further **dismisses the case without prejudice** for lack of subject matter jurisdiction. *See Karhu v. Vital Pharms., Inc.*, No. 13-60768, 2014 WL 1274119 (S.D. Fla. Mar. 27, 2014) (Cohn, J.). Finally, although the parties' submissions relating to this motion were filed under seal, this order contains no confidential information, trade secrets or other information that justifies sealing of this order.

The Clerk is directed to **close** this case. All pending motions are **denied as moot**.

**Done and ordered** in chambers in Miami, Florida on September 26, 2018.

Robert N. Scola, Jr.
United States District Judge

---

reliable"). For example, what is to stop a class member, or anyone else, from posting a form affidavit or the class membership criteria on the internet for the world to review? How would one differentiate between submissions by real and fraudulent class members in this instance, where each would submit affidavits containing the same content? Without answers to these questions or corroborating evidence of class membership, the Court declines to bless a class where the proposed method of identifying members appears to promote the unrestrained submission of fraudulent claims.